UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JONATHAN X. FLAGG and JACQUELINE ALVAREZ, | : : : : | 07 Civ. 7392 (PKC) (HBP) |
| Plaintiffs, | : : | |
| - against - | : : | |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP PENSION PLAN, | : : : | |
| Defendant. | : : : | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS, IN PART, THE FIRST AMENDED COMPLAINT

Samuel Kadet
Henry P. Wasserstein
James W. Brown
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000

*Attorneys for Defendant Skadden, Arps,
  Slate, Meagher & Flom LLP Pension Plan*

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Plaintiffs Alvarez and Flagg Participated in the Plan Until They Elected
           To Take Lump Sum Distributions in 1998 and 2004, Respectively . . . . . . . . . . 3

      B.    Plaintiffs Claim That Their Lump Sum Distributions
           Were Miscalculated in Violation of "Well Established"
           Law When They Received Them in 1998 and 2004 . . . . . . . . . . . . . . . . . . . . . . . 4

      C.    Plaintiffs Assert That They Did Not Seek Administrative Review
           of Their Allegedly Incorrect Distributions in 1998 and 2004 Because
           They Knew the Plan Administrators Would Have Remained Steadfast
           in Repudiating These "Well Established" Duties . . . . . . . . . . . . . . . . . . . . . . . . . 5

      D.    Plaintiffs Do Not Allege Any Facts Between When They Received
           Their Allegedly Incorrect Distribution and When They Filed Their Claims . . . . 6

      E.    Plaintiffs' Only Excuse for Alvarez's Nine Year Delay in
           Bringing Her Claim is an Alleged Ongoing Omission by the Plan . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    ALL CLAIMS OF AN ONGOING OMISSION SHOULD BE
     DISMISSED BECAUSE THEY ARE FORECLOSED BY THE
     VERY DOCUMENTS UPON WHICH PLAINTIFFS RELY, AND
     THEREFORE FAIL TO STATE A CLAIM AS A MATTER OF LAW . . . . . . . . . . . . 7

      A.    Plaintiffs Allege That the Plan Failed to Disclose That Plaintiffs
           Were "Guaranteed" a Minimum 8% Interest Credit For Each Year
           They Left Their Funds in the Account, Until Age 65 and Beyond . . . . . . . . . . . 7

      B.    The Plan Accurately Stated the Manner in Which the Interest Credit
           Would Be Calculated Each Year, Because There Was No 8% Guarantee . . . . . . 9

           1.    The Plan Document Accurately Disclosed the Interest Credits . . . . . . . . 9

           2.    The Actual SPDs – As Opposed to Plaintiffs' Misleading Description
                of Them – Accurately Disclosed the Interest Credits . . . . . . . . . . . . . . . 11

           3.    SPDs, Being Summary Documents, Need Not State
                 Every Detail Contained in the Plan Documents . . . . . . . . . . . . . . . . . . . 12

C.     The Plan Accurately Stated the Manner in Which the Interest Credit Would
Be Calculated Each Year, Because There Was No Entitlement For Terminated
Employees to Earn Interest Credits in the Plan After Reaching Age 65 . . . . . . . 13

D.     The Plan Accurately Stated the Manner in Which the Interest Credit Would
Be Calculated Each Year, Because The Interest Credit Was Not Discretionary,
But Instead Was Established Pursuant to an Explicit Formula Based Upon
Interest Rates Published by the United States Government . . . . . . . . . . . . . . . . 15

II.     ALL OF ALVAREZ'S CLAIMS ARE BARRED
BY A SIX-YEAR STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

A.     Dismissal Is Warranted Where Claims
Are Barred By the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.     Alvarez's Claims Are Governed by a Six Year Statute of Limitations . . . . . . . . 16

C.     Alvarez's Claims Accrued, at the Latest, When
She Received Her Lump Sum Distribution in 1998. . . . . . . . . . . . . . . . . . . . . . 16

1.     An ERISA Claim Accrues Upon a Clear Repudiation of Benefits . . . . . 16

2.     Alvarez Explicitly Alleges That the Plan Repudiated its "Clear"
and "Well-Established" Legal Obligations at the Moment it Made
Her Purportedly Inaccurate Lump Sum Distribution . . . . . . . . . . . . . . . . 17

3.     The Lump Sum Distribution is the Only Possible Date of Accrual,
Because Alvarez Does Not Allege Any Facts Between When She
Received Her "Incorrect" Distribution and When She Filed Her Claims  18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

Barnett v. International Bus. Machines Corp., 885 F. Supp. 581 (S.D.N.Y. 1995)  . . . . . . . 16-17

Cantor Fitzgerald v. Lutnick, 313 F.3d 704 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Carey v. International Brotherhood of Electric Workers, 201 F.3d 44 (2d Cir. 1999)  . . . . . 16, 18

Carollo v. Cement & Concrete Workers District Council Pension Plan,
      964 F. Supp. 677 (E.D.N.Y. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

Cortec Industrial, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . 10

Crystal v. Foy, 562 F. Supp. 422 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Davenport v. Harry N. Abrams, Inc., 249 F.3d 130 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . 16-17

