UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JONATHAN X. FLAGG and                        :
                                             :
JACQUELINE ALVAREZ,                          :
                                             :
On behalf of themselves and on               :
behalf of all others similarly situated,     :
                                             : 07 Civ. 7392 (PKC)
                            Plaintiffs,      :
                                             :
            - against -                      :  First Amended Class Action Complaint
                                             :
SKADDEN, ARPS, SLATE, MEAGHER                :
& FLOM PENSION PLAN,                         :
                                             :
                            Defendant.       :
---------------------------------------------------------X

## Nature of Action

1.  This is a class action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

## Jurisdiction and Venue

2.  This Court has subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.  In addition, the Court has jurisdiction pursuant to 29 U.S.C. §§ 1132(e)(1) and (f) since this action is brought under § 502(a) of the ERISA statute, 29 U.S.C. § 1132(a).

3.  This Court has personal jurisdiction over Defendants because, among other reasons, ERISA provides for nationwide service of process, *see* ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2); and Defendants have continuous and systematic general business contacts with the nation as a whole and with this District in particular.

4.   Venue here is proper under ERISA § 502(e), 29 U.S.C. § 1132(e), which provides that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." Venue is proper here for any or all of the four reasons provided by the statute: (1) the Plan is administered in this District; (2) some or all of the breaches occurred in this District; (3) either or both Defendants "may be found" in this District, and/or (4) either or both Defendants "reside[]" in this District.

**Parties**

5.   Plaintiff Jonathan X. Flagg is a former employee of the Firm and was an active participant in the Plan during his period of employment. Mr. Flagg remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because although he received benefits from the Plan, the Plan owes him additional benefits that it has not yet paid him, as set forth herein.

6.   Plaintiff Jacqueline Alvarez is a former employee of the Firm and was an active participant in the Plan during her period of employment. Ms. Alvarez remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

7.   Defendant Skadden, Arps, Slate, Meagher, & Flom LLP Pension Plan (EIN: 13-1777230 - Plan No.: 002) (the "Plan") is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35). Skadden, Arps, Slate, Meagher, & Flom LLP and Affiliates ("Skadden" or the "Firm") is the Plan's sponsor and a

fiduciary with respect to the Plan within the meaning of ERISA §§ 3(16)(B), 402(a), 29 U.S.C. §§ 1002(16)(B), 1102(a).  *See, e.g.,* Plan document effective January 1, 2002 as amended, Art. 12.  The Plan's administrator within the meaning of ERISA §§ 3(16)(A), 29 U.S.C. § 1002(16)(A), is a Committee appointed by the Firm consisting of Skadden partners or employees.  *Id.*  The Plan designates the Committee as the Plan's "named fiduciary" within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a).  *Id.*  All references to the "Plan" herein should be read to also refer to the Firm, the Committee, its members and anyone else acting on behalf of the Plan or one of the Plan's fiduciaries.[1]

### Facts

8.   Plaintiff Flagg was employed by the Firm from 1998 until 2003.  Plaintiff Alvarez was employed by the Firm from 1988 to 1997.

9.   During that time, Plaintiffs accrued pension benefits under the Plan, a defined benefit plan of the "cash balance" variety, in which a hypothetical account was established for them.

10.  Under the terms of the Plan, Plaintiffs accrued "service credits" (or "pay credits") based on a percentage of his pensionable compensation together with annual "interest credits" equal to the yield on 1-year Treasury Constant Maturities plus 1% with a guaranteed minimum of the lesser of (a) 8% and (b) the midpoint of the range established for the "standard interest rate" by regulations issued under Section 401(a)(4) of the Internal Revenue Code, and maximum interest credit rate of 12%.

---

[1] Plaintiffs reserve the right to seek to re-add the Firm (named in the original Complaint) to add other parties in the event they are needed to afford complete relief or their presence as defendants is determined otherwise necessary.

11. Under the Plan, participants' right to receive future interest credits on their account balances through normal retirement age (age 65) accrued at the same time as the corresponding pay credits to which the interest credits relate. In technical terms, the Plan was, as a result, a "frontloaded" interest crediting plan within the meaning of the law. *See, e.g.,* IRS Notice 96-8, 1996-1 C.B. 359-61.

12. After terminating employment, Plaintiffs elected to receive their fully-vested Plan benefits in the form of a lump sum distribution. Plaintiff Flagg received a distribution in 2004. He was age 34 at the time. Plaintiff Alvarez received a distribution in 1998. She was age 34 at the time.

