SKADDEN, ARPS, SLATE, MEAGHER & FLOM

PENSION PLAN

As Amended and Restated Effective January 1, 1994

SASMF 00206

TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| I | DEFINITIONS . . . . . . . . . . . . . . | 2 |
| II | ELIGIBILITY . . . . . . . . . . . . . | 15 |
| III | RETIREMENT DATES . . . . . . . . . . . | 16 |
| IV | PARTICIPANTS' ACCOUNTS, CREDITS TO ACCOUNTS AND CALCULATION OF BENEFITS . . . | 18 |
| V | VESTING . . . . . . . . . . . . . . . | 22 |
| VI | DEATH BENEFITS . . . . . . . . . . . . | 25 |
| VII | PAYMENT OF BENEFITS . . . . . . . . . . | 29 |
| VIII | CONTRIBUTIONS . . . . . . . . . . . . | 43 |
| IX | NONALIENABILITY . . . . . . . . . . . . | 44 |
| X | AMENDMENT OF THE PLAN . . . . . . . . . | 45 |
| XI | TERMINATION OF THE PLAN . . . . . . . . | 46 |
| XII | ADMINISTRATION OF THE PLAN . . . . . . | 49 |
| XIII | THE TRUST AND TRUSTEES . . . . . . . . | 54 |
| XIV | TOP-HEAVY PROVISIONS . . . . . . . . . | 60 |
| XV | MISCELLANEOUS . . . . . . . . . . . . | 65 |

APPENDIX A    Determination of Various
              Actuarial Equivalents

APPENDIX B    Determination of Single Sum Value
              of Participant's Accrued Benefit
              Under the Prior Plan

APPENDIX C    Frozen and Dynamic
              Grandfather Benefits

SASMF 00207

SKADDEN, ARPS, SLATE, MEAGHER & FLOM PENSION PLAN


The Skadden, Arps, Slate, Meagher & Flom Pension Plan is hereby amended and restated (as so restated, the "Plan") to read as follows. Except as otherwise expressly indicated, this amended and restated Plan shall be effective as of January 1, 1994.

The Plan shall be applicable to those persons who (i) are Employees under the terms of the Plan on or after the Effective Date, (ii) become Participants under the terms of the Plan on or after the Effective Date, and (iii) retire or terminate employment on or after the Effective Date.

Except as provided in the Plan or as otherwise required by law, the terms of the Plan shall not be applicable to participants in the Prior Plan who are not Employees on or after the Effective Date and the rights and benefits of participants in the Prior Plan who are not Employees on or after the Effective Date shall be determined under the terms of the Prior Plan.

The amendment and restatement of the Plan in its entirety is intended to comply with the provisions of Section 401(a) of the Internal Revenue Code of 1986, as amended, and applicable regulations thereunder, and the amendment and restatement of the Plan is expressly conditioned upon receipt of a favorable determination letter from the Internal Revenue Service with respect to the Plan as set forth in this document.

# ARTICLE I

## DEFINITIONS

Capitalized words and phrases as used herein shall have the meanings given in this Article I unless a different meaning is required by the context.

1.1   "ACCOUNT and/or ACCOUNTS" means the book-keeping Basic Account and/or Prior Service Account maintained with respect to a Participant as described in Article IV.

1.2   "ACCRUED BENEFIT" means (subject to Section 4.5 hereof), as of the time of reference, a monthly amount of benefit, payable in the form of a single life increasing annuity, commencing immediately on a Participant's Normal Retirement Date or earlier time of reference (or if the Participant has not Separated From Service, as if the Participant had Separated From Service at the time of reference); such single life annuity is the result of dividing the then current value of such Participant's Account or Accounts by the applicable factor from Table A of Appendix A (attached hereto).  As provided in Section 4.5 hereof, the "Accrued Benefit" of a Participant described in Section 4.5(b) or 4.5(c) hereof, as of the time of reference, when converted to the form of benefit elected by, or otherwise payable with respect to, such Participant, shall not be less than his Frozen Grandfather Benefit or his Dynamic Grandfather Benefit, as applicable, when converted to the same form of benefit.  Appendix A and the other appendices attached hereto are hereby made a part hereof.

1.3   "ACTUARIAL EQUIVALENT" means with respect to any specified benefit, another benefit commencing at a different date and/or payable in a different form than the specified benefit, but which has the same present value as the specified benefit, when measured on the basis of the interest rate, mortality table and other factors, if any, which are applicable to such other benefit, and are specified in Appendix A as in effect at the date of commencement of such other benefit.

1.4   "AFFILIATE" means any corporation or unincorporated business treated as a "single employer"

2

SASMF 00209

with the Firm within the meaning of Sections 414(b), (c), (m) and (o) of the Code provided that, for purposes of the limitations upon the benefits of a Participant contained in Section 7.10 hereof, "Affiliate" status shall be determined in accordance with Section 415(h) of the Code. For purposes of determining whether or not a person is an employee of an Affiliate and the period of employment of such person, each entity (other than the Firm) shall be treated as an Affiliate only for such period or periods during which such entity is treated as a "single employer" with the Firm under such Sections of the Code.

1.5  "ASSOCIATE" means any Employee (within the meaning of clause (i) of Section 1.21 hereof) who has a United States Bachelor of Laws degree or Doctor of Jurisprudence degree (or the equivalent thereof) or who is admitted to the bar of a state in which the Firm has an office and who, in either case, performs legal services as his regular assignment, but is not assigned to the managing clerk department, legal assistant department, the library or any other administrative department of the Firm.

1.6  "BASIC ACCOUNT" means the account described in Sections 4.1 and 4.2 hereof.

1.7  "BASIC CREDITS" means the amounts defined in Section 4.12 hereof.

1.8  "BENEFICIARY" means such person or persons as may be designated pursuant to Section 6.3 hereof by a Participant or such person or persons (or, if applicable, the Participant's estate) as may otherwise be entitled upon the death of a Participant to receive any benefits or payments hereunder.

1.9  "BENEFIT COMMENCEMENT DATE" means, in the case of an annuity form of distribution, the first day of the first period with respect to which such annuity is payable pursuant to the Plan, and, in the case of a lump sum payment, the first day of the first period with respect to which such benefit would be payable pursuant to the Plan if such benefit were payable in the annuity form.

3

SASMF 00210

1.10 "BREAK IN SERVICE" means, with respect to any Employee for any Plan Year consisting of twelve (12) months, the completion of fewer than five hundred one (501) Hours of Service with the Firm or an Affiliate; provided, however, that for purposes of the Plan other than Section 1.57 or Article II, such Employee also ceases to be an Employee during such Plan Year (or in the immediately preceding Plan Year) for reasons other than a mutually-agreed-upon nonprejudicial cessation of employment, leave of absence, or death.  In the case of a Plan Year consisting of fewer than twelve (12) months, the number of Hours of Service required to avoid a Break in Service under the immediately preceding sentence is to be determined by multiplying the number of complete months in such short Plan Year by forty-one and two-thirds (41-2/3).  Notwithstanding any other provision of this Section 1.10 to the contrary, if an Employee is absent from work for any period by reason of (a) such individual's pregnancy, (b) the birth of a child of such individual, (c) the placement of a child with the individual in connection with the adoption of such child by such individual, or (d) the caring for a natural or adopted child for a period beginning immediately following such birth or placement, then the Employee shall be credited (solely for purposes of this Section 1.10) with those Hours of Service that otherwise would normally have been credited to such Employee but for such absence, except that (i) the total number of Hours of Service so credited shall not exceed five hundred and one (501) and (ii) such Hours of Service shall be credited as Hours of Service in the Plan Year in which the absence from work commences only if the Employee would be prevented from incurring a Break in Service in such Plan Year solely by virtue of such crediting, and shall otherwise be credited in the Plan Year immediately following the Plan Year in which the absence from work commences.

1.11 "CODE" means the Internal Revenue Code of 1986, as amended from time to time.

1.12 "COMMITTEE" means the Plan administrative committee appointed by the Firm pursuant to Section 12.1 hereof to serve as Plan Administrator.

1.13 "COMPENSATION" means total pay (including salary, bonus, overtime pay, and all other forms of remuneration included in the definition of "wages" under

4

SASMF 00211

the Federal Insurance Contribution Act -- without regard
to any dollar limitation contained in such definition)
paid or due to be paid by the Firm to an Employee for the
period while he is a Participant (but not while he is an
Inactive Participant) for any Plan Year, including all
Firm contributions made pursuant to a pre-tax salary
reduction election by the Participant to any plan main-
tained by the Firm that is intended to qualify as a plan
described in Section 120, 125 or 129 of the Code, but
excluding another Firm contribution made with respect to
such Participant to any welfare benefit or insurance plan
maintained by the Firm (whether such plan uses the Firm's
contribution to provide such Participant with cash bene-
fits, non-cash benefits or a combination thereof). With
respect to each Participant who was a Participant in the
Skadden, Arps, Slate, Meagher & Flom Special Partners'
Pension Plan on December 30, 1988, Compensation means
with respect to a Plan Year, net earnings from self-
employment as properly reported on the applicable Inter-
nal Revenue Service Form K-1 provided by the Firm (after
taking into account the deduction allowed under Section
404 of the Code for contributions made by the Firm to the
Plan and to other tax-qualified plans maintained by the
Firm) to the extent such net earnings constitute com-
pensation for personal services which are actually ren-
dered by such Participant and are a material income-
producing factor in the Firm's business to which the Plan
applies.  Notwithstanding any other provision of this
Section 1.13, the maximum amount of Compensation to be
taken into account under the Plan for any Plan Year
beginning after December 31, 1993, shall not exceed
$150,000 as adjusted by the Secretary of the Treasury in
accordance with the provisions of Section 401(a)(17) of
the Code.  In determining the Compensation of a Partici-
pant for purposes of this limitation, the rules of Sec-
tion 414(q)(6) of the Code shall apply, except in apply-
ing such rules, the term "family" shall include only the
spouse of the Participant and any lineal descendants of
the Participant who have not attained age nineteen (19)
before the close of the Plan Year.  If, as a result of
the application of such rules, the adjusted $150,000
limitation is exceeded, then the limitation shall be
prorated among the affected individuals in proportion to
each such individual's Compensation as determined under
this Section 1.13 prior to the application of this limi-
tation.

