ARTICLE VIII

CONTRIBUTIONS

8.1  This Plan contemplates that the Firm shall, from time to time, contribute such amounts as may, in accordance with applicable law and sound actuarial principles, be deemed necessary to provide the benefits contemplated hereunder.

8.2  All contributions made by the Firm shall be paid directly to the Trustees; provided, however, that the Trustees, pursuant to their authority under Article XIII hereof, may direct the Firm from time to time to pay directly any portion or all of such contributions to any bank, insurance company or other recipient of Trust Fund assets selected by the Trustees.

8.3  Any forfeiture arising under the provisions of this Plan shall be applied to reduce contributions to the Trust Fund which would otherwise be required to be made by the Firm pursuant to Section 8.1 hereof.

8.4  Any contributions to the Plan made by the Firm by a mistake in fact shall be returned to the Firm within one (1) year after the date of the contribution.

8.5  Each contribution made hereunder pursuant to this Article VIII is conditioned upon its current deductibility under Section 404 of the Code.  To the extent that the deductibility of any such contribution is disallowed, it shall be returned to the Firm within one (1) year after the date of disallowance of the deduction.

43

SASMF 00250

ARTICLE IX

NONALIENABILITY

9.1    Except to the extent required by applicable law, benefits payable under this Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment pledge, encumbrance, charge, garnishment, execution or levy of any kind, either voluntary or involuntary; including any such liability which is for alimony or other payments for the support of a spouse or former spouse, or for any other relative of a Participant or Beneficiary, prior to actually being received by the person entitled to the benefit under the terms of the Plan; and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any right to benefits payable hereunder shall be void.  The Trust Fund shall not in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements or torts of any person entitled to benefits hereunder.

9.2    The provisions of Section 9.1 hereof shall apply to the creation, assignment, or recognition of a right or interest in a Participant's benefit hereunder pursuant to a domestic relations order, unless such order is determined to be a "qualified domestic relations order" (as such term is defined in Section 414(p) of the Code).  Any other provisions of the Plan to the contrary notwithstanding, the Committee is authorized, pursuant to such uniform and nondiscriminatory rules as it shall establish which shall be consistent with applicable law and the terms of the applicable qualified domestic relations order, to commence payment of benefits to which alternate payees may be entitled prior to the date such benefits would otherwise become payable in accordance with the applicable provisions of the Plan.

SASMF 00251

ARTICLE X

AMENDMENT OF THE PLAN

10.1  The Firm, through its Policy Committee or other committee of the Firm acting with the powers of the Policy Committee, shall have the right at any time and from time to time, to amend in whole or in part any of the provisions of this Plan and such amendment shall be binding upon the Participants and their Beneficiaries, the Trustees, the Committee and all parties in interest; provided, however, the foregoing powers of the Policy Committee (or other such committee of the Firm) may be exercised by the Committee with respect to all amendments other than amendments involving a change to Section 4.2, 4.4 or 4.5 hereof or amendments which otherwise involve a material cost to the Firm.  However, no such amendment shall authorize or permit any of the assets of the Trust Fund to be used for or directed to purposes other than the exclusive benefit of the Participants or their Beneficiaries and no amendment which increases the rights, duties or responsibilities of the Trustees may be made, without their written consent.  Any such amendment shall become effective as of the date specified therein upon delivery of a written instrument, executed by the Executive Partner of the Firm (or his or her designee) on behalf of the Policy Committee (or other such committee of the Firm) or by any member of the Committee on behalf of the Committee, as the case may be, and the endorsement by the Trustees of their written consent thereto, if such consent is required.

10.2  Notwithstanding anything to the contrary contained in Section 10.1 hereof, no amendment may be made which shall retroactively deprive a Participant of any benefit funded by a contribution made in respect of a Plan Year ending prior to the Plan Year during which the amendment was executed and no amendment may be made which shall retroactively reduce a Participant's Accrued Benefit as of the date of such amendment; provided, however, that the Firm in its sole discretion (acting through the Committee) may make any modifications or amendments, additions or deletions in or to this Plan as to benefits or otherwise (and may do so retroactively if necessary) that it deems appropriate in order to comply with or satisfy any conditions of any law or regulation relating to the qualification of this Plan and to keep this Plan qualified under Section 401(a) of the Code.

45

SASMF 00252

ARTICLE XI

TERMINATION OF THE PLAN

11.1  The Firm may, by appropriate notice to the Trustees, determine that it shall terminate the Plan.

11.2  Upon a termination of the Plan with respect to a group of Participants which constitutes a partial termination of the Plan, the Committee may cause the Trustees to allocate and segregate for the benefit of the Participants being terminated the proportionate interest of such Participants in the Trust Fund.

11.3  Any termination or partial termination shall be effective as of the date specified in writing providing therefor, if any, and shall be binding upon the Firm, the Trustees, the Committee, Participants and all parties in interest.

11.4  Upon a termination of the Plan in its entirety, each Participant shall be fully (100%) vested in his Accrued Benefit, determined as of the date of such termination, to the extent funded as of such date, and such benefits shall be nonforfeitable.

11.5  In the event of a partial termination of the Plan, the rights of all affected Participants to their Accrued Benefit as of the date of such partial termination shall, insofar as is required by applicable regulations issued by the Internal Revenue Service, be one hundred percent (100%) vested to the extent funded as of such date.

11.6  (a)  Upon termination of the Plan in its entirety, or upon a partial termination of the Plan, the assets of the Trust Fund, or that portion of the Trust Fund which is segregated pursuant to Section 11.2 hereof, may be liquidated and distributed in accordance with the statutory priorities set forth in Section 4044(a) of ERISA and regulations promulgated thereunder.  Any residual assets which shall remain in the Trust Fund after the application of the provisions of said Section 4044(a) of ERISA, shall revert, and be distributed to the Firm.

(b)  If either (i) the lump sum Actuarial Equivalent value of a Participant's Accrued Benefit under the Plan does not exceed Three Thousand Five Hundred Dollars ($3,500), or (ii) the Participant and his Spouse, if any, consent in writing within the ninety (90) day

46

SASMF 00253

period ending on the Benefit Commencement Date, then the Committee shall pay such Actuarial Equivalent value in a lump sum payment to the Participant at any time after the Plan terminates. Notwithstanding anything to the contrary in clause (i) of the preceding sentence, no such distribution shall be made after the Benefit Commencement Date, unless the Participant and his Spouse, if any (or where the Participant has died, his surviving Spouse), consent in writing to such distribution.

11.7 (a) In the event of the termination of the Plan after December 31, 1991, the benefit of any highly compensated employee (within the meaning of Section 414(q) of the Code), including any former Employee who was a highly compensated employee when such Employee Separated From Service or any Employee who was a highly compensated employee at any time after attaining age 55, shall in no event exceed an amount that is nondiscriminatory under Section 401(a)(4) of the Code.