Ferber v. Travelers Corp., 802 F. Supp. 698 (D. Conn. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ghartey v. St. John's Queens Hospital, 869 F.2d 160 (2d Cir. 1989)  . . . . . . . . . . . . . . . . . . . . 15

Hebert v. AAI UIC Ret. Plan, 2006 U.S. Dist. LEXIS 51562 (D.Md. July 13, 2006)  . . . . . . . . 19

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 13

Miles v. NY State Teamsters Conf. Pension & Ret. Fund, 698 F.2d 593 (2d Cir. 1983)  . . . . . . 16

Miller v. Fortis Benefits Insurance Co., 475 F.3d 516 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 19

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Santos v. District Council of New York City & Vicinity of United Brotherhood of
      Carpenters & Joiners, 619 F.2d 963 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Scheuer v. Rhodes, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Union Pacific R.R. v. Beckham, 138 F.3d 325 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 17


STATUTES                                                                                PAGE(S)

ERISA Section 502(a), 29 U.S.C. 1132(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS, IN PART, THE FIRST AMENDED COMPLAINT</u>

Defendant Skadden, Arps, Slate, Meagher & Flom LLP Pension Plan ("Defendant" or the "Plan") respectfully submits this memorandum in support of its motion to dismiss so much of the First Amended Complaint dated October 18, 2007 (the "First Amended Complaint") as is time barred or based upon allegations of an ongoing omission.[1]

<u>PRELIMINARY STATEMENT</u>

Plaintiff Flagg instituted this ERISA action on behalf of a putative class of all former employees of Skadden, Arps, Slate, Meagher & Flom LLP (the "Firm") who elected to receive an early lump sum distribution from the Plan within a fifteen year span – between 1992 and 2006 – alleging that those payments were incorrectly calculated because the Plan did not utilize the correct "whipsaw" calculation.  After receiving the initial Complaint, Defendant conferred with Flagg and pointed out to him that, even before turning to his individual claims or the manner of calculating lump sum benefits, the proposed class claims were fatally overbroad in that: (i) the majority of those claims were time-barred, as they accrued more than six years before the action was instituted on August 20, 2007; and (ii) Plaintiff Flagg would be an inadequate representative to even try to argue for the vitality of those stale claims, as his personal claim accrued in 2004 and therefore was not time-barred.

Rather than narrowing his claims, Flagg instead hastily served – <u>on the night before the initial case management conference where Defendants had promised to expose to the Court these fatal flaws</u> – the First Amended Complaint.  That amended pleading revealed that a second

---

[1]    Citations herein to "Exh. __" refer to the exhibits annexed to the accompanying Declaration of James W. Brown dated November 19, 2007.  The First Amended Complaint, which appears as Exhibit A, shall be cited herein as "1AC ¶ __."

plaintiff, Alvarez, had been recruited.  Alvarez's claims accrued in 1998 when she received a lump sum distribution from the Plan, and therefore would at least have standing to argue the statute of limitations.  Although she clearly has the standing that Flagg lacked to make the argument, it is equally clear that Alvarez's claims are time barred, as this action was commenced almost ten years after her claims, which are subject to a six years statute of limitations, accrued.

To try to cloud Defendant's clear statute of limitations defense, Plaintiffs also added new allegations that there was an ongoing omission which might toll the running of the statute.  But those allegations of an ongoing omission are based solely upon a gross misstatement of the very Plan documents on which Plaintiffs' claims are based.  When Plaintiffs' allegations are compared to the plain language of those documents – which documents the Court may reach on a motion to dismiss because they are cited and quoted in the Complaint and also because they are publicly filed – it is clear that there was no ongoing omission.  Therefore, all of Alvarez's claims, and so much of Flagg's claims as are based upon the theory of an ongoing omission, should be dismissed.

<u>STATEMENT OF FACTS</u>[2]

A.    Plaintiffs Alvarez and Flagg Participated in the Plan Until They Elected
      <u>To Take Lump Sum Distributions in 1998 and 2004, Respectively.</u>

Effective in 1992, the Plan became a cash balance pension plan for certain employees of

the Firm.  (1AC ¶¶ 22, 9, 7).  Each Plan participant's pension account is comprised of two

components:

- "service credits," based upon a percentage of his compensation (sometimes also called "pay credits"); together with

- annual "interest credits," equal to the yield on a 1-year Constant Maturities Treasury Rate[3] plus 1%, with a: (i) maximum of 12% and (ii) guaranteed minimum of the lesser of (a) 8% and (b) the midpoint of the range established for the "standard interest rate" by regulations issued under the Internal Revenue Code (the "Code").[4]

(1AC ¶ 10).

Plaintiff Jacqueline Alvarez ("Alvarez") was employed by the Firm from 1988 to 1997.

Rather than allowing her vested pension to remain in the Plan until her normal retirement age of

65, Alvarez instead elected to receive a lump sum cash distribution in 1998 at the age of 34.

(1AC ¶¶ 8, 12).

Plaintiff Jonathan X. Flagg ("Flagg") was employed by the Firm from 1998 until 2003.

Rather than allowing his vested pension to remain in the Plan until his normal retirement age of

---

[2]    This Statement of Facts is based upon the allegations of the First Amended Complaint, which are deemed true only for purposes of this motion to dismiss.  <u>E.g.</u>, <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Cantor Fitzgerald v. Lutnick</u>, 313 F.3d 704, 709 (2d Cir. 2002).