13. The IRS specifically admonished cash balance plan sponsors with plans having variable interest rates to specifically "prescribe" in their plan documents an objectively determinable "method for reflecting future interest credits in the calculation of an employee's accrued benefit" that truly reflected "the value of those credits." Notice 96-8, Section III.B.1. The Skadden Plan, however, fails to prescribe any such methodology or acknowledge its obligation to project participants' account balances to normal retirement age at a rate that did not understate the value of the interest credits they had previously earned. It thus calculated and paid Plaintiffs a benefit according to the terms of the Plan that was not the actuarial equivalent of the amount they would have received had they left their benefit in the Plan until age 65.

14. Had the Plan performed the required "whipsaw" calculation by projecting Plaintiff's hypothetical account balance to normal retirement age at a rate that did not understate the value of the interest credits they had previously earned, *see, e.g., Esden v. Bank*

*of Boston,* 229 F.3d 154, 164-173 (2d Cir. 2000), Plaintiffs' benefits expressed in the form of a lump sum would have exceeded the lump sum amount that they received.

15.     Yet when Plaintiffs and the members of the proposed Class applied for their benefits and received lump sum distributions from the Plan, the Plan did not tell them that their applications had been denied in part.  Nor did the Plan ever in any other way clearly repudiate any proposed Class member's right to a lump sum that was the actuarial equivalent of their accrued benefit.  *See, e.g., Novella v. Westchester County*. 443 F. Supp. 2d 540, 545 (S.D. N.Y. 2006) (Mukasey, J.).

16.     To the contrary, the Plan concealed from Plaintiffs and the proposed Class the injury that forms the basis for this action.  The claims asserted here arise out of the Plan's failure to honor its implied-by-law promise to credit participants' accounts with a guaranteed minimum 8% per year interest all the way to age 65 whether or not they left their benefit in the Plan.  Yet the Plan and its fiduciaries never disclosed to participants that they had a right to have their accounts credited with a guaranteed minimum of 8% per year for as long as they left their benefit in the Plan until age 65 (and beyond).

17.     In fact, the Summary Plan Descriptions ("SPDs") provided to participants carefully avoided making such disclosure.  For example, in the November 1992 SPD, participants were told that there are two components to the cash balance formula – service credits and interest credits.  1992 SPD at 7.  The SPD easily could have (and as a matter of law should have, *see* ERISA § 102(a)(1), 29 U.S.C. § 1022(a)(1); 29 C.F.R. § 2520.102-2 (Department of Labor regulations further detailing SPD requirements)) told participants that along with service credits, they accrued the right to receive annual interest credits equal to the

5

yield on 1-year Treasury Constant Maturities plus 1% with a guaranteed minimum of the lesser of (a) 8% and (b) the midpoint of the range established certain IRS regulations (which has never gone below 8%), and a maximum interest credit rate of 12%.  Instead, this SPD and every other subsequent SPD says nothing about an 8% guaranteed minimum.  Instead, the SPDs all imply that the interest rate is set on a discretionary, *ad hoc* basis each year and for the year in question just happened to be 8% -- with no guarantee that it will ever been that high ever again:  "The applicable interest rate will be determined and announced at the beginning of each Plan Year.  The 'interest credit' rate **for the 1992 Plan Year** is 8%." *Id.*  at 7-8 (emphasis added).

18. This obscures rather than discloses the true nature and value of the one of the two critical components of the formula governing the calculation of participants' benefits.  Plaintiff Alvarez and the members of the proposed Subclass cannot be faulted for not having previously questioned the accuracy of the lump sum distributions they received from the Plan, even as far back as 1992:  even assuming it would be appropriate to impute knowledge of the "whipsaw" rule to them, they had no reason to know or suspect that they suffered any injury or that they had been guaranteed anything other than the 1-year Treasury bond plus 1%, *i.e.,* an IRS Notice 96-8 "safe harbor" interest crediting rate, under which their accrued benefit would have been equal to the stated value of their hypothetical account.[2]

---

[2] The November 1992 SPD contains a footnote that purports to explain the "interest credit." *Id.* at 7 n.*. Yet footnote * also omits any reference to the guaranteed minimum 8% crediting rate.  The very last line of footnote * states only that the rate will never be more than 12% and "no[t] less than a rate calculated **according to a formula specified in the Plan**." *Id.* (emphasis added).  Although that formula could have been easily stated (as it is above) and footnote * goes into considerable detail as to exactly how the 1-year Treasury bond aspect of the interest crediting rate is determined (down to the "nearest 1/100th of a percentage point"), there is no reference to the guaranteed minimum 8% rate.  Later SPDs omitted footnote *.