SASMF 00212

1.14 "DEFERRED RETIREMENT DATE" means the date defined in Section 3.4 hereof.

1.15 "DISABILITY" shall mean the mental or physical incapacity of an Employee which has lasted longer than six (6) months and which, in the opinion of a licensed physician selected or approved by the Committee, (A) renders the Employee totally incapable of performing his assigned duties with the Firm and (B) is likely to be of indefinite duration.

1.16 "DYNAMIC GRANDFATHER BENEFIT" means the benefit described in Section 4.5(c) hereof and Appendix C hereto.

1.17 "EARLY RETIREMENT DATE" means the date defined in Section 3.3 hereof.

1.18 "EFFECTIVE DATE" of this Plan means January 1, 1994.

1.19 "ELECTION PERIOD" means the time period defined in Section 7.3(b) hereof.

1.20 "ELIGIBLE EMPLOYEE" means an Employee other than (i) a Legal Employee (as defined in Section 1.31 hereof), and (ii) an Employee of an Affiliate unless such Affiliate has adopted the Plan.

1.21 "EMPLOYEE" means (i) an individual described in Section 3121(d)(1) or (2) of the Code who is employed by the Firm or an Affiliate other than any common law employee of the Firm who is not a citizen of the United States and who is primarily employed by an office of the Firm located outside the United States, and (ii) a member of the Firm who is an employee described in Section 401(c)(1) of the Code provided such individual was a Participant in the Prior Plan on December 31, 1991. "Employee" does not include a "leased employee" (as defined in Section 414(n) of the Code).

1.22 "EMPLOYMENT COMMENCEMENT DATE" means the date upon which an Employee first performs an Hour of Service.

1.23 "ENROLLED ACTUARY" means an individual who has been approved by the Joint Board for the Enrollment

6

SASMF 00213

of Actuaries to perform actuarial services required under
ERISA or any regulations thereunder.

1.24 "ENTRY DATE" means January 1 and July 1 of
any year.

1.25 "ERISA" means Public Law No. 93-406, the
Employee Retirement Income Security Act of 1974, as
amended from time to time.

1.26 "FROZEN GRANDFATHER BENEFIT" means the
benefit described in Section 4.5(b) hereof and Appendix C
hereto.

1.27 "FIRM" means Skadden, Arps, Slate, Meagher
& Flom, a partnership, and any successor thereto.  For
purposes hereof, "successor" includes any transferee of
all or substantially all of the assets of the Firm which
continues the Plan.

1.28 "HIGHLY COMPENSATED EMPLOYEE" means an
individual determined in accordance with Section 414(q)
of the Code, and in accordance with such rules and regu-
lations as shall be promulgated by the Internal Revenue
Service pursuant to such Section, and shall mean an
Employee who, at any time during the Plan Year being
tested (the "determination year") or the twelve (12)
month period immediately preceding the determination year
(the "look-back year") (i) was a five percent (5%) owner
(as defined in Section 416(i)(1) of the Code) with re-
spect to the Firm or an Affiliate, (ii) earned more than
$50,000 of Section 414(q) compensation (as defined in
Section 414(q)(7) of the Code) and was among the
"top-paid group" (as defined herein), (iii) earned more
than $75,000 of Section 414(q) compensation, or (iv) was
one of the fifty (50) highest-paid officers who earned
more than fifty-percent (50%) of the defined benefit plan
dollar limit in effect under Section 415(b)(1)(A) of the
Code with respect to such year.  For purposes of this
Section 1.28, the $50,000 and $75,000 amounts are to be
indexed at the same time and in the same manner as is the
dollar limit applicable to defined benefit plans under
Section 415 of the Code.

For purposes of the foregoing paragraph,

7

SASMF 00214

(a)    In the case of any determination year, an Employee not described in clause (ii), (iii) or (iv) of the first paragraph of this Section 1.28 for the look-back year (without regard to this Section 1.28(a)) shall not be treated as being described in clause (ii), (iii) or (iv) of such paragraph for the determination year unless such Employee is a member of the group consisting of the one hundred (100) employees paid the greatest Section 414(q) compensation during the determination year; and

(b)    A former employee shall be treated as a Highly Compensated Employee if (i) such employee was a Highly Compensated Employee when such employee Separated From Service, or (ii) such employee was a Highly Compensated Employee at any time after attaining age fifty-five (55).

Notwithstanding the foregoing provisions of this Section 1.28, for purposes of determining the number of Employees who are in the "top-paid group" for any determination year, the Firm or an Affiliate shall elect in accordance with Treasury Regulation Section 1.414(q)-1T, Q&A-9(b)(2), to make such determination based on all Employees of the Firm and all Affiliates.

1.29 (a)    "HOUR OF SERVICE" means each hour for which an employee is paid or entitled to payment by the Firm or an Affiliate -

(1)    for the performance of duties;

(2)    on account of a period of time during which no duties are performed (irrespective of whether the Employee has incurred a Separation From Service) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence;

(3)    for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Firm or an Affiliate;

8

SASMF 00215

provided, however, that no hour shall be credited as an Hour of Service under more than one of the preceding clauses.

(b)    Hours of Service determined in accordance with Section 1.29(a)(1) hereof shall be credited for the Plan Year (or other applicable computation period specified in the Plan) in which the duties were performed.

(c)    of Service determined in accordance with Section 1.29(a)(2) hereof shall be credited for the Plan Year (or other applicable computation period under the Plan) during which the Employee is compensated for other than the performance of duties.    Notwithstanding anything to the contrary in the preceding sentence,

(1)    Not more than five hundred one (501) Hours of Service shall be credited under Section 1.29(a)(2) to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single Plan Year or other applicable computation period under the Plan);

(2)    An hour for which an Employee is directly or indirectly paid or entitled to payment, on account of a period during which no duties are performed shall not be credited to such Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, or unemployment compensation or disability insurance laws; and

(3)    Hours of Service shall not be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

For purposes of Section 1.29(a)(2) hereof, a payment shall be deemed to be made by or due from the Firm or an Affiliate regardless of whether any such payment is made by or due from the Firm or an Affiliate directly, or indirectly through, among others, a trust fund or insurer to which the Firm or an Affiliate contributes or pays

9

SASMF 00216

premiums, and regardless of whether contributions made or due to any such trust fund or insurer (or other entity) are for the benefit of a particular Employee or are on behalf of a group of Employees in the aggregate.

(d)   Hours of Service determined in accordance with Section 1.29(a)(3) hereof shall be credited for the Plan Year (or other applicable computation period under the Plan) to which the agreement or award pertains.

(e)   Hours of Service credited under Section 1.29(a)(1) hereof shall be determined from records maintained by the Firm; provided, however, that, in the case of an Employee whose Compensation is not determined on the basis of certain amounts for each hour worked and whose hours are not required to be counted and recorded by any Federal law (such as the Fair Labor Standards Act), such Employee's Hours of Service need not be determined from employment records, and such Employee may be credited with fifty (50) Hours of Service under Section 1.29(a)(1) hereof for each week or ten (10) Hours of Service for each day, in which he would be credited with any Hours of Service under the provisions of this Section, so long as the result of such method of crediting is to credit him with no fewer than one thousand (1,000) Hours of Service for the Plan Year.

(f)   Hours of Service credited under either Section 1.29(a)(2) or 1.29(a)(3) hereof shall be uniformly credited on the basis of forty (40) Hours of Service for each week, or eight (8) Hours of Service for each day.

(g)   In granting or withholding "leaves of absence" under Section 1.29(a)(2) hereof, the Firm shall apply uniform and non-discriminatory rules to all Employees in similar circumstances.

(h)   Nothing in this Section 1.29 shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States or any rule or regulation issued under any such law.  Nothing contained herein shall be construed as denying an Employee credit for an Hour of Service if credit is required by Federal law, and the extent of any such credit shall be determined under such law.

10

SASMF 00217

1.30 "INACTIVE PARTICIPANT" means a Participant who is not an Eligible Employee.

1.31 "LEGAL EMPLOYEE" means any Employee who is Of Counsel, a Special Counsel, an Associate, the Firm's Managing Director or, subject to Section 1.37 hereof, a Partner.