(b) The annual payments to an Employee described in Section 11.7(c) hereof may not exceed an amount equal in each year to the payments that would be made on behalf of the Employee under a straight life annuity that is the Actuarial Equivalent value of the Employee's accrued benefit and the other benefits to which the Employee is entitled under the plan (other than a social security supplement), and the amount of the payments that the Employee is entitled to receive under a social security supplement. Notwithstanding the foregoing, the restrictions of this Section 11.7(b) do not apply if any one of the following requirements is satisfied:

(i) after payment to an Employee described in Section 11.7(c) hereof of all "benefits" described in Section 11.7(d) hereof, the value of plan assets equals or exceeds 110 percent (110%) of the value of current liabilities, as defined in Section 412(1)(7) of the Code,

(ii) the value of the benefits described in Section 11.7(d) hereof for an Employee described in Section 11.7(c) hereof is less than one percent (1%) of the value of current liabilities of the Plan, or

(iii) the value of the benefits described in Section 11.7(d) hereof for an

47

SASMF 00254

Employee described in Section 11.7(c) hereof does not exceed $3,500.

Furthermore, this Section 11.7(b) shall not restrict any distribution to a Participant who agrees (by an adequately secured written agreement with the Committee) to repay to the Trust Fund the Actuarial Equivalent of the portion of such distribution in excess of the amount of distribution otherwise permitted in the event of termination of the Plan.

(c)    The Employees whose benefits are restricted on distribution consist of the twenty-five (25) highly compensated employees (including former Employees who were highly compensated employees when they separated from service and Employees who were highly compensated employees at any time after attaining age fifty-five (55)) whose compensation was the highest.

(d)    For purposes of Section 11.7(b)(i) the term "benefits" includes, among other benefits, loans in excess of the amounts set forth in Section (72)(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living Employee, and any death benefits not provided for by insurance on the Employee's life.

11.8    <u>Responsibility of Committee</u>.  The Committee shall have sole responsibility to see that the restrictions of Section 11.7 hereof are applied.  In the event that Congress should provide by statute, or the Internal Revenue Service should provide by regulation or ruling, that the conditions set forth in Section 11.7 hereof are no longer necessary for the Plan to meet the requirements of Section 401 or other applicable provisions of the Code then in effect, such conditions shall immediately become void and shall no longer apply, without the necessity of further amendment to the Plan.

48

SASMF 00255

## ARTICLE XII

### ADMINISTRATION OF THE PLAN

12.1  The Plan shall be administered by a Committee appointed by the Firm to serve at its pleasure, consisting of not less than five (5) individuals, who may be Participants and/or a Trustee hereunder.  The Committee is hereby designated as the "Plan Administrator" within the meaning of Section 3(16)(A) of ERISA.  Each member of the Committee shall serve until the earliest to occur of the following:  his death, resignation, removal, or the effective date of the appointment of his successor.

12.2  The members of the Committee shall elect from their number a chairman, who may be a Participant hereunder.  The members of the Committee shall elect a secretary, who may be a Participant hereunder and is not required to be a member of the Committee.  The Committee shall hold meetings upon such notice, at such place or places, or at such time or times as they may determine. A majority of the members of the Committee then serving shall constitute a quorum for the transaction of business.  All resolutions or other actions taken by the Committee shall be by vote of a majority of those present at a meeting of the Committee at which a quorum shall be present, or, if they act without a meeting, in writing by all the members of the Committee then serving.  Any dissenting Committee member who, within a reasonable time after he has knowledge of any action or failure to act by the majority, registers his dissent in writing delivered to the Firm and other members of the Committee shall not, subject to the provisions of ERISA, be responsible for any such action or failure to act.

12.3  The Committee may appoint such accountants, enrolled actuaries within the meaning of Section 3042 of ERISA, legal counsel, investment advisors, specialists and other persons as they deem necessary or desirable in connection with the furtherance of their responsibilities hereunder.  The Committee shall be entitled to rely conclusively upon, and shall be fully protected in any action taken by them in good faith in relying upon any opinions or reports which shall be furnished to them by any such actuary, accountant, counsel or other specialist.

49

SASMF 00256

12.4  The members of the Committee shall serve without compensation for services as such.  All expenses of the Committee shall be paid out of the Trust Fund, unless paid by the Firm.  Such expenses shall include any expenses incident to the functioning of the Committee, including, but not limited to, fees of accountants, actuaries, legal counsel, investment advisors, specialists and other similar costs.

12.5  The Committee shall discharge its duties with respect to the Plan solely in the interests of the Participants and their Beneficiaries and

(a)  for the exclusive purpose of providing benefits to Participants and their Beneficiaries and defraying reasonable expenses for administering the Plan;

(b)  with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man, acting in like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims;

(c)  in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of ERISA.

12.6  The Firm shall indemnify and hold harmless each member of the Committee and each of its designees under Section 12.8(b) hereof who is an employee or member of the Firm against any and all claims, losses, damages, expenses, including legal fees and other expenses of litigation and liability arising from any action or failure to act, except when the same is judicially determined to be due to the gross negligence or willful misconduct of such Committee member.

12.7  In carrying out its duties with respect to the general administration of the Plan, the Committee shall have, but shall not be limited to, the following powers:

(a)  To determine all questions relating to the eligibility of employees to participate in the Plan;

(b)  To compute the amount and kind of benefits payable to the Participants and their Beneficiaries;

50

SASMF 00257

(c) To authorize disbursements from the Trust in accordance with the provisions of the Plan;

(d) To maintain all the necessary records for the administration of the Plan;

(e) To interpret the provisions of the Plan and Trust and to make and publish such rules for their regulation as are not inconsistent with the terms thereof;

(f) To change or to modify the method of accounting for the Plan or Trust.

12.8 (a) The Committee is hereby designated as the "named fiduciary" within the meaning of Sections 402(a) and 402(c)(3) of ERISA, and shall, unless provided for to the contrary pursuant Section 12.8(b) hereof, jointly administer the Plan in accordance with its terms and shall have all powers necessary to carry out the provisions of the Plan. The Committee shall interpret the Plan in a non-discriminatory manner. The Committee shall, in its complete discretion, determine all questions arising in the administration, interpretation and application of the Plan. Any such determination by the Committee shall be conclusive and binding on all persons.

(b) The Committee may establish procedures for (i) the allocation of fiduciary responsibilities (other than "trustee responsibilities", as defined in Section 405(c) of ERISA) under the Plan among its members and (ii) the designation of persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the Plan.