[3]    This index is an average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as periodically published by the Federal Reserve Board.

[4]    Plaintiffs allege that the rates stated in these regulations have never fallen below 8% during the relevant period.  (1AC ¶ 17).

65, Flagg similarly elected to receive a lump sum cash distribution in 2004 at the age of 34.

(1AC ¶¶ 8, 12).

> B.    Plaintiffs Claim That Their Lump Sum Distributions
>        Were Miscalculated in Violation of "Well Established"
>        Law When They Received Them in 1998 and 2004.

Plaintiffs do not assert that the calculation of their benefits suffered from a ministerial

math error, or that the Plan failed to follow its own established procedures for calculating lump

sum distributions.  Nor do Plaintiffs assert that there is some subtle or ambiguous element of the

Plan documents which requires judicial interpretation.  Instead, according to Plaintiffs, this case

presents purely a statutory interpretation of ERISA which may be decided by the Court as a

matter of law.  (1AC ¶ 20 ("the claims Plaintiffs raise are statutory claims involving the

interpretation of ERISA [which should] be adjudicated by Article III judges")).

Plaintiffs claim that their lump sum distributions were incorrectly calculated, in that the

Plan failed to use a required "whipsaw" calculation in determining their benefits.  The whipsaw

calculation allegedly requires the Plan to project the accretion of each participant's account

balance forward until the normal retirement age of 65 (using the interest rates defined in the

Plan), and then to discount that amount back to a present value (using discount rates prescribed

by statute).  Thus, if the projection interest rates are higher than the statutory discount rates, the

whipsaw calculation will result in a lump-sum distribution benefit higher than the participant's

current plan balance.  Conversely, if the projection interest rates are lower that the statutory

discount rates, the whipsaw calculation will not yield a lump sum distribution greater than the

current plan balance.  Plaintiffs allege that the Plan failed to utilize this whipsaw calculation, and

instead merely paid Plaintiffs' their notional account balance at the time of the lump sum

distributions, causing their benefits to be understated.  (1AC ¶¶ 13-14).

While it is not necessary for purposes of this motion to determine whether Plaintiffs' benefits were miscalculated or not, it is important to note, for purposes of determining the accrual of the statute of limitations, that Plaintiffs allege that the whipsaw requirement the Plan supposedly violated was "clear and was well-established long ago – and was confirmed by the IRS as long ago as 1991" – years before Plaintiffs received their lump sum distributions in 1998 and 2004 – and even before the Plan became a cash balance Plan in 1992. (1AC ¶ 22).

C.      Plaintiffs Assert That They Did Not Seek Administrative Review of Their Allegedly Incorrect Distributions in 1998 and 2004 Because They Knew the Plan Administrators Would Have Remained Steadfast in Repudiating These "Well Established" Duties.

Plaintiffs explicitly allege that they did not seek an immediate administrative review of their benefits determination because it was clear to them that the Plan administrators would have remained steadfast in repudiating these "clear" and "well established" duties:

> Had Plaintiffs submitted a claim for the recalculation of their lump sums, Defendant would simply have responded that Plaintiffs had already received an amount equal to their account balance and that is all that they are entitled to receive. . . .

(1AC ¶ 21).

Indeed, Plaintiffs allege that the conduct of "the Plan and those acting on its behalf" in making the lump sum payments was so overtly egregious that it "evidenc[ed] their belief that the law does not apply to them." (1AC ¶ 26 (emphasis added)). Despite having this "evidenc[e]" – as far back as 1998 that the Plan had clearly repudiated these "clear" and "well-established" legal duties and proclaimed itself above the law – Plaintiffs thereafter sat on their claims for years and years.

D.     Plaintiffs Do Not Allege Any Facts Between When They Received
Their Allegedly Incorrect Distribution and When They Filed Their Claims.

Notably, the First Amended Complaint fails to allege a single affirmative act, a single

communication, or a single fact of any kind between the time Plaintiffs received their lump sum

distributions, i.e., the "evidenc[e]" that the Plan believed it was above the law, and when they

filed this action.  (1AC, passim).   In other words, every fact pleaded in the First Amended

Complaint was known or available to Plaintiffs no later than when they received their allegedly

insufficient lump sum distribution.

E.     Plaintiffs' Only Excuse for Alvarez's Nine Year Delay in
Bringing Her Claim is an Alleged Ongoing Omission by the Plan.

As the sole excuse for Alvarez's nine year delay in suing over the Plan's alleged "clear"

and "well-established" violation, the First Amended Complaint includes for the first time

allegations that the Plan is responsible for an ongoing omission:

> the Plan and its fiduciaries never disclosed to participants that they had a right to have
> their accounts credited with a guaranteed minimum of 8% per year for as long as they left
> their benefit in the Plan until age 65 (and beyond).
>     . . . .
> This obscures rather than discloses the true nature and value of the [sic] one of the two
> critical components [i.e., service credits and interest credits] of the formula governing the
> calculation of participants' benefits.

(1AC ¶¶ 16-17).  That ongoing omission, assert Plaintiffs, should toll the running of the statute

of limitations.