**Exhaustion of the Plan's Claims Process Was Not Required**

19. Plaintiffs did not exhaust the administrative remedies provided under the terms of the Plan prior to initiating this lawsuit because exhaustion of the Plan's internal claims process was not required and/or should be excused in this case, even assuming the Plan had or has an ERISA-compliant claims process.

20. First, the exhaustion requirement does not apply because the claims Plaintiffs raise are statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan. Congress intended that statutory questions of this nature be adjudicated by Article III judges, not employers acting as plan administrators.

21. Second, even if the exhaustion requirement is not categorically inapplicable here, it should be excused as futile. Had Plaintiffs submitted a claim for the recalculation of their lump sums, Defendant would simply have responded that Plaintiffs had already received an amount equal to their account balance and that is all that they are entitled to receive under Defendant's interpretation of the Plan.

22. Futility is also demonstrated by the fact that the legal standard Defendant violated is clear and was well-established long ago – and was confirmed by the IRS as long ago as 1991, *see* "Nondiscrimination Requirements for Qualified Plans," 56 Fed.Reg. 47524, 47528 (1991), before the Plan's illegal methodology for computing lump sums was adopted and put into effect (in 1992). In the intervening 15 years, numerous Courts of Appeals and District Courts have confirmed these requirements. *See, e.g., Esden, supra,*; *Lyons v. Georgia-Pacific Corp.,* 221 F.3d 1235, 1237-38 (11th Cir. 2000); *Berger v. Xerox Corp. Ret. Income Guar. Plan,* 338 F.3d 755, 758 (7th Cir. 2003); *West v. AK Steel Corp.*, 484 F.3d 395

(6th Cir. 2007). Yet the Plan and those acting on its behalf have failed to conform the Plan or their conduct under it to the requirements of the law, evidencing their belief that the law does not apply to them.

27. Third, exhaustion was not required for the separate but related reason that the Plan's internal claims process is not designed to address and is not capable of addressing alleged statutory violations.

28. Finally, exhaustion should be excused because it would serve few if any of the recognized purposes of the exhaustion requirement, as Plaintiffs will demonstrate should Defendant nevertheless seek to compel exhaustion.

## Claim for Relief

29. Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

30. ERISA §§ 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g), and Internal Revenue Code § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d), requires any optional form of benefit paid from a defined benefit plan, including a lump sum distribution, to be no less than the present value of the participant's accrued benefit expressed as an annuity commencing at normal retirement age (under the Plan, age 65).

31. The Plan paid Plaintiffs lump sums that were less than the present value of their accrued benefit in violation of ERISA §§ 203(e) and 205(g), and IRC § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d).

32. The Plan's conduct as described above also resulted in an impermissible forfeiture of benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as

implemented by Treasury Regulation § 1.411(a)-4 and 4T, in that the Plan conditioned the right to receive future interest credits on Plaintiffs not taking a distribution prior to normal retirement age.

### Class Action Allegations

33.     Plaintiffs bring suit on behalf of themselves and on behalf of all other participants and beneficiaries similarly situated (the proposed "Class") under the provisions of Rule 23 of the Federal Rules of Civil Procedure with respect to violations alleged herein.  In addition, Plaintiff Alvarez brings suit on behalf of herself and on behalf of a proposed Subclass defined further below.

34.     The proposed Class is defined as follows:

> All persons who were vested participants in the Skadden, Arps, Slate, Meagher & Flom LLP Pension Plan (the "Plan") who received a distribution in the form of a lump sum prior to August 17, 2006 and prior to having attained normal retirement age under the Plan that equaled the amount of their hypothetical account balance; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

35.     The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(a)(1) are satisfied in that there are too many Class members for joinder of all of them to be practicable.  There are approximately 1,000 members of the proposed Class dispersed among many states.

36.     The claims of the Class members raise numerous common questions of fact and law, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2).  All issues concerning liability are common to all Class members because such issues concern their entitlement to benefits calculated in a manner other than that calculated thus far and their entitlement to relief from harm caused by the violations of law, rather than any action taken

9

by Plaintiffs or any Class member. In addition, all issues concerning relief are also common to the Class.