1.32 "LIMITED PARTICIPANT" in respect of a Plan Year shall mean a Participant who is an Eligible Employee but who, during such Plan Year, neither completed a Year of Service nor incurred a Break in Service.

1.33 "NORMAL RETIREMENT DATE" means the date defined in Section 3.2 hereof.

1.34 "OF COUNSEL" means any Employee who meets the applicable requirements respecting an Associate and who has been designated as an Of Counsel by the Firm.

1.35 "OPTION" means any of the optional methods of payment of Retirement Income which a Participant may elect in accordance with Article VII hereof.

1.36 "PARTICIPANT" means an individual who has qualified for participation hereunder pursuant to Article II hereof and who continues to be entitled to any bene-fits under the Plan. For purposes of the Plan, the term "Participant" shall include Inactive Participants and Limited Participants unless the Plan expressly provides otherwise.

1.37 "PARTNER" means a member of, i.e., a partner in, the Firm, pursuant to applicable state law, except that, for purposes of the term "Legal Employee" as used in the Plan, the term "Partner" shall not include a partner in the Firm who was a Participant on December 31, 1991 in the Prior Plan, and such partner shall not be treated as a Legal Employee hereunder.

1.38 "PERIODIC ADJUSTMENT CREDITS" means the amounts defined in Section 4.4 hereof.

1.39 "PERIODIC ADJUSTMENT PERCENTAGE" means the percentage defined in Section 4.4 hereof.

11

SASMF 00218

1.40 "PLAN" means the Skadden, Arps, Slate, Meagher & Flom Pension Plan as from time to time amended.

1.41 "PLAN YEAR" means a twelve (12) month period beginning on January 1 and ending on December 31 in any year or, with respect to the period prior to the Effective Date, the Plan Year described in the Prior Plan.

1.42 "PRIOR PLAN" means the Skadden, Arps, Slate, Meagher & Flom Pension Plan, as in effect on December 31, 1993 or as in effect at any specified time prior to such date, except that, with respect to the period prior to January 1, 1989, "Prior Plan" means the Skadden, Arps, Slate, Meagher & Flom Non-Legal Employees' Pension Plan or the Skadden, Arps, Slate, Meagher & Flom Special Partners' Pension Plan, as applicable. The rights and benefits of participants under the Prior Plan who are not Employees on or after the Effective Date shall be determined under the Prior Plan except as otherwise provided herein. A Participant's Years of Service under the Prior Plan shall be treated as Years of Service for all purposes under the Plan. Each beneficiary designation, spousal consent, benefit election, or applicable qualified domestic relations order, if any, which was in effect on December 31, 1993 under the Prior Plan shall be effective as to the respective Participant under the Plan as if made under the Plan.

1.43 "PRIOR SERVICE ACCOUNT" means the account described in Sections 4.1 and 4.3 hereof.

1.44 "PRIOR SERVICE CREDITS" means the amounts defined in Section 4.3 hereof.

1.45 "RE-EMPLOYMENT COMMENCEMENT DATE" shall be the first date on which an Employee completes an Hour of Service following the most recent Break in Service.

1.46 "RETIRED PARTICIPANT" means any Participant who becomes entitled to benefits under the Plan pursuant to Article III hereof.

1.47 "RETIREMENT DATE" means the date defined in Section 3.1 hereof.

12

SASMF 00219

1.48 "RETIREMENT INCOME" means the retirement benefits provided to Participants and their joint annuitants and beneficiaries in accordance with the applicable provisions of Articles III, V and VII. The calculation of such retirement benefits, in whatever form they are payable, shall be based on the Accrued Benefit of the respective Participant.

1.49 "SEPARATION FROM SERVICE" (or any linguistic variation thereof) means termination of employment of an Employee with the Firm or an Affiliate for any reason. Separation From Service shall be deemed to occur upon an Employee's incurring a Disability. Separation From Service shall not be deemed to occur upon an Employee's transfer from the employment of the Firm to any Affiliate or vice versa, or upon an Employee's becoming a Legal Employee.

1.50 "SOCIAL SECURITY RETIREMENT AGE" means the age used as the retirement age under Section 216(1) of the Social Security Act (or any successor provision), except that such Section shall be applied without regard to the age increase factor, and as if the early retirement age under Section 216(1)(2) of such Act (or any successor provision) were age sixty-two (62).

1.51 "SPECIAL COUNSEL" means an Employee who meets the applicable requirements respecting an Associate and who has been designated as a Special Counsel by the Firm.

1.52 "SPECIAL SUBCOMMITTEE" means one of the special subcommittees which may be established by the Committee in accordance with Section 12.10 of the Plan.

1.53 "SPOUSE" means a husband or wife to whom a Participant is married on the earlier of (a) the date of his death, and (b) his Benefit Commencement Date. To the extent provided under a qualified domestic relations order as defined in Section 414(p) of the Code, the term "Spouse" shall include a former spouse.

1.54 "TRUSTEE" or "TRUSTEES" means Stuart N. Alperin, Charles M. Fox, James A. Levitan, Robert C. Vincent, Jr., and Earle Yaffa, and any additional or successor Trustee(s) as shall from time to time be ap-

13

pointed by the Firm until they shall cease to serve as Trustees pursuant to Sections 13.12 and 13.13 hereof.

1.55 "TRUST FUND" or "TRUST" means all of the assets which are held by the Trustee(s) hereunder.

1.56 "YEARS OF SERVICE" means with respect to any Employee who has at least one (1) Hour of Service under the Plan on or after January 1, 1992, each Plan Year beginning on or after January 1, 1992 and commencing after such Employee has attained the age of eighteen (18) years during which an Employee has completed at least one thousand (1,000) Hours of Service. In the case of any Plan Year consisting of fewer than twelve (12) months, the number of Hours of Service required to complete a Year of Service shall be determined by multiplying the number of complete months in such short Plan Year by eighty-three and one-third (83-1/3). For periods prior to January 1, 1992, the term "Years of Service" shall be defined in accordance with the provisions of the Prior Plan.

1.57 "YEAR OF ELIGIBILITY SERVICE" means a consecutive twelve (12) month period which begins on an Employee's Employment Commencement Date, and during which he has completed at least one thousand (1,000) Hours of Service; provided, however, that if an Employee fails to complete at least one thousand (1,000) Hours of Service in such consecutive twelve (12) month period, Year of Eligibility Service shall mean the Plan Year (or, with respect to periods prior to the Effective Date of the Plan, the Plan Year under the Prior Plan) which includes the first anniversary of the Employee's Employment Commencement Date, and where additional computation periods are necessary, succeeding Plan Years (or, with respect to periods prior to the Effective Date of the Plan, Plan Years under the Prior Plan), in which the Employee completes at least one thousand (1,000) Hours of Service. If an Employee completes a Year of Eligibility Service which overlaps two (2) Plan Years, but fails to complete at least one thousand (1,000) Hours of Service in either of the overlapped Plan Years, the completed Year of Eligibility Service shall also be considered a Year of Service for vesting purposes under Section 5.1 hereof.

14

SASMF 00221

ARTICLE II

<u>ELIGIBILITY</u>

2.1 <u>Eligibility</u>.  (a)  Each Employee on the Effective Date who was a participant in the Prior Plan on December 31, 1993, shall be a Participant in the Plan.

(b)  Each other Eligible Employee of the Firm shall become a Participant on the first Entry Date coincident with or next following his having both attained the age of twenty-one (21) years and completed one (1) Year of Eligibility Service.

2.2 <u>Re-employment</u>. (a)  An Employee who becomes a Participant pursuant to Section 2.1 hereof who subsequently incurs a Break in Service shall be eligible to again become a Participant as of his Reemployment Commencement Date.

(b)  Any other Eligible Employee who incurs a Separation From Service shall be eligible to commence participation in the Plan as of the later of (i) his Reemployment Commencement Date and (ii) the first Entry Date (whether or not he is then an Employee) occurring after the Employee first meets the service and age requirements of Section 2.1(b) hereof.

2.3 <u>Information</u>.  If the Committee so requests, an Employee who has qualified for participation in the Plan shall file with the Committee a statement, in such form as the Committee may prescribe, setting forth his age, and giving such proof thereof as shall be required of him.

15

SASMF 00222

ARTICLE III

RETIREMENT DATES

3.1  <u>Retirement Date</u>.  A Participant's Retirement Date may be his Normal, Early or Deferred Retirement Date, whichever is applicable to him pursuant to the following Sections of this Article III.

3.2  <u>Normal Retirement Date</u>.  (a)  A Participant's Normal Retirement Date shall be the first day of the month coincident with or next following the date upon which the Participant shall have attained the age of sixty-five (65) years.

(b)  A Participant who Separates From Service on his Normal Retirement Date for a reason other than death shall be entitled to receive Retirement Income payable in accordance with the provisions of Article VII. Subject to Section 7.5(c) hereof, such Participant's Benefit Commencement Date shall be his Normal Retirement Date.