If any fiduciary responsibility is allocated or if any person is designated to carry out any responsibility pursuant to the last preceding sentence, the named fiduciary will not be liable for any act or omission of such person in carrying out such responsibility, except as provided in Section 405(c)(2) of ERISA.

12.9 (a) A Participant or Beneficiary may file with the Committee a written claim for benefits under the Plan. The Committee shall, within a reasonable time not to exceed ninety (90) days, unless special circumstances require an extension of time of not more than an additional ninety (90) days (in which event a Participant or Beneficiary will be notified of the delay during the first ninety (90) day period), provide ade-

51

SASMF 00258

quate notice in writing to any Participant or Beneficiary whose claim for benefits shall have been denied, setting forth the following in a manner calculated to be understood by the Participant or Beneficiary:

       (i)  the specific reason or reasons for the denial;

       (ii)  specific reference to the provision or provisions of the Plan on which the denial is based;

       (iii)  a description of any additional material or information required to perfect the claim, and an explanation of why such material or information is necessary; and

       (iv)  information as to the steps to be taken in order that the denial of the claim may be reviewed.

       (b)  If written notice of the denial of a claim has not been furnished to a Participant or Beneficiary, and such claim has not been granted within the time prescribed in Section 12.9(a) hereof (including any applicable extension), the claim for benefits shall be deemed denied.

       (c)  A Participant or Beneficiary whose claim for benefits shall have been denied in whole or in part, may, within sixty (60) days from either the receipt of the denial of the claim or from the time the claim is deemed denied (unless the notice of denial grants a longer period within which to respond), appeal such denial to the Firm.  The Participant or Beneficiary may, upon request, at this time review documents pertinent to his claim and may submit written issues and comments. Failure to file such appeal within the applicable time period shall be a bar to all further procedures with respect to the claim.

       (d)  The Firm shall notify a Participant or Beneficiary of its decision within sixty (60) days after an appeal is received, unless special circumstances require an extension of time of not more than an additional sixty (60) days (in which event a Participant or Beneficiary will be notified of the delay during the first sixty (60) day period).  Such decision shall be given in writing in a manner calculated to be understood

SASMF 00259

by the Participant or Beneficiary and shall include the following:

> (i)  specific reasons for the decision; and
>
> (ii)  specific reference to the provision or provisions of the Plan on which the decision is based.

12.10  The members of the Committee may establish one (1) or more Special Subcommittees to administer certain provisions of the Plan.  The members of the Committee shall, with respect to each Special Subcommittee, elect not fewer than three (3) individuals to serve as the members of each such Special Subcommittee.  The members of each such subcommittee shall elect from their number a chairman and a secretary either or both of whom may be a Participant hereunder.  Such a subcommittee shall hold meetings upon such notice, at such place or places, or at such time or times as the members of such subcommittee may determine.  A majority of the members then serving on a Special Subcommittee shall constitute a quorum for the transaction of business by such subcommittee.  All resolutions or other actions taken by a Special Subcommittee shall be by a vote of a majority of those present at a meeting of such subcommittee at which a quorum shall be present, or, if the subcommittee acts without a meeting, in writing by all the members of such subcommittee then serving.  Any dissenting subcommittee member who, within a reasonable time after he had knowledge of any action or failure to act by the majority of such subcommittee, registers his dissent in writing delivered to (i) the Committee, (ii) the Firm and (iii) any other member of such subcommittee shall not, subject to the provisions of ERISA, be responsible for any such action or failure to act.

SASMF 00260

ARTICLE XIII

THE TRUST AND TRUSTEES

13.1   The Firm hereby establishes a Trust Fund hereunder, consisting of cash or other property as shall from time to time be received by the Trustees pursuant to Article VIII hereof from or on behalf of the Firm, to-gether with any increments thereto and any income there-from.

13.2   The Trust Fund shall be jointly held by the Trustees acting hereunder, and shall be managed and administered pursuant to the terms of this Plan.   The Trustees shall consist of not less than two (2) individu-als appointed by the Firm.   Each such Trustee shall hold office until the earliest to occur of the following:   his death, disability, resignation, removal, or the effective date of the appointment of his successor.

13.3   The Trustees shall act unanimously except that if at any time there are more than two (2) Trustees acting hereunder they shall act by majority vote.   Any action by the Trustees may be taken either by vote at a meeting or in writing without a meeting.   Notwithstanding the foregoing provisions of this Section 13.3:

(a)   all instructions relating to the investment and reinvestment of securities or other prop-erty held in the Trust may be signed by (i) any individu-al then serving as Trustee, or (ii) any individual so authorized in a writing signed by at least two Trustees (such authorization to remain in effect until revoked by a writing signed by at least two Trustees); provided, however, that such instructions must be consistent with the investment policy then in effect with respect to the assets held in the Trust; and, provided further, that any instructions to open a new checking, custody, investment or similar account for the Trust must be signed by two Trustees;

(b)   any instructions for the distribution or other transfer of funds or other assets out of the Trust (whether by check or otherwise) may be signed by any one of the Trustees, provided, however, that if the amount of such distribution or transfer exceeds One Hundred Thousand Dollars ($100,000), the signatures of two (2) Trustees shall be required; and

54

SASMF 00261

(c)  the Trustees may, by written authorization, empower any one or more of them to individually execute any other document or documents, or otherwise act in behalf of the Trustees, such authorization to remain in effect until revoked by the Trustees.

13.4  The Trustees may appoint such accountants, actuaries, legal counsel, investment advisors, specialists and other persons as they deem necessary or desirable in connection with the furtherance of their responsibilities hereunder.  The Trustees shall be entitled to rely conclusively upon and shall be fully protected in any action taken by them in good faith in relying upon any opinions or reports which shall be furnished to them by any such actuary, accountant, counsel or other specialist.

13.5  The Trustees shall serve without compensation for services as such.  All expenses of the Trustees shall be paid out of the Trust Fund, unless paid by the Firm.  Such expenses shall include any expenses incident to the functioning of the Trustees, including, but not limited to, fees of accountants, actuaries, legal counsel, investment advisors, specialists and other similar costs.

13.6  The Trustees shall discharge their duties with respect to the Plan solely in the interests of the Participants and their Beneficiaries and

(a)  for the exclusive purpose of providing benefits to Participants and their Beneficiaries and defraying reasonable expenses for administering the Plan;

(b)  with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man, acting in like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character and with like aims;

(c)  by diversifying the investments of the Trust Fund so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(d)  in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of ERISA.

55

SASMF 00262

13.7  The Firm shall indemnify and hold harmless each of the Trustees against any and all claims, loss, damages, expense, including legal fees and other expenses of litigation and liability arising from any action or failure to act, except when the same is judicially determined to be due to the gross negligence or wilful misconduct of such Trustee.