It here is important to understand that this purported ongoing omission is separate and

apart from the dispute over whether the Plan utilized a whipsaw calculation in determining

Plaintiffs' lump sum distributions, as the alleged ongoing omission explicitly related to disclo-

sures regarding what interest credits Plaintiffs would have accrued had "they left their benefit in

the Plan," instead of taking lump sum distributions.  (1AC ¶ 16).

6

However, the very Plan documents upon which Plaintiffs base their claims reveal that there was no ongoing omission, as they accurately and completely disclosed the manner in which interest credits would accrue.  Indeed, portions of Plaintiffs' initial complaint which were not altered in the amendment process <u>concede</u> that the accurate disclosures were made.

*          *          *

Because Plaintiffs' allegations of an ongoing omission are foreclosed by the clear disclosures in the Plan documents, and because every fact upon which Plaintiffs' claims are based were admittedly known to them no later than when they received their lump sum distributions, the Plan's motion should be granted in all respects.

<u>ARGUMENT</u>

I.     ALL CLAIMS OF AN ONGOING OMISSION SHOULD BE DISMISSED BECAUSE THEY ARE FORECLOSED BY THE VERY DOCUMENTS UPON WHICH PLAINTIFFS RELY, AND <u>THEREFORE FAIL TO STATE A CLAIM AS A MATTER OF LAW.</u>

A.     Plaintiffs Allege That the Plan Failed to Disclose That Plaintiffs Were "Guaranteed" a Minimum 8% Interest Credit For Each Year <u>They Left Their Funds in the Account, Until Age 65 and Beyond.</u>

Solely in a convoluted effort to save time-barred claims from dismissal, the First Amended Complaint alleges that an ongoing omission should somehow toll the running of the statute of limitations.  As Plaintiffs describe it:

> the Plan and its fiduciaries never disclosed to participants that they had a right to have their accounts credited with a guaranteed minimum of 8% per year for as long as they left their benefit in the Plan until age 65 (and beyond).
>     . . . .
> In fact, the Summary Plan Descriptions ("SPDs") provided to participants carefully avoided making such disclosure. . . .  [The] 1992 SPD . . . and every other subsequent SPD says nothing about an 8% guaranteed minimum.  Instead, the SPDs all imply that the interest rate is set on a discretionary, <u>ad</u> <u>hoc</u> basis each year. . . .
>     . . . .

7

>This obscures rather than discloses the true nature and value of the [sic] one of the two critical components [i.e., service credits and interest credits] of the formula governing the calculation of participants' benefits.

(1AC ¶¶ 16-17).

As noted above, it is important to remember that this allegation is quite separate and apart from Plaintiffs' allegations concerning whether the Plan used the proper whipsaw methodology in calculating their benefits, or whether their lump sum distributions were inadequate. Instead, this is an omissions claim, in which Plaintiffs assert that they were guaranteed an 8% interest yield on their pension balance for an unlimited time had they left their funds in the account rather than taking a lump sum payment, and that the Plan failed to disclose this fact.

However, every element of Plaintiffs' ongoing omission allegations is flawed in that: (i) there simply was no such 8% guarantee for funds left in the Plan; (ii) there is no right for a terminated employee to continue to accrue interest credits in the Plan after age 65; (iii) the interest credit was not said to be discretionary, but instead was established pursuant to an explicit formula which was accurately disclosed in the Plan documents and based upon government established interest rates; and (iv) the SPDs, being summary documents, need not state every detail of the Plans – and, in fact, did accurately summarize participants rights concerning interest credits. Thus, the disclosures Plaintiffs urge would have been affirmatively misleading. In short, every aspect of Plaintiffs' allegations concerning an ongoing omission is defective as a matter of law and should be dismissed. See Crystal v. Foy, 562 F. Supp. 422, 427 (S.D.N.Y. 1983) (finding that charges of fraudulent concealment should be dismissed where relevant disclosures are included in "the very document [plaintiff] relies upon"); Ferber v. Travelers Corp., 802 F. Supp. 698, 705-706 (D. Conn. 1992) (finding dismissal appropriate where

defendants actually disclosed the allegedly omitted information set forth by plaintiffs in their complaint).

B.    The Plan Accurately Stated the Manner in Which the Interest Credit
Would Be Calculated Each Year, Because There Was No 8% Guarantee.

1.    The Plan Document Accurately Disclosed the Interest Credits.

The Plan Document accurately disclosed the formula by which interest credits would accrue under the Plan, explicitly disclosing that the credit was based upon one year Treasury Constant Maturities as published by the Federal Reserve plus 1%, with a maximum of 12% and a guaranteed minimum of the lesser of (a) 8% and (b) the midpoint of the range established for the "standard interest rate" by regulations issued under the Code:

> 4.4  Periodic Adjustment Credits.  (a) . . . [E]ach Participant's [account] shall be automat-ically increased during the Plan Year . . . by a "Periodic Adjustment Percentage" equal to the average interest rate of one-year Treasury Constant Maturities as published in the Federal Reserve Statistical release H.15 (519) of the Board of Governors of the Federal Reserve System, measured on the October 1, November 1 and December 1 of the year immediately preceding the Plan Year, plus one percentage point.  (For example, if such average interest rate is seven percent (7%), the Periodic Adjustment Percentage shall be eight percent (8%).)  The average interest rate shall be calculated and rounded to the nearest one-hundredth of a percentage point.