37. The computation of a participant's lump sum distribution and the amount of lump sum distributions is standardized in that the amount of the lump sum distribution for each member of the Class was calculated in the same manner as described above. Thus, there exist common questions of fact as to each member of the Class. Each Class member's rights will be determined by reference to the same Plan documents and the same provisions of ERISA. Thus, there exist common questions of law as to each Class member, *i.e.*, whether the method of calculating of lump sum distributions violated the law.

38. Plaintiffs' claims are typical of the claims of Class members, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(3). They do not assert any claims relating to the Plan in addition to or different than those of the Class. Plaintiffs' claims are typical of the claims of the Class members in that their respective lump sum distributions were calculated in the same fashion as the rest of the Class, and their rights, as well as those of the Class as a whole, are similarly provided for under the plan document and applicable provisions of ERISA.

39. Plaintiffs are adequate representatives of the proposed Class, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests are identical to those of the proposed Class. The Plan has no unique defenses against them that would interfere with their representation of the class. Plaintiffs have engaged competent counsel with both ERISA and class action litigation experience.

40. Additionally, all of the requirements of Fed. R. Civ. P. 23(b)(1) are satisfied in

that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendant and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties.

41.     All of the requirements of Fed. R. Civ. P. 23(b)(2) also are satisfied in that the Plan's actions affected all Class members in the same manner making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

42.     The proposed Subclass that Plaintiff Alvarez represents is defined as follows:

> All persons who were vested participants in the Skadden, Arps, Slate, Meagher & Flom LLP Pension Plan (the "Plan") who received a distribution under the Plan in the form of a lump sum prior to August 20, 2001 and prior to having attained normal retirement age that equaled the amount of their hypothetical account balance; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

43.     The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(a)(1) are satisfied in that there are too many Subclass members for joinder of all of them to be practicable. There are approximately 500 members of the proposed Subclass dispersed among many states.

44.     The claims of the Subclass members raise common questions of fact and law, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2). Those questions include the validity of Defendant's anticipated statute of limitations defense and whether Defendant ever clearly repudiated the right of Plaintiff Alvarez and the members of the proposed Subclass to the benefit sought here sufficient to cause the applicable limitations period to begin to run.

45.     Plaintiff's claims in this regard are typical of the claims of the Subclass members, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(3). She does not

assert any claims or advance any positions regarding limitations in addition to or different than those of the Subclass.

46. Plaintiff is an adequate representative of the proposed Subclass, and therefore satisfies the requirements of Fed. R. Civ. P. 23(a)(4). Plaintiff's interests are identical to those of the proposed Class. The Plan has no unique defenses against her that would interfere with their representation of the Subclass. Plaintiff has engaged competent counsel with both ERISA and class action litigation experience.

47. Additionally, all of the requirements of Fed. R. Civ. P. 23(b)(1) are satisfied in that the prosecution of separate actions by individual members of the Subclass would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendant and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties.

48. All of the requirements of Fed. R. Civ. P. 23(b)(2) also are satisfied in that the Plan's actions affected all Subclass members in the same manner making appropriate final declaratory and injunctive relief with respect to the Subclass as a whole.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant and that the Court award the following relief:

A. Certification of this action as a class action for all purposes of liability and relief and appointment of undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23.

B. Judgment for Plaintiffs and the Class against Defendant on all claims expressly asserted and/or within the ambit of this Complaint.

      C.      An order awarding, declaring or otherwise providing Plaintiffs and the Class all other such relief to which Plaintiffs and the Class are or may be entitled whether or not specified herein.

      D.      An order awarding pre- and post-judgment interest.

      E.      An order awarding attorney's fees on the basis of the common fund doctrine (and/or other applicable law, at Plaintiffs' election), along with the reimbursement of the expenses incurred in connection with this action.

      F.      An order awarding, declaring or otherwise providing Plaintiffs all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that Plaintiffs may subsequently specify and/or that the Court may deem appropriate.

Dated: October 18, 2007        By:

_____
Eli Gottesdiener [EG0111]
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, N.Y. 11215
(718) 788-1500
(718) 788-1650 (facsimile)

*Attorney for Plaintiffs and the proposed Classes*

CERTIFICATE OF SERVICE

I hereby certify that I caused to be served on October 18, 2007 a copy of the foregoing First Amended Class Action Complaint upon Defendants by service on their counsel as follows:

BY HAND

Henry P. Wasserstein
Samuel Kadet
James W. Brown
Skadden, Arps, Slate, Meagher, & Flom LLP
Four Times Square
New York, NY  10036

_____
Eli Gottesdiener