3.3  <u>Early Retirement Date</u>.  A Participant who Separates from Service for a reason other than death prior to his Normal Retirement Date, but after completing at least ten (10) Years of Service, shall be entitled to receive Retirement Income payable in accordance with the provisions of Article VII.  The Participant's Early Retirement Date shall be the first day of the month coincident with or next succeeding the first date upon which such Participant has both been Separated From Service and attained the age of fifty-five (55) years.

Subject to Section 7.5(c) hereof, unless such Participant elects an earlier date, the Benefit Commencement Date shall be his Normal Retirement Date.  The Participant may elect a Benefit Commencement Date which is the first day of any month coincident with or following his Early Retirement Date but prior to his Normal Retirement Date.

3.4  <u>Deferred Retirement Date</u>.  A Participant may continue in the employment of the Firm or an Affiliate beyond his Normal Retirement Date.  If he then Separates from Service for a reason other than than death, such Participant shall be entitled to receive Retirement

16

SASMF 00223

Income payable in accordance with the provisions of Article VII and the first day of the month coincident with or next succeeding the date upon which such Participant incurs a Separation From Service shall be known as his Deferred Retirement Date. Subject to Section 7.6 hereof, such Participant's Benefit Commencement Date shall be his Deferred Retirement Date. A Participant who is then an Employee may elect to commence receiving Retirement Income payments in accordance with the provisions of Article VII as of the first day of any month coincident with or following December 1 of the calendar year in which such Participant attains the age of 70 1/2 and prior to the applicable date set forth in Section 7.6(a) or 7.6(b) hereof; such Participant's Benefit Commencement Date shall be his Deferred Retirement Date.

17

SASMF 00224

## ARTICLE IV

## PARTICIPANTS' ACCOUNTS, CREDITS TO ACCOUNTS AND CALCULATION OF BENEFITS

4.1  Establishment of Accounts.  A Basic Account and, if applicable, a Prior Service Account shall be established and maintained for each Participant pursuant to this Article IV to which credits shall be made in accordance with the provisions of this Article IV.  The Accounts established and maintained pursuant to this Article IV are intended to be bookkeeping accounts. Neither the establishment of such Accounts nor the making of credits to such Accounts shall be construed as an allocation of assets of the Plan to, or a segregation of such assets in, such accounts, or otherwise as creating a right in any person to receive specific assets of the Plan.  Benefits provided under the Plan shall be paid from the general assets of the Plan in the amounts, in the forms and at the times provided in Articles III, V, VI and VII.

4.2  Basic Credits for Service After 1991. (a)  With respect to any Plan Year beginning on or after January 1, 1992, the amount credited pursuant to this Section 4.2 to the Basic Account of a Participant who has completed one thousand (1,000) Hours of Service while a Participant (not counting any Hours of Service while an Inactive Participant) during such Plan Year shall be determined in accordance with the formula set forth below based upon the Participant's Years of Service and the Participant's Compensation in effect for the respective Plan Year or portion thereof.  Credits pursuant to this Section 4.2 shall be made as of December 31 for each Plan Year beginning with 1992 and ending with the Plan Year in which the Participant ceases to be an Employee; provided, however, upon any Participant's Separation from Service, such credits shall be made as of the date of his Separation from Service.  Solely for purposes of making the credits required by the immediately preceding sentence, Years of Service shall be calculated as of the respective December 31.

18

SASMF 00225

| Years of Service | Percentage of Compensation |
|---|---|
| Fewer than 5, | 3% |
| 5, but fewer than 10, | 4% |
| 10, but fewer than 15, | 5% |
| 15, and more | 6% |

(b)   Notwithstanding the provisions of Section 4.2(a), an Employee who becomes a Participant pursuant to Section 2.2(a) or (b) shall participate in Firm contributions to the extent of his Compensation for that portion of the Plan Year during which he is a Participant, provided that the number of his Hours of Service during such period equals or exceeds the product of 1,000 multiplied by a fraction, the numerator of which is the number of days remaining in said Plan Year (including the Employee's first day of participation) and the denominator of which is the total number of days in such Plan Year.

4.3   Prior Service Credits as of January 1, 1992.   (a)   In the case of a Participant who had an accrued benefit under the Prior Plan as of December 31, 1991, there shall be credited to the Prior Service Account of such Participant as of January 1, 1992, or at a later Reemployment Commencement Date if the Participant was not an Employee as of January 1, 1992 but still had an accrued benefit under the Prior Plan on such Reemployment Commencement Date, an amount which is the single sum value of his "Accrued Benefit under the Prior Plan," determined in accordance with Appendix B and the terms of the Prior Plan as in effect on December 31, 1991, or, if earlier, the date on which he incurred his most recent Separation From Service.

(b)   Notwithstanding any provision of the Plan to the contrary, the minimum amount credited pursuant to this Section 4.3 on behalf of a Participant who is an Eligible Employee on January 1, 1992 and who is otherwise eligible to receive Prior Service Credits as of January 1, 1992 shall be $100.

4.4   Periodic Adjustment Credits.   (a)   For Plan Years beginning after December 31, 1991, each Participant's Basic Account and Prior Service Account, if any (including those of Limited Participants and Inactive

19

SASMF 00226

Participants), shall be automatically increased during the Plan Year in the manner described in Section 4.4(c) by a "Periodic Adjustment Percentage" equal to the average interest rate of one-year Treasury Constant Maturities as published in the <u>Federal Reserve Statistical Release</u> H.15 (519) of the Board of Governors of the Federal Reserve System, measured on the October 1, November 1 and December 1 of the year immediately preceding the Plan Year, plus one percentage point. (For example, if such average interest rate is seven percent (7%), the Periodic Adjustment Percentage shall be eight percent (8%).) The average interest rate shall be calculated and rounded to the nearest one-hundredth of a percentage point.

(b) Notwithstanding Section 4.4(a) hereof, the Periodic Adjustment Percentage in any Plan Year shall not exceed twelve percent (12%) and shall not be less than the lower of eight percent (8%) or the midpoint of the range established for the "standard interest rate" by regulations issued under Section 401(a)(4) of the Code, as such range may be adjusted from time to time by the Commissioner pursuant to such regulations.

(c) Each Participant's Basic Account and Prior Service Account, if any, shall be adjusted on the December 31 of each Plan Year which begins after December 31, 1991 and precedes the Benefit Commencement Date by an amount equal to the applicable Account balance at the beginning of the Plan Year multiplied by the Periodic Adjustment Percentage. Each Participant's Accounts shall be adjusted as of the Benefit Commencement Date by an amount equal to the applicable Account balance at the beginning of the Plan Year multiplied by the Periodic Adjustment Percentage, and then multiplied by the ratio of the number of full months in the Plan Year prior to the Benefit Commencement Date to twelve (12).

4.5 <u>Calculation of Benefits</u>.

(a) <u>Basic Benefit</u>. Subject to Sections 4.5(b) and 4.5(c) hereof, the benefit provided under the Plan shall be the Participant's Accrued Benefit, calculated as provided in Section 1.2 hereof, on the basis of the balance in the Participant's Account(s), to which credits have been made pursuant to this Article IV.

(b) <u>Frozen Grandfather Benefit</u>. Notwithstanding Sections 1.02 and 4.5(a) hereof, in the case of a Participant who was participating in the Prior Plan on

20

SASMF 00227

December 31, 1991 but is not entitled to a Dynamic Grand-
father Benefit under Section 4.5(c) hereof, in no event
shall the Participant's Accrued Benefit under the Plan
(when converted to the form of benefit elected by, or
otherwise payable with respect to, such Participant) be
less than the accrued benefit as of December 31, 1991
(converted to the same form of benefit), which would have
been determined for him under the terms and provisions of
the Prior Plan as in effect on December 31, 1991.  Appen-
dix C hereto describes the application of, and provides
certain details with respect to the calculation of, the
Frozen Grandfather Benefit.

       (c)   <u>Dynamic Grandfather Benefit</u>.  Not-
withstanding Sections 1.2 and 4.5(a) hereof, any Par-
ticipant who was born before 1947 and has completed at
least five Years of Service as of December 31, 1991,
shall be entitled to an Accrued Benefit which is not less
than his Dynamic Grandfather Benefit determined for him
in accordance with Appendix C hereto.  The Dynamic Grand-
father Benefit is designed to be substantially the bene-
fit such a Participant would have received under the
Prior Plan if his service and compensation after December
31, 1991 were taken into account thereunder.

21

SASMF 00228

ARTICLE V

VESTING

5.1 <u>Vested Interest</u>. A Participant shall have a vested interest in his Accrued Benefit under the Plan determined in accordance with the following schedule:

| Years of Service | Vested Interest |
|---|---|
| Fewer than 5 | 0% |
| 5 or more | 100% |

5.2 <u>Automatic Vesting</u>. Notwithstanding the provisions of Section 5.1, a Participant shall have a one hundred percent (100%) vested interest in his Accrued Benefit under the Plan upon attainment of age sixty-five (65) or upon his earlier Separation From Service resulting from either his death or his Disability.