13.8  The Trustees shall invest and reinvest the Trust Fund and keep the Trust Fund invested, without distinction between principal and income, in such securities or in such property, real or personal, foreign or domestic, wherever situated, as the Trustees shall deem advisable, including, but not limited to, the general account or a separate account of an insurance company licensed to do business in the State of New York, shares in a regulated investment company and plans for the accumulation of such shares, stocks, common or preferred, bonds and mortgages, and other evidences of indebtedness or ownership.  In making such investments, the Trustees shall not be restricted to securities or other property of the character authorized or required by applicable law from time to time for trust investments.

13.9  The Trustees shall have the following powers and authority in the investment of the assets of the Trust Fund:

(a)  To purchase, or subscribe for, any securities (including shares in a regulated investment company and plans for the accumulation of such shares) or other property and to retain the same in trust.  The Trustees are specifically authorized to limit investment, at their own discretion, to shares of regulated investment companies or to plans for the accumulation of such shares;

(b)  To sell, exchange, convey, transfer or otherwise dispose of any securities or other property held by them, by private contract or at public auction. No person dealing with the Trustees shall be bound to see to the application of the purchase money or to inquire into the validity, expediency or propriety of any such sale or other disposition;

(c)  To vote upon any stock, bonds or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights or other options, and to make any payments inci-

56

SASMF 00263

dental thereof; to oppose, or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities or other property held as part of the Trust Fund;

(d)   To cause any securities or other property held as part of the Trust Fund to be registered in its own name or in the name of one or more of its nominees, and to hold any investments in bearer form, but the books and records of the Trustees shall at all times show that all such investments are part of the Trust Fund;

(e)   To borrow or raise money for the purposes of the Plan in such amount and upon such terms and conditions as the Trustees shall deem advisable and, for any sum so borrowed, to issue their promissory note as Trustees and to secure the repayment thereof by pledging all, or any part, of the Trust Fund; and no person lending money to the Trustees shall be bound to see to the application of the money lent or to inquire into the validity, expediency or propriety of any such borrowing;

(f)   To keep such portion of the Trust Fund in cash or cash balances as the Trustees may, from time to time, deem to be in the best interests of the Plan created hereby, without liability for interest thereon;

(g)   To accept and retain for such time as may seem advisable any securities or other property received or acquired by them as Trustees hereunder, whether or not such securities or other property would normally be purchased as investments hereunder;

(h)   To apply for and purchase life insurance policies or annuity contracts;

(i)   To appoint a bank or banks, trust company or trust companies as corporate Trustee, and to enter into and execute an agreement or agreements with any such corporate Trustee to provide for the investment or reinvestment of assets of the Trust Fund;

(j)   To appoint an investment manager pursuant to Section 402(c)(3) of ERISA, in which event no

57

Trustee shall be liable for the acts or omissions of such investment manager or be under any obligation to invest or otherwise manage any asset of the Trust Fund which is subject to the management of such investment manager.

(k)  to transfer money or assets of this Trust Fund to any collective investment fund of a bank consisting of assets of employee benefit trusts and qualifying as a "group" Trust under Section 401 of the Code.  The governing document of any such fund in which assets of this Trust Fund are invested (including, without limitation, any provision dealing with fiduciary responsibility) is hereby incorporated and made a part hereof as fully as if set forth at length herein.  Assets of this Trust Fund invested in such fund shall be held and administered by the trustee of that fund in accordance with the terms of and under the powers granted in said governing document.  The combining of assets of this Trust Fund with assets of other participating trusts in such fund is hereby specifically authorized.

13.10  The Trustees shall at a meeting duly called for such purpose, at the direction of the Committee, establish a funding policy and method consistent with the objectives of the Plan and the requirements of Title I of ERISA.  The Trustees shall meet at least annually to review such funding policy and method.  In establishing and reviewing such funding policy and method, the Trustees shall, at the direction of the Committee, endeavor to determine the Plan's short-term and long-term objectives and financial needs, taking into account the need for liquidity to pay benefits and the need for investment growth.

13.11  The Trustees shall from time to time, at the direction of the Committee, make payments out of the Trust Fund in such manner, in such amounts and for such purposes as the Committee may determine, and upon any such payment being made, the amount thereof shall no longer constitute a part of the Trust Fund from which it was made.

13.12  The Trustees shall keep accurate and detailed accounts of all investments, receipts, disbursements and other transactions hereunder.

Within two hundred ten (210) days following the close of each Plan Year and within two hundred ten (210) days after the removal or resignation of any Trustee as provided in Section 13.13 hereof, the Trustees shall file

SASMF 00265

with the Firm a written account setting forth all invest-ments, receipts, disbursements and other transactions effected by them during such Plan Year or during the period from the close of the last Plan Year to the date of such removal or resignation. Except as provided to the contrary by Section 413(a) of ERISA, upon the expira-tion of ninety (90) days from the date of filing of such annual or other account, the Trustees shall be forever released and discharged from all liability and account-ability to anyone with respect to the propriety of their acts and transactions shown in such account, except with respect to any such acts or transactions as to which the Firm shall file with the Trustees written objections within such ninety (90) day period.

The filing by the Trustees with the Firm of an annual report in accordance with Section 103 of ERISA shall constitute the filing of an account within the meaning of this Section 13.12.

13.13  Any Trustee may be removed by the Firm at any time upon thirty (30) days' notice in writing to the Trustees, which notice may be waived by the Trustees. A Trustee may resign at any time upon thirty (30) days' notice in writing to the Firm, which notice may be waived by the Firm.  Upon such removal or resignation of a Trustee, or upon the death or disability of a Trustee, the Firm may, or in the event there is no then acting Trustee shall, appoint a successor Trustee who shall have the same powers and duties as those conferred upon the Trustees hereunder.  The Firm may appoint one or more additional Trustees at any time who shall have the same powers and duties as those conferred upon the Trustees hereunder.

59

SASMF 00266

ARTICLE XIV

TOP-HEAVY PROVISIONS

14.1  <u>Application of Top-Heavy Provisions</u>.  If in any Plan Year beginning after 1983 the Plan is or becomes a Top-Heavy Plan (as defined in this Article XIV), then the provisions of this Article shall apply for such Plan Year and shall supersede any conflicting provisions of the Plan.  The date for determining the applicability of this Article (the "Determination Date") is the last day of the preceding Plan Year.

14.2  <u>Top-Heavy Plan</u>.  The Plan shall constitute a Top-Heavy Plan if, as of the Determination Date, the Plan is included in an Aggregation Group and such group is a Top-Heavy Group (as defined in this Article XIV).