> (b) Notwithstanding Section 4.4(a) hereof, the Periodic Adjustment Percentage in any Plan Year shall not exceed twelve percent (12%) and shall not be less than the lower of eight percent (8%) or the midpoint of the range established for the "standard interest rate" by regulations issued under Section 401(a)(4) of the Code, as such range may be adjusted from time to time by the Commissioner pursuant to such regulation.

(Exh. B § 4.4, at 19-20 (Plan Document) (emphasis added)).[5]

---

[5]    The Court may consider the Plan documents on a motion to dismiss because these documents are cited throughout the Complaint, form the basis for the allegations contained therein, and are publicly filed.  See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, . . . as well as public disclosure documents … and documents that the plaintiffs either possessed or

(continued...)

Given this clear disclosure that there simply was no minimum 8% guarantee, Plaintiffs seek to invent one by alleging that the "standard interest rates" promulgated from time to time by the IRS – which, as shown above, form one branch of the minimum calculus under the Plan – have never happened to fall below 8% during the relevant period.  (1AC ¶ 17).  Plaintiffs then bootstrap this allegation into a <u>de facto</u> 8% guarantee for all time.  But Plaintiffs' entire theory of liability ignores that the IRS could have, at any moment, promulgated new rates lower than 8%, effectively lowering the minimum interest credit under the Plan.  Thus, the disclosure Plaintiffs urge would have been affirmatively misleading.  On the other hand, the actual Plan Document is absolutely accurate, and did not omit to disclose any 8%  guarantee – because there simply was none.

To be sure, portions of the initial complaint which remained unchanged when Plaintiffs hastily[6] cobbled together their First Amended Complaint accurately reflect that the minimum interest credits were tied to the "standard interest rates" promulgated from time to time by the IRS, as opposed to the blanket, guaranteed 8% minimum Plaintiffs now advance:

> Plaintiffs accrued . . . annual "interest credits" equal to the yield on a 1-year Treasury Constant Maturities plus 1% with a guaranteed minimum of the lesser of (a) 8% and (b) the midpoint of the range established for the "standard interest rate" by regulations issued under Section 401(a)(4) of the Internal Revenue Code, and maximum interest credit rate of 12%.

---

[5]     (...continued)
knew about and upon which they relied in bringing the suit.") (citations omitted); <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991).

[6]     In the First Amended Complaint, Flagg explicitly dropped all claims against the Firm, leaving the Plan as the only defendant.  However, the hastily-drafted First Amended Complaint continues to refer to "both Defendants."  (<u>E.g.</u>, 1AC ¶ 4; <u>see also</u> 1AC ¶ 2 & Certificate of Service, at 14 (describing "Defendant<u>s</u>") (emphasis added))

(1AC ¶ 10).  Thus, even Plaintiffs' own allegations are completely inconsistent with the notion

that there was an absolute 8% guarantee.  Accordingly, there was no ongoing omission.

> 2.    The Actual SPDs – As Opposed to Plaintiffs' Misleading Description
> of Them – Accurately Disclosed the Interest Credits.

Apparently conscious that their mythical 8% guarantee would not survive comparison to

the Plan Document, Plaintiffs also point to the Summary Plan Documents ("SPDs") as also

omitting the same information.  However, the 1992 SPD, for example, accurately summarized

the Plan disclosures with respect to interest credits, and even explicitly referred Plan participants

to the fuller Plan Document for the complete methodology:

> Interest Credits
> In addition to the Firm's annual "service credits," your account will be credited with
> interest each December 31 (an "interest credit").  The applicable interest rate will be
> determined and announced at the beginning of each Plan Year.  The "interest credit" rate
> for the 1992 Plan Year is 8%.
>      . . . .
> The interest credit rate for a given Plan Year is equal to the average interest rate of one-
> year Treasury Constant Maturities as published in the Federal Reserve Statistical Release
> H.15 (519) of the Board of Governors of the Federal Reserve System, measured on
> October 1, November 1 and December 1 of the immediately preceding Plan Year, plus
> one (1) percentage point.  The average interest rate shall be calculated and rounded to the
> nearest 1/100th of a percentage point.  This rate will not be more than 12%, nor less than
> a rate calculated according to a formula as specified in the Plan.

(Exh. C, at 7 & n.* (1992 SPD)).

Even Plaintiffs must recognize that the second portion of that disclosure, found in

footnote * of the 1992 SPD, accurately summarized the Plan Document's description of the

calculation of the annual minimum interest credit.  Plaintiffs therefore go so far as to allege that

future SPDs omitted that footnote, ostensibly leaving Plan participants in the dark about the

minimum interest calculation:

> The November 1992 SPD contains a footnote that purports to explain the "interest
> credit". . . .  Later SPDs omitted that footnote *.

(1AC n.2, at 6).