5.3 <u>Separation From Service Prior to Early or Normal Retirement Date</u>. (a) Except as provided in Sections 5.3(b) and 5.3(c) hereof, a Participant who incurs a Separation From Service (for a reason other than death) with a vested interest in his Accrued Benefit determined under Section 5.1 prior to reaching either his Early or Normal Retirement Date shall receive a Retirement Income payable in accordance with Article VII hereof and commencing on the first day of the month coincident with or next following the sixty-fifth (65th) anniversary of his birth, and such first day of the month shall be his Benefit Commencement Date. If such vested amount is zero, the Participant shall be deemed to have received a distribution of his entire vested Accrued Benefit for purposes of the Plan upon his Separation From Service.

(b) Subject to Section 5.3(c) hereof, a former Participant described in the first sentence of Section 5.3(a) hereof may elect to commence receiving reduced Retirement Income, payable in accordance with Article VII hereof, on (i) the earlier of the first day of the fourth month beginning after his Separation From Service or his Early Retirement Date (if applicable), or (ii) the first day of any subsequent month not later than his Normal Retirement Date. The day so elected shall be his Benefit Commencement Date.

(c) A Participant who incurs a Separation From Service (for a reason other than death) with a vested interest in his Accrued Benefit determined under

22

SASMF 00229

Section 5.1 having a lump sum Actuarial Equivalent value of $3,500 or less shall receive a lump sum payment equal to the Actuarial Equivalent value of such Accrued Benefit, as soon as practicable following his Separation From Service; provided, however, (i) if such Actuarial Equivalent value is more than $3,500, or (ii) if the Participant has a Spouse as a joint annuitant under Section 7.2 or Option B of Section 7.5(b) hereof and such lump sum payment has not been made on or before the Benefit Commencement Date, payment of such benefit can be made in a lump sum only if the Participant and the Spouse (if applicable) consent in writing to such lump sum distribution.

5.4 <u>Year of Service Prior to a Break in Service</u>. (a) In the case of a Participant who incurred a Break in Service, Years of Service completed by such Participant prior to such Break in Service shall be disregarded for purposes of Articles IV and V until such Participant shall have completed a Year of Service during a Plan Year after the Plan Year in which such Break in Service was incurred.

(b) Notwithstanding Section 5.4(a) hereof, in the case of a Participant who did not have a vested interest in his Accrued Benefit (determined under Article V as in effect on the date of his Separation From Service) prior to having incurred a Break in Service, his Years of Service prior to such Break in Service shall be disregarded for purposes of Articles IV and V if the number of his consecutive Breaks in Service equals or exceeds five (5).

5.5 <u>Years of Service as a Legal Employee</u>. If an Employee becomes a Legal Employee, and thereby ceases to be an Eligible Employee under this Plan, such individual shall become an Inactive Participant on the date that he becomes a Legal Employee and shall, solely for purposes of avoiding a Break in Service and determining his vested interest in his Accrued Benefit, be credited with an Hour of Service for each such hour of employment as a Legal Employee, as though he were an Eligible Employee.

5.6 <u>Forfeitures</u>. (a) If a Participant incurs a Break in Service prior to reaching either his Early or Normal Retirement Date and his vested percentage is less than one hundred percent (100%), then he shall forfeit his non-vested Accrued Benefit on the last day of the Plan Year in which he incurs such Break in Service.

23

SASMF 00230

(b)    If a Participant's Accounts are forfeited pursuant to Section 5.6(a) and the Participant's Re-employment Commencement Date occurs before the number of his consecutive Breaks in Service equals or exceeds five (5), the amount of such forfeiture shall be reinstated effective as of his Re-employment Commencement Date, and the Participant shall be entitled to the Periodic Adjustment Credits (if any) with respect to such reinstated amount pursuant to Section 4.4 for the period from the date of his Separation From Service to his Re-employment Commencement Date.

(c)    If a Participant's vested percentage is greater than zero (-0-) at the time of his Separation From Service and he receives benefit payments pursuant to Article VII, then the amounts credited to his Basic Account and Prior Service Account as of his Re-employment Commencement Date shall be determined as if no benefit payments had occurred and upon his subsequent Separation From Service the Accrued Benefit payable to him shall be reduced by the Actuarial Equivalent value of any benefit paid under the Plan.

(d)    Any forfeiture resulting from the operation of this Article, or any other provisions of the Plan, shall be used to reduce future Employer contributions pursuant to Article VIII.

24

SASMF 00231

ARTICLE VI

DEATH BENEFITS

6.1  <u>Death Before Benefit Commencement Date</u>.
If a Participant dies before his Benefit Commencement
Date, a benefit shall be payable to his designated Bene-
ficiary as follows:

(a)  If the value of the Participant's
Accounts (determined without regard to Appendix C) as of
the date of his death does not exceed $3,500, such amount
shall be paid to the Beneficiary in a lump sum payment as
soon as practicable following the Participant's death;
provided, however, that, if the Beneficiary is the
Participant's surviving Spouse and such lump sum payment
has not been made on or before the Benefit Commencement
Date, payment of such benefit can be made in a lump sum
only if the Participant's Spouse consents in writing to
such lump sum distribution.

(b)  If the value of the Participant's
Accounts (determined without regard to Appendix C) as of
the date of his death exceeds $3,500 and his Beneficiary
is not his surviving Spouse, such amount shall be paid to
the Beneficiary in a lump sum payment as soon as practi-
cable following the Participant's death.

(c)  If the value of the Participant's
Accounts (determined without regard to Appendix C) as of
the date of his death exceeds $3,500 and his Beneficiary
is his surviving Spouse, such amount shall be paid to the
surviving Spouse as of the Benefit Commencement Date
described below in the level life annuity form described
in Section 7.1, based on the amounts credited to the
Participant's Basic Account and Prior Service Account
(determined without regard to Appendix C) and the age of
the surviving Spouse as of the Benefit Commencement Date
but otherwise determined as if the surviving Spouse were
the Participant.  In lieu of such annuity form, the
surviving Spouse may elect a lump sum payment equal to
the Participant's Accounts (as so determined) as of the
Benefit Commencement Date.  The Benefit Commencement Date
for the surviving Spouse shall be the later of the
Participant's Normal Retirement Date or the first day of
the month immediately following the Participant's death
except that if the Participant's death occurs prior to
his Normal Retirement Date, the surviving Spouse may
elect that the Benefit Commencement Date be either (1)
the first day of the first month beginning after the

25

SASMF 00232

Participant's death, if the Participant had attained the age of fifty-five (55) years and completed at least ten (10) Years of Service, or, if not, the first day of the fourth month beginning after the Participant's death or (2) the first day of any subsequent month not later than the Participant's Normal Retirement Date. Such election must be on a form furnished by and submitted to the Committee or its delegate for this purpose.

(d)    Notwithstanding the foregoing provisions of this Article VI, if a Participant entitled to a Frozen Grandfather Benefit or a Dynamic Grandfather Benefit in accordance with Section 4.5 hereof and Appendix C hereto dies before his Benefit Commencement Date with his surviving Spouse as Beneficiary, as determined under Section 6.3, the surviving Spouse shall be entitled to receive a benefit determined under this Section 6.1(d), if such benefit is greater than the benefit otherwise determined under this Article VI. The greater benefit shall be determined based on the greater lump sum payable to the surviving Spouse, or the greater life annuity payable to the surviving Spouse, in accordance with the surviving Spouse's election of a lump sum or a life annuity under this Article VI, with the amounts of such lump sums and life annuities determined as of the Benefit Commencement Date under the subsequent provisions of this Section 6.1(d) with respect to the Frozen and Dynamic Grandfather Benefits, and otherwise under Article VI without regard to this Section 6.1(d).

The benefit determined under this Section 6.1(d) shall be the benefit the surviving Spouse would have received under Appendix C if the Participant had (i) incurred a Separation From Service on his date of death, or on his actual date of Separation From Service if he was not an Employee on his date of death, (ii) survived to the Benefit Commencement Date chosen by the surviving Spouse, (iii) begun receiving Retirement Income on such Benefit Commencement Date having elected a 50% joint annuitant option under Option B of Section 7.5 and having designated his surviving Spouse as joint annuitant, and (iv) died on the Benefit Commencement Date. The Benefit Commencement Date for the surviving Spouse shall be the later of the Participant's Normal Retirement Date or the first day of the month immediately following the Participant's death except that if the Participant's death occurs prior to his Normal Retirement Date, the surviving Spouse may elect that the Benefit Commencement Date be either (1) the first day of the first month beginning after the Participant's death, if the Partici-

26

SASMF 00233

pant had attained the age of fifty-five (55) years and completed at least ten (10) Years of Service, or, if not, the first day of the fourth month beginning after the Participant's death or (2) the first day of any subsequent month not later than the Participant's Normal Retirement Date.

The surviving Spouse may elect to convert the survivor annuity determined above into an Actuarial Equivalent lump sum payment as of the Benefit Commencement Date, based on the surviving Spouse's age and in accordance with Section C of Appendix A.

6.2 <u>Furnishing of Explanation</u>. The Committee shall furnish, or cause to be furnished, to each Participant at the times specified below, an explanation of the benefit payable in the event of his death before his Benefit Commencement Date. Such explanation shall include (i) a description of the terms and conditions of such benefit, (ii) the Participant's right to designate a Beneficiary other than his Spouse, (iii) the right of the Participant's Spouse to consent or not to consent to such designation, and (iv) the right of the Participant to make, and the effect of, a revocation of a previous designation.