14.3  <u>Definitions</u>.  For purposes of this Article, the following definitions shall apply:

(a)  The term "Key Employee" means an employee (including an "employee" as defined in Section 401(c)(1) of the Code) who at any time during the Plan Year or any of the four (4) preceding Plan Years is

(i)  one of those ten (10) employees having annual compensation from the Firm or an Affiliate greater than the limitation in effect under Section 415(c)(1)(A) of the Code, and owning both more than a one-half (1/2) percent interest and the largest interest in the Firm or an Affiliate;

(ii)  a five percent (5%) owner of the Firm or an Affiliate; or

(iii)  a one percent (1%) owner of the Firm or an Affiliate having an annual compensation of more than $150,000 from the Firm or an Affiliate.

An Employee is considered to be a five percent (5%) owner of the Firm or an Affiliate if the employee owns more than five percent (5%) of the capital or profits interest in the Firm or any Affiliate.  The same rules apply to determine whether an employee is a one percent (1%) owner.  For purposes of Section 14.3(a)(i), (ii) and

60

SASMF 00267

(iii), constructive ownership rules similar to the rules of Section 318 of the Code shall apply with the substitution of "five percent (5%)" for "fifty percent (50%)" in paragraph (a)(2)(C) of such section and the substitution of "capital or profits interests" for "stock". For purposes of Section 14.3(a)(i), if two (2) employees have equal interests in the Firm or an Affiliate, the employee with the greater annual compensation from the Firm or an Affiliate has the larger interest. For purposes of this Article XIV, the terms "employee" and "Key Employee" include the Beneficiaries of such employees.

(b)    (i)    The term "Aggregation Group" means the group of plans that includes any plan maintained by the Firm or an Affiliate (A) in which a Key Employee is a participant or (B) which enables a plan in which a Key Employee is a participant to meet the requirements of Section 401(a)(4) or 410 of the Code.

(ii)    In any Plan Year, in testing for top-heaviness under Section 14.3(a), the Committee may in its discretion expand the Aggregation Group to take into account any other plan maintained by the Firm or an Affiliate, but only if such expanded Aggregation Group does not, as a result of such expansion, fail to meet the requirements of Sections 401(a)(4) and 410 of the Code.

(c)    The term "Top-Heavy Group" means an Aggregation Group as to which, as of the Determination Date, the sum of

(i)    the present value of the cumulative accrued benefits for Key Employees under all defined benefit plans included in such group and

(ii)    the aggregate value of the accounts of Key Employees under all defined contribution plans included in such group

exceeds sixty percent (60%) of the sum of such present values and accounts for all employees under all such plans in such group.

14.4    <u>Present Values and Accounts</u>. For purposes of Section 14.2 and Section 14.3(c) of this Article XIV, the following rules shall apply in determining the

61

SASMF 00268

present value of the cumulative accrued benefits for any employee and the value of the accounts of any employee:

(a)    The present value of accrued benefits and the value of accounts shall be determined as of the most recent valuation date that falls within the twelve (12) month period ending on the Determination Date;

(b)    Firm contributions and Employee contributions shall be taken into account;

(c)    All amounts distributed to a Participant within the five (5) year period ending on the Determination Date shall be taken into account, including any amount distributed from a terminated plan that would have been required to be included in the Aggregation Group had it not been terminated;

(d)    With respect to a plan to which rollover contributions or similar transfers have been made, any such transfers that were initiated by the employee and made after December 31, 1983, shall be disregarded (except to the extent provided in regulations issued by the Secretary of the Treasury);

(e)    If an employee ceases to be a Key Employee, such employee's cumulative accrued benefits and account balances shall be disregarded (for purposes of determining the cumulative accrued benefits and account balances of both Key Employees and all employees) for any Plan Year after the last Plan Year for which he was treated as a Key Employee;

(f)    With respect to Plan Years beginning after March 31, 1985, the cumulative accrued benefits and the aggregate account balances of persons who have performed no services for the Firm or an Affiliate for the five (5) year period ending on the Determination Date shall be disregarded; and

(g)    The present value of cumulative accrued benefits under a defined benefit plan shall be determined in accordance with the actuarial assumptions stated in such plan.

(h)    Solely for purposes of determining whether the Plan, or any other plan included in an Aggregation Group of which this Plan is part, is Top-Heavy, the accrued benefit of a Participant other than a Key Employee shall be determined under (1) the method, if

SASMF 00269

any, that uniformly applies for accrual purposes under all plans maintained by the Firm or Affiliate, or (2) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rule of Section 411(b)(1)(c) of the Code.

14.5  <u>Vesting Requirements</u>.  If the Plan is determined to be a Top-Heavy Plan in any Plan Year, then a Participant's right to his Accrued Benefit determined as of the end of such Plan Year shall vest in accordance with the following schedule unless a more rapid vesting schedule is in effect under the terms of the Plan:

| Years of Service | Vesting Percentage |
| --- | --- |
| 2 | 20 |
| 3 | 40 |
| 4 | 60 |
| 5 | 80 |
| 6 or more | 100 |

If the Plan ceases to be a Top-Heavy Plan in any Plan Year, the vesting schedule set forth in Article V shall apply for such Plan Year with respect to any portion of a Participant's Accrued Benefit that is forfeitable as of the beginning of such Plan Year; provided, however, that a Participant with three (3) or more Years of Service shall be given the option of remaining under the vesting schedule set forth above.

14.6  <u>Minimum Benefit</u>.  (a)  If this Plan is determined to be a Top-Heavy Plan in any Plan Year, then the Accrued Benefit, expressed as an "annual retirement benefit" (as such term is defined in Section 416(c)(1)(E) of the Code), for each Participant who is not a Key Employee in such Plan Year shall not be less than the product of items (i) and (ii) below, less item (iii) below:

(i)  the lesser of (x) two percent (2%) multiplied by such Participant's Years of Service after 1983, disregarding for this purpose any such years during which the Plan is not Top-Heavy or (y) twenty percent (20%),

63

SASMF 00270

(ii)  such Participant's average compensation during his highest-paid five (5) consecutive Years of Service,

(iii)  the Actuarial Equivalent of the Firm contributions made on behalf of such Participant under the Skadden, Arps, Slate, Meagher & Flom Retirement Plan and the Skadden, Arps, Slate, Meagher & Flom Savings Plan (including contributions attributable to a salary reduction or similar arrangement).

(b)  The minimum benefit described in Section 14.6(a) hereof shall be made with respect to each Participant who is not a Key Employee without regard to (i) the number of Hours of Service credited to the Participant for the Plan Year in question or (ii) the Participant's level of Compensation for such Plan Year. For purposes of this Section 14.6, benefits accrued under Chapter 21 of Title II of the Social Security Act shall be disregarded.