However, Plaintiffs' allegations are once again foreclosed by the very documents they cite because – contrary to Plaintiffs' representation – the 1997 SPD contains the exact same footnote, with the exact same disclosure, accurately summarizing the Plan Document and once again explicitly referring Plan participants to the fuller description in the Plan Document:

> The interest credit rate for a given Plan Year is equal to the average interest rate of one-year Treasury Constant Maturities as published in the Federal Reserve Statistical Release H.15 (519) of the Board of Governors of the Federal Reserve System, measured on October 1, November 1 and December 1 of the immediately preceding Plan Year, plus one (1) percentage point. The average interest rate shall be calculated and rounded to the nearest 1/100th of a percentage point. This rate will not be more than 12%, nor less than a rate calculated according to a formula as specified in the Plan.

(Exh. D, at 8 n.1 (1997 SPD). And it must be remembered that this 1997 SPD – which clearly contains the footnote disclosure which Plaintiffs allege was omitted from the SPDs after 1992 – is the last one published prior to the time Alvarez's employment was terminated in 1997 and she received her lump sum distribution in 1998. (1AC ¶¶ 8, 12).

Accordingly, there was no 8% minimum interest credit guarantee, and there was no ongoing omission.

### 3. SPDs, Being Summary Documents, Need Not State Every Detail Contained in the Plan Documents.

As a hedge against the risk that their misstatement of the Plan documents might be discovered, Plaintiffs next broadly gesture toward various regulations concerning the requirements for SPDs, and generally assert that the SPDs must have violated these provisions by failing to describe the guaranteed 8% minimum. (1AC ¶ 17). At the outset, and as shown above, this allegation fails because: (i) there was no such 8% guarantee; and (ii) the SPDs accurately summarized the interest credits disclosed in the fuller Plan Document, and explicitly referred

interested Participants to that Plan Document for further information.  (Supra Sections I.B.1. and I.B.2.).

But these allegations also fail for the independent reason that the SPDs, being summary documents, need not contain every disclosure contained in the fuller Plan Document.  Indeed, there is no requirement – and Plaintiffs certainly point to none – that the SPDs failed to satisfy. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 194 (2d Cir. 2007) (finding omissions in an SPD of information that is required by neither ERISA nor the Labor Department's regulations were insufficient to find an SPD inadequate under § 102(a) of ERISA); see also Winter v. Hartford Life & Accident Ins. Co., 309 F. Supp. 2d 409, 414 (E.D.N.Y. 2004) (noting that an omission in an SPD will not alter the terms of the plan itself, as "by definition, a summary will not include every detail of the thing it summarizes").

C.    The Plan Accurately Stated the Manner in Which the Interest Credit Would Be Calculated Each Year, Because There Was No Entitlement For Terminated Employees to Earn Interest Credits in the Plan After Reaching Age 65.

Plaintiffs also allege that the Plan failed to disclose that terminated employees' funds could continue to earn 8% each year for as long as they left them in the Plan – even after they reached age 65.[7]  The reason that the Plan never disclosed that terminated employees could earn 8% after age 65 is that it simply would not have been true.  Contrary to Plaintiffs' unsupported assertion, by its very terms any participant who separated from service prior to normal retirement age of 65[8] could elect to receive a retirement pension income beginning at age 65[9] or a reduced

_____

[7]    See 1AC ¶ 16 ("the Plan and its fiduciaries never disclosed to participants that they had a right to have their accounts credited with a guaranteed minimum of 8% per year for as long as they left their benefit in the Plan until age 65 (and beyond).") (emphasis added).

[8]    Exh. B § 3.2(a), at 16 (Plan Document) (defining Normal Retirement Age of 65); see also (continued...)

retirement pension income beginning prior to age 65,[10] but in either case the account would cease to accrue interest credits upon the date the participant began to receive such benefits:

> Each [account] shall be adjusted on the December 31 of each Plan Year which begins after December 31, 1991 and precedes the Benefit Commencement Date by an amount equal to the applicable Account balance at the beginning of the Plan Year multiplied by the Periodic Adjustment Percentage. Each Participant's Accounts shall be adjusted as of the Benefit Commencement Date by an amount equal to the applicable Account balance at the beginning of the Plan Year multiplied by the Periodic Adjustment Percentage, and then multiplied by the ratio of the number of full months in the Plan Year prior to the Benefit Commencement date to twelve (12).

(Exh. B § 4.4(c), at 20 (Plan Document)).

Thus, because interest credits would accrue only until the Plan participant began receiving his pension benefits, and there was no way for a terminated employee to delay the commencement of his pension benefits beyond age 65, there is no way for interest credits to accrue beyond age 65. Thus, it would have been affirmatively misleading to include the "disclosure" that Plaintiffs suggest. Accordingly, there was no ongoing omission.

---

[8]    (...continued)
Exh. B § 3.3, at 16 (Plan Document) (defining Early Retirement Age of 55).

[9]    Exh. B § 5.3(a), at 22 (Plan Document) ("[A] Participant who incurs a Separation from Service . . . prior to reaching either his Early or Normal Retirement Date shall receive a Retirement Income . . . commencing on the first day of the month coincident with or next following the sixty-fifth (65th) anniversary of his birth, and such first day of the month shall be his Benefit Commencement Date. . . ."); accord id. § 3.3, at 16.