Such explanation shall be furnished (i) if the Participant commences participation in the Plan before the Plan Year in which his thirty-fourth (34th) birthday occurs, during the Plan Year in which either his thirty-second (32nd), thirty-third (33rd) or thirty-fourth (34th) birthday occurs or (ii) if the Participant commences participation in the Plan during or after the Plan Year in which his thirty-fourth (34) birthday occurs, within the one-year period beginning with the date his participation commences. Additionally, if a Participant has a Separation From Service before attaining the age of thirty-five (35) years, such explanation shall be furnished during the period beginning one year before the Separation From Service and ending one year after such event.

6.3 <u>Designation of Beneficiary</u>. (a) Any Participant (which solely for purposes of this Section 6.3 shall include an Eligible Employee) shall designate, in writing on forms provided for that purpose by the Committee or its designee, the Beneficiary and successor Beneficiaries who shall be entitled to receive any death benefit provided under the Plan. Such designation shall include the Participant's certification of marital sta-

27

SASMF 00234

tus. The designation of a Beneficiary shall not be effective for any purpose unless and until it has been received by the Committee or its designee on such form. The designation by a Participant who is married at the time of his death of a Beneficiary other than his surviving Spouse shall not be effective unless (i) such designation is made after the first day of the Plan Year in which the Participant attains the age of thirty-five (35) years or after his Separation from Service, (ii) such Spouse had consented to the designation in a writing that acknowledges the effect of such consent and that is witnessed by a notary public, and (iii) either the Beneficiary so designated may not be changed without further spousal consent or the initial spousal consent expressly permits such changes without further consent. Such written spousal consent shall be irrevocable with respect to such Spouse. Spousal consent shall not be required if it is established to the satisfaction of a Plan representative that the consent cannot be obtained because (i) there is no Spouse or (ii) the Spouse cannot be located, or because of other circumstances as the Secretary of the Treasury may by regulations prescribe.

(b) Except as provided in Section 6.3(a) hereof, a Participant may, from time to time, change the Beneficiary designated by him, without notice to such Beneficiary, under such rules and regulations as the Committee may from time to time prescribe. If any Participant shall fail to designate a Beneficiary or if such designation is invalid or if the designated Beneficiary or Beneficiaries shall have predeceased the Participant, any benefits otherwise payable in respect of such Participant after his death shall be paid to the Participant's surviving Spouse (if any) as Beneficiary, or, if there is no surviving Spouse, to the Participant's estate as Beneficiary.

SASMF 00235

ARTICLE VII

PAYMENT OF BENEFITS

7.1  Normal Form of Retirement Income for Unmarried Participants.  (a)  The normal form of Retirement Income payable at his Benefit Commencement Date to a Participant who does not have a Spouse as of such date is a level life annuity as described under Option A in Section 7.5 hereof.  At least thirty (30) days and not more than ninety (90) days before his Benefit Commencement Date, an unmarried Participant shall be furnished with a written explanation of the terms and conditions of receiving the normal form of Retirement Income and all other Options under the Plan that are available to him. An election by the Participant of any optional form before such written notice has been provided to him shall be invalid.

All Retirement Income payments under Option A cease with the payment for the month in which the death of such Participant occurs.

(b)  Notwithstanding Section 7.5(b) hereof and the foregoing provisions of this Section 7.1, if a benefit would otherwise be payable under either such Section, no Spouse of the Participant (in the case of a Participant who has a Spouse on his Benefit Commencement Date) is a joint annuitant under Section 7.2 or Option B of Section 7.5(b) hereof, and the lump sum Actuarial Equivalent value of the vested portion of the Participant's Accrued Benefit as of his Benefit Commencement Date is $3,500 or less, such benefit shall be paid immediately to the Participant in a lump sum equal to such Actuarial Equivalent value.

7.2  Normal Form of Retirement Income for Married Participants.  In the case of a Participant who has a Spouse on his Benefit Commencement Date, his Retirement Income, unless he makes an effective election pursuant to Section 7.3, shall be in the form of a qualified joint and survivor annuity.  The qualified joint and survivor annuity shall be a non-increasing annuity for the life of the Participant with a survivor annuity for the life of his surviving Spouse determined in accordance with the fifty percent (50%) survivor annuity provisions under Option B of Section 7.5.  Under such joint and survivor annuity, if a Participant dies after his Benefit Commencement Date, payments shall continue after the Participant's death, during the lifetime of his surviving

29

SASMF 00236

Spouse, at the rate of fifty percent (50%) of the monthly benefit payable to the Participant during his lifetime.

Notwithstanding Section 7.5(b) hereof and the foregoing provisions of this Section 7.2, if the lump sum Actuarial Equivalent value of the vested portion of the Participant's Accrued Benefit as of his Benefit Commencement Date is $3,500 or less and a benefit would otherwise be payable under this Section 7.2 (or under an Option B benefit under Section 7.5(b) hereof with the Participant's Spouse as joint annuitant), such benefit shall be paid immediately in a lump sum payment equal to such Actuarial Equivalent value; provided, however, if such Actuarial Equivalent value is more than $3,500 or if such lump sum payment has not been made on or before the Benefit Commencement Date, payment of such benefit can be made in a lump sum only if the Participant and the Spouse (or the surviving Spouse, if the Participant has died) consent in writing to such lump sum distribution.

7.3  Waiver of Automatic Form of Benefit by Married Participant.  (a)  Where a Participant who has a Spouse chooses to waive the qualified joint and survivor annuity and elects an optional form of benefit pursuant to Section 7.5, such election must be made by the Participant in writing on a form provided by the Committee or its designee for such purpose during the Election Period described below and must be made with the consent of the Participant's Spouse.  The election must designate the optional form of benefit elected and a joint annuitant or Beneficiary, none of which can be changed thereafter without spousal consent, unless the Spouse executes a general consent which acknowledges that the Spouse has a right to limit consent to a specific benefit form (where applicable) and a specific Beneficiary or joint annuitant and that the Spouse voluntarily relinquishes that right.  Notwithstanding the two immediately preceding sentences, spousal consent shall not be required if such Participant has elected Option B under Section 7.5 hereof, with the Spouse as joint annuitant and either the seventy-five percent (75%) or one hundred percent (100%) survivor annuity provision.  Any required spousal consent must be in writing, on a form provided by the Committee or its designee for such purpose, must acknowledge the effect of the Participant's election, must be irrevocable with respect to such Spouse, and must be witnessed by a notary public.  A former Spouse's consent shall not be binding on a new Spouse.  Notwithstanding the foregoing, spousal consent shall not be required if it is established to the satisfaction of the Committee or its

SASMF 00237

designee that the required consent cannot be obtained because the Participant was not married on the Benefit Commencement Date, the Spouse cannot be located, or because of any circumstance that may be prescribed by Treasury Regulations. Any election made in accordance with these provisions may be revoked by the Participant in writing without spousal consent at any time during the Election Period. There shall be no limits set on the number of waivers or revocations within the Election Period; however, a Participant may not revoke a waiver after the Benefit Commencement Date. Any waiver or election by the Participant before the written information required by Section 7.3(b) has been provided to him shall be invalid.

(b)    For purposes of this Article VII, the "Election Period" shall be a ninety (90)-day period ending on the Benefit Commencement Date. The Committee shall, at least thirty (30) days and not more than ninety (90) days before the Benefit Commencement Date (and consistent with Treasury Regulations), provide the Participant with the following, in writing:

(i)    a general description of the automatic post-retirement surviving spouse optional form, the circumstances in which such form shall be applicable unless the Participant elects not to have his Retirement Income payable in such form, and the availability of such election;

(ii)    a general explanation of the relative financial effect on a Participant's Retirement Income of the election referred to in item (i) above;

(iii)    an explanation of the Participant's Spouse's right to consent or not to consent to the Participant's election; and

(iv)    an explanation of the Participant's right to make, and the effect of, a revocation of his election as described in Section 7.3(a) hereof.

(c)    Upon request by the Committee, the Participant must furnish the name and date of birth of his Spouse and his date of birth, and satisfactory proof thereof.

31

SASMF 00238

7.4    Optional Forms of Benefit for Participant under Age 55.    If a Participant is not at least fifty-five (55) years of age on his Benefit Commencement Date, the only benefit forms available to such Participant are the applicable normal form of annuity benefit in accordance with Section 7.1 or 7.2 hereof and, subject to Section 7.3 hereof, a lump sum payment under Option D of Section 7.5(b) hereof.

7.5    Optional Forms of Benefit for Participant over Age 55.    (a)    In lieu of the applicable normal form of Retirement Income benefit provided in Section 7.1 or 7.2 hereof, a Participant whose Benefit Commencement Date occurs on or after his attainment of age fifty-five (55) shall have the right, to the extent provided in this Section 7.5 and subject to Section 7.3 hereof, to convert his Retirement Income benefit into any of the optional forms of benefit provided in Section 7.5(b) hereof.

(b)    Unless otherwise provided, a Participant shall have the option to convert his Retirement Income into one of the following optional forms described below:

Option A - Level Annuity.    Under this option, the Participant will receive a level annuity for his life, determined in accordance with Section B of Appendix A.    Under Section 7.1 hereof, Option A is the normal form of benefit for an unmarried Participant.