14.7  <u>Ceiling on Includable Compensation</u>.  If this Plan is determined to be a Top-Heavy Plan in any Plan Year, then only the first $200,000 of a Participant's compensation (as defined in Treasury Regulation Section 1.415-2(d)) may be taken into account in determining the Accrued Benefit of such Participant for the Plan Year.  The $200,000 limit shall automatically be adjusted due to cost of living increases in accordance with regulations issued from time to time by the Secretary of the Treasury under Section 401(a)(17) of the Code.

14.8  <u>Combined Limit on Contributions and Benefits for Key Employees</u>.  If the Plan is determined to be a Top-Heavy Plan in any Plan Year, then the denominators of the defined benefit and defined contribution fractions for purposes of paragraphs (2)(B) and (3)(B) of Section 415(e) of the Code for any Key Employee who participates in both a defined benefit plan and a defined contribution plan included in a Top-Heavy Group shall be the lesser of 1.0 (as multiplied by the dollar limit) or 1.4 (as multiplied by the limit based upon compensation).

64

SASMF 00271

## ARTICLE XV

### MISCELLANEOUS

15.1   In case any provision of this Plan shall be held illegal or invalid for any reason, said illegality or invalidity shall not affect the remaining parts of this Plan, but this Plan shall be construed and enforced as if said illegal and invalid provisions had never been inserted herein or therein.

15.2   This Plan hereby created shall be governed, construed, administered and regulated in all respects under the laws of the State of New York, except insofar as they shall have been superseded by the provisions of ERISA.

15.3   Whenever any words are used herein in the masculine gender they shall be construed as though they were also used in the feminine gender in all cases where they would also apply and wherever any words are used herein in the singular form, they shall be construed as though they were also used in the plural form in all cases where they would so apply.

15.4   In the event of any merger or consolidation of the Plan with any other plan, or the transfer of its assets or liabilities to any other plan, each Participant shall be entitled to receive a benefit (if the Plan then terminated) immediately after such merger, consolidation or transfer, which is equal to or greater than the benefit he would have been entitled to receive immediately before such merger, consolidation or transfer (if the Plan had then terminated).

15.5   This Plan is established for the exclusive benefit of the Participants and their beneficiaries hereunder.  Except as provided in Sections 8.4, 8.5 and 11.6, it shall be impossible for any assets of the Trust to revert to the Firm prior to the satisfaction of all liabilities with respect to Participants and their beneficiaries hereunder.

65

SASMF 00272

IN WITNESS THEREOF the Trustees have hereunto
set their hands, and Skadden, Arps, Slate, Meagher & Flom
has caused these presents to be executed this 23ʳᵈ day of
June, 1994 and to be effective as of January 1, 1994.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM

By: _____ Executive
    Robert C. Sheehan,    Partner

_____
Stuart N. Alperin, Trustee

_____
Charles M. Fox, Trustee

_____
James A. Levitan, Trustee

_____
Robert C. Vincent, Jr., Trustee

_____
Earle Yaffa, Trustee

66

SASMF 00273

APPENDIX A

## Determination of Various Actuarial Equivalents

SECTION A:    Factors to Convert to Increasing Life Annuity

The monthly amount of a Participant's increasing annuity shall be equal to the sum of the vested portion of the Participant's Basic Account and Prior Service Account, if any, as of his Benefit Commencement Date divided by the applicable annuity value from the attached Table A, based on the Participant's age as of his Benefit Commencement Date.

SECTION B:    Level Life Annuity Option (Option A of Section 7.15)

1.    Mortality Table:  GAM 1988 mortality with margin (a weighted average of 50% of the male rates and 50% of the female rates).

2.    Interest Rate:  The greater of (a) five percent (5%) and (b) the 3-month average, utilizing the fourth, fifth and sixth calendar months preceding the month in which the first payment is due, to the nearest 1/4% plus 1%, of the rate on U.S. Treasury Notes and Bonds, Composite, over 10 years, as published in the Federal Reserve Bulletin.

3.    Weighted Average:  The life reserve factors under this section B shall be calculated as one-half of the reserve factor using male mortality rates plus one-half of the reserve factor using female mortality rates.

SECTION C:    Lump Sum Equivalent of Accrued Benefit, Frozen Grandfather Benefit and Dynamic Grandfather Bene- fit

1.    Mortality Table:  UP-1984 Mortality Table

2.    Interest Rates:  The applicable interest rates are:

(a)  the rates used by the Pension Benefit Guar- anty Corporation for purposes of valuing immediate or deferred annuities, as the case may be, for terminating single employer plans with insufficient assets to pay guaranteed benefits, as in effect on January 1 of the calendar year in which the

67

SASMF 00274

Participant's Benefit Commencement Date occurs, if such rates produce a lump sum not greater than $25,000, or

    (b)   120% of such rates, if 120% of such rates produces a lump sum greater than $25,000, or

    (c)   the rates necessary to produce a lump sum value of $25,000 otherwise.

    3.   <u>Other Factors</u>:  None

SECTION D:    <u>Adjustment to Section 415 limits for Benefit Commencement Dates which precede age 62 or are later than Social Security Normal Retirement Age [Article VII]</u>

    1.   <u>Mortality Table</u>:  Same as B1 above

    2.   <u>Interest Rates</u>:  5%

    3.   <u>Weighted Average</u>:  The actuarial equivalence reduction or increase factors under this Section D shall be calculated as one-half of the applicable reduction or increase factor using male mortality rates plus one-half of the applicable reduction or increase factor using female mortality rates.

Notwithstanding the foregoing, if a Participant's Accrued Benefit Under the Prior Plan as of December 31, 1991 exceeded the 415 limits, the Accrued Benefit as limited by 415 shall not be lower than that determined as of December 31, 1991 under the terms of the Prior Plan.

SECTION E:    <u>Reduction in Frozen Grandfather Benefit or Dynamic Grandfather Benefit for Benefit Commencement Dates which precede age 55, and Other Sections</u>

    1.   <u>Mortality Table</u>:  Same as B1 above

    2.   <u>Interest Rate</u>:  The greater of (a) five percent (5%) and (b) the 3-month average, utilizing the fourth, fifth and sixth calendar months preceding the month in which the first payment is due, to the nearest 1/4 of the rate on U.S. Treasury Notes and Bonds, Composite, over 10 years, as published in the Federal Reserve Bulletin.

    3.   <u>Weighted Average</u>:  The actuarial equivalence factors under this Section E shall be calculated as one-half of the applicable factor calculated using male mortality rates plus one-half the applicable factor calculated using

68

SASMF 00275

female mortality rates, except that, for purposes of calculating joint and survivor annuity reduction factors, the actuarial equivalence factors shall be calculated as one-half of the reduction factor using male mortality rates for the participant and female mortality rates for the spouse plus one-half of the reduction factor using female mortality rates for the participant and male mortality rates for the spouse.