[10]    Exh. B § 5.3(b), at 22 (Plan Document) ("[A] former Participant described in the first sentence of Section 5.3(a) hereof may elect to commence receiving reduced Retirement Income . . . on (i) the earlier of the first day of the fourth month beginning after his Separation from Service . . . or (ii) the first day of any subsequent month not later than his Normal Retirement Date. The day so elected shall be his Benefit Commencement Date."); accord id. § 3.3, at 16.

D.     The Plan Accurately Stated the Manner in Which the Interest Credit Would
Be Calculated Each Year, Because The Interest Credit Was Not Discretionary,
But Instead Was Established Pursuant to an Explicit Formula Based Upon
Interest Rates Published by the United States Government.

Plaintiffs next assert that the Plan "impl[ied]" that the interest credit would be set on a discretionary, ad hoc basis each year.  (1AC ¶ 17).  However, the claim that the credit was discretionary is foreclosed by the explicit disclosures that the interest credit was established each year pursuant to the clear formula, described above, based upon government-announced interest rates which allow absolutely no room for discretion by the Plan.  (Supra Section I.B.).

And to the extent that Plaintiffs assert that the Plan "impl[ied]" that the interest credit rate would be established each year (1AC ¶ 17), that disclosure is absolutely true, given the fact that the interest credit was established each year pursuant to the stated formula based upon the IRS and Federal Reserve publications of the prior year (supra Section I.B.).  Accordingly, there was no ongoing omission.

II.     ALL OF ALVAREZ'S CLAIMS ARE BARRED
BY A SIX-YEAR STATUTE OF LIMITATIONS.

A.     Dismissal Is Warranted Where Claims
Are Barred By the Statute of Limitations.

It is axiomatic that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate where a party's claims are barred by the statute of limitations.  Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989); Santos v. District Council of New York City & Vicinity of United Brotherhood of Carpenters & Joiners, 619 F.2d 963, 967 n.4 (2d Cir. 1980). Here, there can be no doubt that Plaintiff Alvarez's Claims are all time-barred.

B.    Alvarez's Claims Are Governed by a Six Year Statute of Limitations.

ERISA does not specify a statute of limitations for private civil actions brought pursuant to Section 502(a), 29 U.S.C. 1132(a), such as those asserted in the Complaint.  (1AC ¶ 2).  Such claims are therefore subject to the most analogous state statute of limitations.  And an employee benefits plan governed by ERISA qualifies as a contract within this Circuit.  Carollo v. Cement & Concrete Workers Dist. Council Pension Plan, 964 F. Supp. 677, 688-89 (E.D.N.Y. 1997); see also Barnett v. International Bus. Machs. Corp., 885 F. Supp. 581, 590 (S.D.N.Y. 1995).  Because the Plan in this litigation is governed by New York law (Exh. B § 15.2, at 65 (Plan Document)), the 6-year statute of limitations for contracts under CPLR § 213 will apply, Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001); Miles v. NY State Teamsters Conf. Pension & Ret. Fund, 698 F.2d 593 (2d Cir. 1983).

C.    Alvarez's Claims Accrued, at the Latest, When
       She Received Her Lump Sum Distribution in 1998.

1.    An ERISA Claim Accrues Upon a Clear Repudiation of Benefits.

Although the applicable limitations period is borrowed from state law, federal law continues to govern the date of accrual.  Hirt v. Equitable Ret. Plan for Employees, Managers and Agents, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006).  As courts in the Second Circuit have consistently held, a cause of action under ERISA accrues upon "a clear repudiation by the plan that is known, or should be known, to the plaintiff."  Id.; accord Miles, 698 F.2d at 598.  Thus, "accrual is triggered by either actual knowledge or constructive knowledge of a clear repudia-tion."  Carey v. Int'l Bhd. of Elec. Workers, 201 F.3d 44, 48 n.4 (2d Cir. 1999).  In this case, Alvarez's claims accrued no later than when she received her lump sum distribution in 1998.

2.      Alvarez Explicitly Alleges That the Plan Repudiated its "Clear"
and "Well-Established" Legal Obligations at the Moment it Made
Her Purportedly Inaccurate Lump Sum Distribution.

Plaintiffs maintain that Alvarez did not seek an immediate administrative review of her lump sum benefit determination in 1998 because by then it was already clear to her that the Plan administrators would have remained steadfast in repudiating these "well established" legal duties:

> Had Plaintiffs submitted a claim for the recalculation of their lump sums, Defendant would simply have responded that Plaintiffs had already received an amount equal to their account balance and that is all that they are entitled to receive. . . .

(1AC ¶ 21).

Indeed, because Alvarez now pleads that it would have been "futile" to pursue any administrative remedies,[11] that amounts to a binding admission that her lump sum distribution in 1998 amounted to a clear repudiation of benefits – as that is exactly what is required to excuse oneself from the judicial requirement of exhaustion of administrative remedies.  Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001) (a plaintiff must prove an unequivocal denial of benefits "such that it is clear that seeking further administrative review of the decision would be futile"); Barnett v. International Bus. Machs. Corp., 885 F. Supp. 581, 591 (S.D.N.Y. 1995) (ERISA claim "accrues at the time at which it became futile to apply for benefits, because . . . at that time there was a de facto denial of [the beneficiary's] claim."); accord Union Pac. R.R. v. Beckham, 138 F.3d 325, 332 (8th Cir. 1998) (claim accrues at the point at which exhaustion of remedies is claimed to have been futile).[12]

---

[11]    See, e.g., 1AC ¶ 21.