Option B - Joint Annuity.    Under this option, the Participant designates a joint annuitant (limited to one natural person) and specifies the percentage (50%, 75% or 100%) of his Retirement Income to be paid to the joint annuitant upon his death after Retirement Income payments commence.    Under Section 7.2 hereof, this Option B, with a 50% survivor annuity for the Participant's surviving Spouse, is the normal form of benefit for a married Participant.    For every one hundred dollars ($100) of monthly benefit under Option A that would otherwise have been payable to the Participant, the amount of monthly benefit payable shall be as follows, depending upon the percentage of the monthly benefit to be continued to the joint annuitant.

| Percentage Continued to Joint Annuitant | To Participant | To Joint Annuitant After Participant's Death |
|---|---|---|
| 50% | $92 | $46.00 |

32

SASMF 00239

| | | |
|---|---|---|
| 75% | $88.40 | $66.30 |
| 100% | $85.10 | $85.10 |

The above factors apply only if, at the date of electing the option, the joint annuitant is the Participant's Spouse or the Participant's age at his or her last birthday does not exceed the joint annuitant's age at his or her last birthday by more than five (5) years. If at the Benefit Commencement Date the joint annuitant is other than the Participant's Spouse and the Participant's age at his or her last birthday exceeds the joint annuitant's age at his or her last birthday by more than five (5) years, the amounts of Retirement Income payable to the Participant and joint annuitant shall be computed as if the difference in ages at their last birthdays were only five (5) years and then reduced one-percent (1%) of the percentage selected (whether 50%, 75% or 100%) for each year (to a maximum of fifteen (15) years) by which such difference exceeds five (5) years.

Option C - Annuity with Five (5), Ten (10) Year or Fifteen (15) Year Certain. Under this option, Retirement Income paid to the Participant (in the form of a level annuity for his life) is reduced as provided herein, but in the event the Participant dies before receiving Retirement Income payments for sixty (60) or one hundred and twenty (120) or one hundred and eighty (180) months (as he shall specify), such reduced Retirement Income payments shall continue to be paid to his Beneficiary for the remainder of the applicable specified period. For every one hundred dollars ($100) of monthly benefit that would otherwise have been payable to the Participant under Option A, the amount of monthly benefit payable shall be as follows, depending upon the certain period.

| Certain Period | Benefit Payable |
|---|---|
| Five (5) Years | $99 |
| Ten (10) Years | $96 |
| Fifteen (15) Years | $92 |

Option D - Lump Sum Payment. Under this option, a lump sum is paid to the Participant equal to the lump sum Actuarial Equivalent value of the vested portion of his Accrued Benefit as of his Benefit Commencement Date.

33

SASMF 00240

<u>Option E - Increasing Annuity</u>.  Under this option the Participant will receive Retirement Income for his life in an amount calculated as follows:

(i)  The monthly payment in the Plan Year of his Benefit Commencement Date is determined in accordance with Section A of Appendix A.

(ii)  The monthly payment in the following Plan Year is equal to the amount determined in accordance with Section A of Appendix A, increased by (x) one-twelfth (1/12) of the interest rate used by the Pension Benefit Guaranty Corporation for valuing immediate annuities under terminating pension plans with insufficient assets to pay guaranteed benefits as of the January 1 of the calendar year in which the Participant's Benefit Commencement Date occurs times (y) the number of monthly payments made in the preceding Plan Year.

(iii)  The monthly payment in each subsequent Plan Year is equal to the monthly amount payable in the preceding Plan Year increased by the interest rate used by the Pension Benefit Guaranty Corporation for valuing immediate annuities under terminating pension plans with insufficient assets to pay guaranteed benefits as of the January 1 of the calendar year in which the Participant's Benefit Commencement Date occurs.

(c)  A Participant must comply with the rules and requirements set forth in Section 7.5(c)(i)-(vi) in order to convert his normal form of Retirement Income to an optional form of Retirement Income, as described in Section 7.5(a) hereof.  A failure to comply may result in the delayed commencement of Retirement Income payments described in Section 7.12 hereof.

(i)  The election must be in writing in such form as shall be required by the Committee or its designee and must be filed with the Committee or its designee at least thirty (30) days prior to the Participant's Benefit Commencement Date.

34

SASMF 00241

(ii)   In the case of a joint annuitant option, the name, relationship and date of birth of the joint annuitant must be stated on the election form and proof of such relationship and date of birth acceptable to the Committee or its designee must be submitted before the Benefit Commencement Date.

(iii)   The Benefit Commencement Date must be stated and must be at least thirty (30) days after the date the election is filed.

(iv)   If a Participant dies prior to the Benefit Commencement Date, the election shall be null and void.  Notwithstanding the immediately preceding sentence, if a proper election of an optional 75% joint and survivor annuity or a 100% joint and survivor annuity with the Participant's Spouse as the joint annuitant is in effect, the Participant dies before the Benefit Commencement Date, and the Actuarial Equivalent value of the elected Option is greater than the Actuarial Equivalent value of the death benefit otherwise payable to the surviving Spouse under Section 6.11 hereof, such elected Option will be paid to such surviving Spouse as a Qualified Preretirement Survivor Annuity in lieu of such death benefit. If the joint annuitant Option is elected and the joint annuitant dies prior to the Benefit Commencement Date, the election shall be null and void.  If the joint annuitant dies after the Benefit Commencement Date, the Option shall continue in effect and the amount of Retirement Income which the Participant is then receiving shall be unchanged.

(v)   The election of an Option may be cancelled, modified or changed before the respective Benefit Commencement Date.

(vi)   Except as may be otherwise required by the Plan or applicable law or regulations with respect to a Participant's Spouse, the consent of a joint annuitant or of a Beneficiary shall not be required for the election or the cancellation, modification or change of an Option.

35

SASMF 00242

7.6  <u>Mandatory Commencement of Benefits</u>.
Subject to Section 1121(d)(4) of the Tax Reform Act of
1986 and Proposed Treasury Regulation Section
1.401(a)(9)-1,

(a)  a Participant who attains age 70-1/2
after December 31, 1987, or who becomes a 5% owner (as
defined in Section 416(i) of the Code) at any time after
the attainment of age 66-1/2, must commence to receive a
distribution of his Retirement Income no later than the
April 1 of the calendar year following the calendar year
in which such Participant attains age 70-1/2 (or becomes
a 5% owner, if later), and

(b)  a Participant who attained age 70-1/2
prior to January 1, 1988 and who is not a 5% owner at any
time after the attainment of age 66-1/2, must commence to
receive a distribution of his Retirement Income no later
than the April 1 of the calendar year following the later
of (i) the calendar year in which the Participant attains
age 70-1/2, or (ii) his termination of employment with
the Firm or an Affiliate.

Any payments under this Plan shall be adjusted
to meet the requirements of Section 401(a)(9) of the Code
and the regulations thereunder.  Thus, the entire inter-
est of each Participant (a) shall be distributed to him
not later than the required beginning date as defined in
Section 401(a)(9)(C) of the Code, or (b) shall be dis-
tributed, beginning not later than the required beginning
date, in accordance with regulations, over the life of
the Participant or over the life of the Participant and
Beneficiary (or over a period not extending beyond the
life expectancy of the Participant or the life expectancy
of the Participant and Beneficiary).

With respect to any Retirement Income payments
which commence because of the required beginning date (as
defined in Section 401(a)(9)(C) of the Code), such re-
quired beginning date shall be treated as the Benefit
Commencement Date for such Retirement Income, for purpos-
es of determining the rights of a Participant, and the
procedures to be followed by a Participant, in electing a
form of benefit and receiving that benefit.

Notwithstanding any provision of the Plan to
the contrary, distributions made under this Section 7.6
shall be deemed to satisfy any distribution options
provided for in the Plan that are inconsistent with
Section 401(a)(9) of the Code.  In addition, any distri-

36

SASMF 00243

bution required under the incidental death benefit rule of Section 401(a)(9)(G) of the Code shall be treated as a distribution required under this Section.

Notwithstanding any provision of the Plan to the contrary, unless the Participant elects otherwise, distribution of his Accrued Benefit will begin not later than the sixtieth (60th) day after the latest of the Plan Year in which (i) the Participant attains the earlier of age 65 or his Normal Retirement Date, (ii) the tenth anniversary of the year in which the Participant commenced participation in the Plan occurs, or (iii) the Participant Separates From Service with the Firm (or any Affiliate by which he is employed).

7.7  <u>Suspension Of Benefits</u>.  If a Participant continues in the employ of the Firm or an Affiliate after Normal Retirement Date, or if a Participant returns to the employ of the Firm or an Affiliate after his Normal Retirement Date, then, subject to the provisions of Section 7.6 hereof, his Retirement Income benefit will not be paid with respect to any calendar month of such employment during which the Participant completes at least forty (40) Hours of Service.  If benefit payments have ceased due to the application of the preceding sentence, they shall be resumed no later than the first day of the calendar month following three (3) consecutive calendar months in which such Participant had fewer than forty (40) Hours of Service for purposes of this Section 7.7.  The initial payment upon resumption shall include all monthly payments due to the Participant following such reduction of service.  Any Participant who is not paid Retirement Income benefits pursuant to this Section 7.7 shall be notified of the suspension of benefits in the manner set forth in the procedures adopted by the Committee or its designee.