SASMF 00276

TABLE A
TO APPENDIX A

FACTORS TO CONVERT CASH BALANCE
TO INCREASING ANNUITY

(Result is monthly benefit; increases occur annually)

| AGE | FACTOR | AGE | FACTOR |
|---|---|---|---|
| 20 | 746 | 50 | 398 |
| 21 | 734 | 51 | 387 |
| 22 | 722 | 52 | 376 |
| 23 | 711 | 53 | 365 |
| 24 | 699 | 54 | 354 |
| 25 | 687 | 55 | 343 |
| 26 | 675 | 56 | 332 |
| 27 | 664 | 57 | 322 |
| 28 | 652 | 58 | 311 |
| 29 | 640 | 59 | 301 |
| 30 | 628 | 60 | 290 |
| 31 | 617 | 61 | 280 |
| 32 | 605 | 62 | 270 |
| 33 | 593 | 63 | 260 |
| 34 | 581 | 64 | 250 |
| 35 | 570 | 65 | 240 |
| 36 | 558 | 66 | 230 |
| 37 | 546 | 67 | 220 |
| 38 | 535 | 68 | 211 |
| 39 | 523 | 69 | 202 |
| 40 | 512 | 70 | 193 |
| 41 | 500 | 71 | 184 |
| 42 | 488 | 72 | 176 |
| 43 | 477 | 73 | 167 |
| 44 | 465 | 74 | 159 |
| 45 | 454 | 75 | 151 |
| 46 | 443 | | |
| 47 | 431 | | |
| 48 | 420 | | |
| 49 | 409 | | |

GA-88 Mortality Table with Margin

70

SASMF 00277

APPENDIX B

Determination of Single Sum Value of Participant's
Accrued Benefit Under the Prior Plan

SECTION A:     The "Accrued Benefit Under the Prior Plan" shall
be determined as follows:

1.     For Participants who did not participate in
the Skadden, Arps, Slate, Meagher & Flom Special Partners'
Pension Plan, the amount of a Participant's "Accrued Benefit
Under the Prior Plan" is equal to the sum of (a) and (b) below,
determined as of December 31, 1991:

(a)     two percent (2%) of such Participant's
annual rate of "Base" Compensation (exclusive of overtime and
bonuses, if any) as of April 1, 1976 not in excess of $14,100,
multiplied by such Participant's Past Service, if any;

(b)     with respect to each year of Future
Service which ends prior to January 1, 1992:

(i)     with respect to each year of
Future Service which ends prior to April 1, 1984, the
greater of (A) two percent (2%) of such Participant's
Compensation not in excess of either (1) the Social
Security Limit for such year, or (2) a pro rata por-
tion of the Social Security Limit for such year if
such Participant became a Participant during such
year on a date other than an April 1 Entry Date in
such year, or (B) eight-tenths percent (.8%) of such
Participant's Compensation; and

(ii)     with respect to each year
of Future Service coinciding with the Plan Year be-
ginning on April 1, 1984 and ending on March 31,
1985:

(A)     with respect to the period
beginning April 1, 1984 and ending July 31, 1984, the
greater of (1) two percent (2%) of such Participant's
Compensation for such period, not in excess of the
pro rata portion of the Social Security Limit for
such period, or (2) eight-tenths percent (.8%) of
such Participant's Compensation for such period; plus

(B)     with respect to each year of
Future Service with respect to the period beginning

71

SASMF 00278

August 1, 1984 and ending March 31, 1985, two percent (2%) of such Participant's Compensation for such period; and

(iii) with respect to each year of Future Service which begins on or after April 1, 1985, two percent (2%) of such Participant's Compensation.

(c) For purposes of this Section A(1) of Appendix B, the following terms shall have the following meanings:

"FUTURE SERVICE" means the aggregate of:

(i) the first Plan Year beginning on or after April 1, 1976 in which an Employee meets the requirements for eligibility pursuant to Section 2.11 as in effect from time to time, and

(ii) each subsequent Plan Year during which a Participant shall have completed at least one thousand (1000) Hours of Service.

"PAST SERVICE" means with respect to any Employee, each consecutive twelve (12)-month period ending on any March 31 on or before March 31, 1976, during which an Employee completed at least one thousand (1000) Hours of Service, commencing with the first April 1st or October 1st coincident with or next following such Employee's having both (i) attained the age of twenty-five (25) years, and (ii) completed a Year of Eligibility Service. Notwithstanding the foregoing, in the case of an Employee who meets the requirements of (i) and (ii) on any October 1st, such Employee shall be credited with one-half (1/2) year of Past Service in respect of the period beginning on such October 1st and ending on the March 31st following such date, if he shall have completed at least one thousand (1000) Hours of Service during such consecutive twelve (12)-month period.

"SOCIAL SECURITY LIMIT" means, with respect to any Plan Year, the lowest maximum amount of earnings which may be considered wages under Section 3121(a)(1) of the Code applicable to any calendar year included within such Plan Year.

2. For Participants who participated in the Skadden, Arps, Slate, Meagher & Flom Special Partners' Pension Plan, the amount of a Participant's "Accrued Benefit Under the

72

SASMF 00279

Prior Plan" is equal to the sum of (a) and (b) below, determined as of December 31, 1991, less (c) below.

(a) two percent (2%) of such Participant's annual Compensation for the fiscal year ended March 31, 1984, multiplied by such Participant's Past Service, if any;

(b) with respect to each year of Future Service, two percent (2%) of such Participant's Compensation for such year;

(c) the annual amount payable under a single life annuity purchasable by the fair market value of the Participant's account balance attributable to Firm contributions under the Skadden, Arps, Slate, Meagher & Flom Retirement Plan without regard to any prior distributions from such account. Such annual amount purchasable is determined based on an 8% interest rate and the 1978 Basic GAM Mortality Table for Males.

(d) For purposes of this Section A(2) of Appendix B, the terms "Future Service" and "Past Service" shall have the same meanings as under Section A(1) of this Appendix B above, except that the dates April 1, 1976 and March 31, 1976 therein are replaced with April 1, 1984 and March 31, 1984, respectively.

3. Special Provisions for Participants Whose Normal Retirement Dates Were on or before January 1, 1991:

(a) If a Participant's Normal Retirement Date occurred on or before January 1, 1991, the "Accrued Benefit Under the Prior Plan" shall be determined as the greater of (i) and (ii) below, as follows:

(i) his "Accrued Benefit under the Prior Plan" as determined in Section A(1) or A(2), as applicable, of this Appendix B, and

(ii) his "Accrued Benefit under the Prior Plan" as determined in Section A(1) or A(2), as applicable, of this Appendix B, but determined by replacing the date December 31, 1991 therein with the last day of the Plan Year in which the Participant's 65th birthday occurred, and then actuarially increasing such benefit for every month by which December 31, 1991 follows such date.