[12]    This case is therefore the opposite of those in which plan participants pursued administrative remedies or were unaware of the repudiation until after they had engaged in further dialog
(continued...)

17

3.    The Lump Sum Distribution is the Only Possible Date of Accrual, Because Alvarez Does Not Allege Any Facts Between When She Received Her "Incorrect" Distribution and When She Filed Her Claims.

The First Amended Complaint fails to allege a single affirmative act, a single communication, or a single fact of any kind between the time Alvarez received her lump sum distribution in 1998 and the time she filed her claim in 2007.  (1AC, passim).  In other words, every fact pleaded in the First Amended Complaint was known or available to Alvarez no later than when she received her allegedly insufficient lump sum distribution in 1998.

No further facts were necessary, because it was already clear to Alvarez in 1998 that the conduct of "the Plan and those acting on its behalf" in making the lump sum payments was so overtly egregious that it "evidenc[ed] their belief that the law does not apply to them."  (1AC ¶ 26 (emphasis added)).  Thus, the date of the lump sum distribution is the only accrual date that would give any meaning to the statute of limitations in this case.  See Carey, 201 F.3d at 49 (rejecting argument that claim accrued only after administrative proceedings where such a rule would render the "limitation period meaningless").

In a case truly on point, Laurenzano v. Blue Cross and Blue Shield of Mass., 134 F. Supp. 2d 189 (D. Mass. 2001), the plaintiff elected to receive a lump sum distribution from his pension plan upon termination of his employment.  Calculation of the lump sum benefit was improper because projected future credits were not included.  However, the court found that such claims accrued no later than upon receipt of the lump sum distribution:

---

[12]   (...continued)
with the plan.  E.g., Novella v. Westchester County, 443 F.Supp.2d 540 (S.D.N.Y. 2006) (cited in 1AC ¶ 15).

> [E]ach class member knew as much as he ever reasonably would know about his injury at the time he received his lump sum distribution, so the latest possible date of accrual for each class member came when he actually was injured.
>
> . . . .
>
> The lump sum distribution represents the actual injury to each class member and marks the time after which delay in seeking redress would be unreasonable. . . . If a class member did <u>not</u> seek internal remedies, whether intentionally or not, this Court will not extend the statute of limitations by assuming that the class member exhausted his internal remedies some arbitrary number of days after the lump sum distribution. Thus, each class member's cause of action accrued when he received his lump sum distribution <u>unless</u> he sought internal remedies.

<u>Laurenzano</u>, 134 F. Supp. 2d at 208-10; <u>accord</u> <u>Miller v. Fortis Benefits Ins. Co.</u>, 475 F.3d 516, 521-22 (3d Cir. 2007) ("[R]epudiation by underpayment should ordinarily be made known to the beneficiary when he first receives his miscalculated benefit award. At that point, the beneficiary should be aware that he has been underpaid and that his right to a greater award has been repudiated. The beneficiary should exercise reasonable diligence to ensure the accuracy of his award.") (affirming dismissal of ERISA claim seeking redress for incorrectly calculated benefits); <u>Hebert v. AAI UIC Ret. Plan</u>, 2006 U.S. Dist. LEXIS 51562 at *10, n.9 (D.Md. July 13, 2006) (claim accrued upon initial receipt of pension check which was lower than it was supposed to be, regardless of whether or not plaintiff considered it significant at the time).[13]

*          *          *

Because Alvarez waited nine years to commence her claims – despite her contemporane-ous knowledge that administrative remedies would be futile and in the face of "evidenc[e]" that the Plan thought itself above the law – her claims should be dismissed.

---

[13]    The <u>Laurenzano</u> court recognized that the statute of limitations might be tolled for a reasonable period of time for claimants who appeal their benefit determination, in order to promote such administrative procedures. <u>Laurenzano</u>, 134 F. Supp.2d at 211. However, such tolling is inapplicable to the present case, as neither Plaintiff ever sought administrative relief because they already allegedly knew that such administrative proceedings would be futile. (<u>Supra</u> Section II.C.2.).

CONCLUSION

For all the foregoing reasons, Defendant respectfully requests an Order:

(i)   dismissing with prejudice all of Plaintiff Alvarez's claims as time barred;

(ii)   dismissing with prejudice all claims in the First Amended Complaint based upon allegations of an ongoing omission;

(iii)   setting a time 30 days thereafter within which Defendant may answer the remainder of the First Amended Complaint; and

(iv)   for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 19, 2007

                /s/ Samuel Kadet
                Samuel Kadet
                Henry P. Wasserstein
                James W. Brown
                SKADDEN, ARPS, SLATE,
                  MEAGHER & FLOM LLP
                Four Times Square
                New York, New York 10036-6522
                Telephone: (212) 735-3000

                *Attorneys for Defendant Skadden, Arps,*
                  *Slate, Meagher & Flom LLP Pension Plan*