7.8  <u>In The Event That Benefits Are Paid During Employment</u>.  In the event that a Participant is entitled to receive benefit payments under the Plan for any month beginning on or after his Benefit Commencement Date and during which the Participant is an Employee, the following provisions shall be applicable:

(i)  Adjustments in the amount of benefit payments to reflect any increases in his Accrued Benefit earned during periods of employment which occurred after his Benefit Commencement Date shall be made as of the first scheduled benefit payment in the Plan Year

37

SASMF 00244

following the Plan Year in which the increases in his Accrued Benefit were earned.

(ii)   The form of benefit payment applicable on the Benefit Commencement Date shall apply to all benefits earned after such date except that, notwithstanding Section 7.2 hereof:

(A)   For those Participants whose form of benefit payment is the qualified joint and survivor annuity in Section 7.2 hereof and whose surviving Spouse has died prior to the date when such additional benefit payments are scheduled to begin, such additional benefits will be paid as though the Participant had elected Option A.

(B)   For those Participants whose form of benefit payment is Option B and whose designated joint annuitant has died prior to the date when such additional benefit payments are scheduled to begin, such additional benefits shall be paid as though the Participant had elected Option A.

7.9   <u>Payments to Minors or Persons Under a Legal Disability</u>.  If any benefit shall become payable or distributable under the Plan to a minor or a person who, in the judgment of the Committee, is under legal disability or is incapacitated in any way so as to be unable to manage his financial affairs, the Committee, in its discretion, may direct the Trustees to make payment of all or a portion of the benefit otherwise payable or distributable to such person in any of the following ways exclusively for the benefit of such person:

(a)   directly to such person;
(b)   to his spouse;
(c)   to his legal guardian or conservator; or

(d)   to such other person, persons, or institutions as in the judgment of the Committee are then maintaining or have custody of such person; and the Trustees may accept the receipt of the person or institution to whom such payment is made and the same shall constitute a complete acquittance and discharge of all liabilities of the Plan, the Committee, the Trustees and the Firm or an Affiliate

38

SASMF 00245

with respect to any money or property so paid or delivered.

7.10  <u>Limitation on Benefits</u>.  Notwithstanding any other Plan provisions to the contrary, all benefits paid to Participants pursuant to the provisions of this Plan shall comply with the limitation of benefits provisions of Section 415 of the Code and this Section 7.10.

(a)  Any other provision of the Plan to the contrary notwithstanding, but subject to the other provisions of this Section 7.10, the maximum annual benefit payable to a Participant under the Plan (exclusive of any benefits derived from the Participant's own contributions and exclusive of any benefits which are not directly related to Retirement Income benefits) shall not exceed the lesser of the following, as determined for the Plan Year in which the Participant incurs his last Separation From Service:

(i)  $90,000, or

(ii)  100% of the Participant's average "compensation" (as defined below) from the Firm or an Affiliate during the three consecutive calendar years of participation during which his compensation was highest.

(b)  The applicable maximum described in item (i) or (ii) of Section 7.10(a) shall apply to a Retirement Income benefit payable in the form of a single life annuity or a "qualified joint and survivor annuity" (as defined in Section 417(b) of the Code); for other forms of benefit the maximum shall be adjusted to an equivalent benefit in the form of the benefit chosen under Article VII in accordance with the applicable option factors set forth in Appendix A.

(c)  In the event that Retirement Income benefits commence under the Plan at or after age 62 but prior to a Participant's Social Security Retirement Age, the $90,000 limitation described in Section 7.10(a) shall be reduced as follows:

(i)  if the Participant's Social Security Retirement Age is age 65, by 5/9 of 1% for each month by which the commencement date precedes the Participant's Social Security Retirement Age,

39

SASMF 00246

(ii)   if the Participant's So-
cial Security Retirement Age is greater than
65, by 5/9 of 1% for each of the first 36
months by which the commencement date precedes
the Participant's Social Security Retirement
Age, and 5/12 of 1% for each additional month
(up to 24) by which such commencement date
precedes the Participant's Social Security
Retirement Age.

If the commencement date is earlier than age 62, the
limitation is the Actuarial Equivalent of the age 62
limitation.

(d)   In the event that Retirement Income
benefits commence under the Plan after the Participant's
attainment of his Social Security Retirement Age, the
determination as to whether the $90,000 limitation de-
scribed in Section 7.10(a) hereof has been satisfied
shall be made in accordance with applicable regulations
issued by the Internal Revenue Service, by increasing
such limitation to the Actuarial Equivalent of $90,000
commencing at such Social Security Retirement Age.

(e)   If the Participant has fewer than ten
(10) Years of Service, the applicable maximum described
in item (ii) of Section 7.10(a) hereof shall be multi-
plied by a fraction of which the numerator is his or her
Years of Service and the denominator is ten (10).  If the
Participant has fewer than ten (10) years of participa-
tion in the Plan and/or the Prior Plan, the $90,000
limitation described in item (i) of Section 7.10(a)
hereof shall be multiplied by a fraction of which the
numerator is his years of participation and the denomina-
tor is ten (10).

(f)   The $90,000 limitation described in
item (i) of Section 7.10(a) hereof shall be adjusted for
increases in the cost of living in accordance with regu-
lations prescribed by the Internal Revenue Service under
Section 415(d) of the Code.

(g)   For purposes of this Section 7.10
"compensation" means compensation as defined in Section
415 of the Code and the regulations thereunder.

(h)   If any benefits shall be payable
under any other defined benefit plan of the Firm to or on
account of any Participant, the limitation applicable to
such Participant for the purposes of this Section 7.10

40

SASMF 00247

shall first be determined by combining the benefits of this Plan and all such other defined benefit plans, as required pursuant to Section 415(f) of the Code, and shall then be reduced so that on an actuarially equivalent basis such reduced limitation applicable to the benefits of this Plan, together with the unreduced benefits of all such other defined benefit plans, shall not exceed the limitations applicable to such combined benefits of the Participant.

(i)  Notwithstanding Section 7.10(h) hereof, the otherwise permissible Projected Annual Benefit of a Participant under this Plan shall be further reduced in the case of any individual who is also a Participant in a Defined Contribution Plan maintained by the Firm or an Affiliate, only after the Annual Addition under such Defined Contribution Plan has been reduced to the maximum extent necessary and possible, as determined by the Committee, so that the overall limitations on benefits and contributions contained in Section 415(e) of the Code will not be exceeded.

(j)  Notwithstanding the otherwise applicable provisions of this Section 7.10, a Participant who was entitled to a benefit under the Prior Plan in excess of the limitations set forth herein under the Prior Plan by reason of the application of Section 235(g)(4) of the Tax Equity and Fiscal Responsibility Act of 1982 and/or Section 1106(i)(3) of the Tax Reform Act of 1986 or otherwise (under applicable law) shall be entitled to such higher benefit.

7.11  <u>Construction</u>.  The purpose of Section 7.10 hereof is to comply with the provisions of Section 415 of the Code and any transitional provisions of statutes establishing or amending such Section 415 to the extent not incorporated or reflected in such Section 415, and all terms and provisions of said Section 7.10 hereof shall be interpreted and construed consistently with Section 415 and such other statutory provisions.

7.12  <u>Prerequisites to Commencement of Retirement Income Payments</u>.  Notwithstanding any other provision of this Plan (except Section 7.6 hereof), but subject to the right to retroactive payment thereof (such payment to be retroactive to the later to occur of the respective Benefit Commencement Date or the receipt by the Committee or its designee of the documentation described below), any Retirement Income payments otherwise due under the Plan may be delayed until the first day of

41

SASMF 00248

a month which coincides with, or follows, the ninetieth (90th) day after receipt by the Committee or its designee of whichever of the following is applicable:

(i) a statement that the Participant does not and will not have a Spouse, as defined in Section 1.53 hereof;

(ii) the election described in Sections 7.3(a) and 7.5(c) hereof and any spousal consent required for such election; or

(iii) receipt by the Committee or its designee of satisfactory proof that the Participant has a Spouse and of the date of birth of the Spouse if a Participant did not make the election described in Sections 7.3(a) and 7.5(c) hereof.

7.13  <u>Trustee to Trustee Transfers</u>.  Notwithstanding anything to the contrary in this Article VII, effective for distributions made on and after January 1, 1993, to the extent required by law, each Participant may elect to have his Retirement Income, in whole or in part, directly rolled over into an eligible retirement plan as defined in Section 402(c)(8)(B) of the Code.  The Participant shall provide the Committee with adequate information to determine whether the recipient plan or account qualifies as an eligible retirement plan.  The Committee will provide each Participant with notice of the availability of this provision no less than 30 days and no more than 90 days before the Benefit Commencement Date. If a distribution is one to which Sections 401(a)(11) and 417 of the Code do not apply, such distribution may commence less than 30 days after the notice required under Section 1.411(a)-11(c) of the Treasury Regulations is given, provided that:

(i)  the Committee clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution, and

(ii) the Participant, after receiving the notice, affirmatively elects a distribution and waives the 30 day notice requirement.

42

SASMF 00249