The actuarial equivalence basis used for this adjustment shall be:

73

SASMF 00280

(A)  In the case of a Participant covered under Section A(1) of this Appendix B, an interest rate of 8% and mortality in accordance with the 1978 Basic GAM Mortality Table for Females, with a 2-year set forward for both males and females.

(B)  In the case of a Participant covered under Section A(2) of this Appendix B, an interest rate of 5% and mortality in accordance with the 1978 Basic GAM Mortality Table for Males.

SECTION B:     The "Single Sum Value of a Participant's Accrued Benefit Under the Prior Plan" shall be determined by multiplying the "Accrued Benefit under the Prior Plan" by the applicable annuity value factor based on the Participant's age at December 31, 1991, commencement of the "Accrued Benefit Under the Prior Plan" as of the earlier of the Participant's Normal Requirement Date or January 1, 1992, and the following assumptions:

1.   Mortality Table:

(a)  Prior to benefit commencement - none

(b)  After benefit commencement - UP-1984

74

SASMF 00281

2.   <u>Interest Rate</u>:

    (a)   Prior to benefit commencement - 8%

    (b)   After benefit commencement - 8%

75

SASMF 00282

APPENDIX C

## Frozen And Dynamic Grandfather Benefits

SECTION A:        Frozen Grandfather Benefit

1.  A Participant who was participating in the Prior Plan on December 31, 1991, but is not entitled to a Dynamic Grandfather Benefit under Section B of this Appendix C shall have a Frozen Grandfather Benefit deter mined as his Accrued Benefit Under the Prior Plan, as defined in Appendix B.

2.  If the Benefit Commencement Date of a Participant who is entitled to a Frozen Grandfather Benefit under A(1) above is later than the first day of the Plan Year following his 65th birthday, he shall be entitled to receive a Frozen Grandfather Benefit equal to the greater of (a) and (b), as follows:

(a)  his Accrued Benefit under the Prior Plan as defined in Appendix B

(b)  his Accrued Benefit under the Prior Plan as defined in Appendix B but determined at the earlier of December 31, 1991 and the first day of the Plan Year following the Participant's 65th birthday, actuarially increased for every month by which the Benefit Commencement Date follows the first day of the Plan Year following the Plan Year in which the Participant attains age 65, in accordance with the actuarial equivalence basis described in Section A of Exhibit I of the Prior Plan.

SECTION B:        Dynamic Grandfather Benefit

A Participant who was born before 1947 and had completed at least five Years of Service as of December 31, 1991 shall have a Dynamic Grandfather Benefit determined as follows:

1.  As of January 1, 1992, such Dynamic Grandfather Benefit shall be equal to his Accrued Benefit Under the Prior Plan, as defined in Appendix B.

2.  For each Plan Year thereafter in which the Participant, but not as an Inactive Participant or a Limited Participant, completes at least 1,000 Hours of Service, there

76

SASMF 00283

shall be added to his Dynamic Grandfather Benefit an amount equal to 2% of his Compensation for such Plan Year.

3.    If the Benefit Commencement Date of a Participant who is entitled to a Dynamic Grandfather Benefit is later than the first day of the Plan Year following his 65th birthday, he shall be entitled to receive a Dynamic Grandfather Benefit equal to the greater of (a) and (b), as follows:

(a)  the Dynamic Grandfather Benefit determined in accordance with B1 and B2 of this Appendix C

(b)  the Dynamic Grandfather Benefit determined as described in B1 and B2 of this Appendix C but (i) without recognizing Compensation for Plan Years beginning after the Participant attains age 65 and (b) actuarially increased for every month by which the Benefit Commencement Date follows the first day of the Plan Year following the Plan Year in which the Participant attains age 65, in accordance with the actuarial equivalence basis described in Section A of Exhibit I of the Prior Plan.

SECTION C:    Option D [Lump Sum] at Benefit Commencement Date

At his Benefit Commencement Date, a Participant who has a Frozen or Dynamic Grandfather Benefit, as applicable, and who elects Option D in accordance with Section 7.5(b), shall be entitled to a minimum lump sum equal to the Lump Sum Value of the Frozen or Dynamic Grandfather Benefit, as applicable, determined as the greater of (a) the product of (1), (2), and (3) and (b) the product of (1) and (4), as follows:

1.    the Participant's Frozen Grandfather Benefit or Dynamic Grandfather Benefit, as applicable, as of his Benefit Commencement Date times

2.    100%, minus 1/2% for each full month, if any, by which the Participant's Benefit Commencement Date precedes his Normal Retirement Date, to a maximum of 120 full months, times

3.    a factor which represents the present value of an immediate annuity payable for life and commencing at the Participant's Benefit Commencement Date if he is then age 55 or older, or the present value of a deferred annuity payable for life and commencing at the Participant's age 55 if he is under age 55 at Benefit Commencement Date, such present value determined in accordance with Section C of Appendix A.

77

SASMF 00284

4.    a factor which represents the present value of an annuity payable for life and commencing at the Participant's Normal Retirement Date (or at Benefit Commencement Date if later), such present value determined in accordance with Section C of Appendix A.

SECTION D:    <u>Annuity Options at Benefit Commencement Dates at or after age 55</u>

1.    Upon a Benefit Commencement Date which occurs after the Participant attains age 55, a Participant who has a Frozen or Dynamic Grandfather Benefit and who elects Option A [Life Annuity], Option B [Joint Annuity], Option C [Years Certain Annuity], or who receives Option A or Option B under the Normal form of benefit for single and married employees, respectively, shall be entitled to a minimum monthly benefit equal to the product of (i), (ii) and (iii), as follows:

(i)    the Participant's Frozen Grandfather Benefit, or Dynamic Grandfather Benefit, as applicable, as of his Benefit Commencement Date, as applicable, times

(ii)    100%, minus 1/2% for each full month, if any, by which the Participant's Benefit Commencement Date precedes his Normal Retirement Date, to a maximum of 120 full months, times

(iii)    the applicable reduction factor, if any, determined in accordance with Article VII for the applicable optional form of benefit.

2.    Upon a Benefit Commencement Date which occurs after the Participant attains age 55, a Participant who has a Frozen or Dynamic Grandfather Benefit, as applicable, and who elects Option E [Increasing Annuity] in accordance with the requirements of Article VII shall be entitled to an initial minimum monthly benefit equal to item D1(i) times item D1(ii), times D2(i), times 12, divided by D2(ii), as follows:

(i)    a factor which represents the present value of an immediate annuity payable for life, such present value determined in accordance with Section B of Appendix A

(ii)    a factor determined in accordance with Section A of Appendix A based on the Participant's age at his Benefit Commencement Date.

78

SASMF 00285