UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JONATHAN X. FLAGG and JACQUELINE ALVAREZ, | : |
| | : |
| Plaintiffs, | : |
| | : |
| - *against* - | : |
| | : |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP PENSION PLAN, | : |
| | : |
| Defendant. | : |

07 Civ. 7392 (PKC) (HBP)

REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANT'S MOTION
TO DISMISS, IN PART, THE FIRST AMENDED COMPLAINT

Samuel Kadet
Henry P. Wasserstein
James W. Brown
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000

*Attorneys for Defendant Skadden, Arps,
  Slate, Meagher & Flom LLP Pension Plan*

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      IGNORANCE OF THE LAW, OR DELAY IN SPEAKING
        WITH A LAWYER TO LEARN THE LAW, WILL NOT
        SAVE AN OTHERWISE TIME-BARRED CLAIM  . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     PLAINTIFFS CANNOT HAVE IT BOTH WAYS: EITHER
        THE REPUDIATION WAS CLEAR OR IT WAS NOT CLEAR . . . . . . . . . . . . . . . . . 5

III.    PLAINTIFFS' FAILURE TO EXHAUST ADMINISTRATIVE
        REMEDIES ALSO DISTINGUISHES THEM FROM THE
        AUTHORITIES UPON WHICH THEY RELY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.     PLAINTIFFS' HYPERBOLIC EFFORT TO DISCREDIT THE ON-POINT
        LAURENZANO CASE HIGHLIGHTS THEIR DESPERATION . . . . . . . . . . . . . . . . . 7

V.      PLAINTIFFS' FLAWED ONGOING OMISSION ALLEGATIONS
        DO NOT SATISFY THEIR HEAVY BURDEN OF PROOF TO
        INVOKE EQUITABLE TOLLING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

Abbas v. Dixon, 480 F.3d 636 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

Barnett v. International Business Machines Corp., 885 F. Supp. 581 (S.D.N.Y. 1995) . . . . . . 5-6

Board of Regents of University of State of New York v. Tomanio,
        446 U.S. 478 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 9

Colon v. Potter, No. 01-6246, 2002 WL 31558049 (2d Cir. Nov. 19, 2002) . . . . . . . . . . . . . . . 9

Corcoran v. New York Power Authority, 202 F.3d 530 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . 4

Davenport v. Harry N. Abrams, Inc., 249 F.3d 130 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 5-6

DeZaio v. Port Authority of N.Y. and N.J., 205 F.3d 62 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . 3

Esden v. Bank of Boston, 182 F.R.D.432 (D.Vt. 1998),
        rev'd, 229 F.3d 154 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Fallin v. Commonwealth Industries, Inc. Cash Balance Plan,
        No. 3:07CV-196-H, 2007 WL 3401833 (W.D.Ky. Nov. 9, 2007) . . . . . . . . . . . . . . . . . . 8

Guilbert v. Gardner, 480 F.3d 140 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Kiefer v. Ceridian Corp., 976 F.Supp. 829 (D. Minn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Kronisch v. United States, 150 F.3d 112 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

Laurenzano v. Blue Cross and Blue Shield of Mass., 134 F.Supp.2d 189 (D. Mass. 2001) . . . 7-8

McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund,
        153 F.Supp.2d 268 (S.D.N.Y. 2001),
        rev'd in part, vacated in part, aff'd in part,
        320 F.3d 151 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Miele v. Pension Plan of N.Y.S. Teamsters, 72 F.Supp.2d 88 (E.D.N.Y. 1999) . . . . . . . . . . . 6-7

Miles v. N.Y.S. Teamsters Conf. Pension & Retirement Fund, 698 F.2d 593 (2d Cir. 1983) . 6-7

<u>Miller v. Fortis Benefits Insurance Co.</u>, 475 F.3d 516 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 4

<u>Novella v. Westchester County N.Y. Carpenters' Pension Fund</u>,
     443 F.Supp.2d 540 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

<u>Ormiston v. Nelson</u>, 117 F.3d 69 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Syed v. Hercules Inc.</u>, 214 F.3d 155 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Thompson v. Metropolitan Life Insurance Co.</u>, 149 F.Supp.2d 38 (S.D.N.Y. 2001) . . . . . . . . . 4

<u>Union Pacific R.R. v. Beckham</u>, 138 F.3d 325 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Wright v. Heyne</u>, 349 F.3d 321 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS, IN PART, THE FIRST AMENDED COMPLAINT

Much of Plaintiffs' answering brief is devoted to: (i) irrelevant discussions of the operation of the whipsaw rule; and (ii) circular, academic musings – such as whether the "discovery rule [is] an exception to the injury occurrence rule" or the "injury occurrence rule [is] a particular instance of the discovery rule."  (E.g., Pl. Mem. at 26 n.23, 1-2, 17 n.14).

Stripped of these diversions, Plaintiffs' answering papers provide a punch-list which reinforces, rather than avoids, the conclusion that Defendant's motion should be granted:

☐ Defendant demonstrated that Plaintiff Alvarez's claims were subject to a six year statute of limitations.  (Def. Mem. at 16).

☑ In response, Plaintiffs agree that is the appropriate period.  (Pl. Mem. at 3 n.4).

☐ Defendant showed that actual knowledge that Alvarez had a legal claim was not necessary for her claims to have accrued for statute of limitations purposes – instead, it is enough if Alvarez had available to her sufficient facts such that she reasonably should have known that the Plan repudiated any obligation to pay her more.  (Def. Mem. at 16).

☑ Plaintiffs concede that is the standard, and agree that dismissal is required where a Plaintiff reasonably should have known of such repudiation.  As Plaintiffs themselves starkly admit: "No matter how sympathetic the plaintiff, or how subjectively unaware to his injury he may have been, the discovery rule says 'too bad': ... a participant ... has to exercise reasonable diligence...."  (Pl. Mem. at 6).

☐ Defendant asserted that when it made the lump sum distribution to Alvarez in 1998, it clearly repudiated any obligation to pay her more.  (Def. Mem. at 5, 16-17).

☑ Plaintiffs confirm that to be true, going so far as to quote the letter which accompanied the payment, in which the Plan told Alvarez that "the enclosed check [i]s full settlement of your rights under the Pension Plan."  (Pl. Mem. at 11).

☐ Defendant showed that the lump sum distribution to Alvarez in 1998 was equal to her then-current account balance, which further revealed to Alvarez the fact that no enhancement was made to her account balance upon distribution – which Plaintiffs allege was the very requirement of the whipsaw.  (Def. Mem. at 4-5).

☑ Plaintiffs concede that to be true, and explicitly assert that Alvarez "diligently confirmed her award," finding that "the check she received equaled her last account statement."  (Pl. Mem. at 24, 19).

1

☐ Defendant showed that Plaintiff Alvarez therefore reasonably possessed all of the facts underlying her claim no later than 1998, noting that she did not allege <u>any</u> facts between when she received her distribution in 1998 and when she filed her claim in 2007. (Def. Mem. at 6, 18-19).

☑ In response, Plaintiffs confirm that the only thing that changed in the intervening nine years is that Alvarez spoke with an attorney who convinced her she had an ERISA claim. (Pl. Mem. at 16).

Thus, the central remaining question on this motion is whether ignorance of the <u>law</u> – as opposed to the <u>facts</u> – will save an otherwise time-barred claim. Clearly, it will not.

I. IGNORANCE OF THE LAW, OR DELAY IN SPEAKING WITH A LAWYER TO <u>LEARN THE LAW, WILL NOT SAVE AN OTHERWISE TIME-BARRED CLAIM.</u>

In response to the observation that Plaintiffs alleged no facts between when Alvarez received her allegedly "incorrect" lump sum distribution in 1998 and the time she filed her claim in 2007, Plaintiffs confirm that the sole difference is that Alvarez spoke with an attorney who convinced her she had an ERISA claim:

[The Complaint] says Plaintiffs know this now, <u>aided by counsel</u>, not that they knew this then.

(Pl. Mem. at 16 (emphasis added).

However, a Plaintiff in Alvarez's shoes cannot delay the running of the statute of limitations merely because she supposedly had not spoken with an attorney until 2007:

Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims.... As the Supreme Court [has] explained...:

Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system.... The process of discovery and trial which results in the finding of ultimate facts for or against the plaintiff by the judge or jury is obviously more reliable if the witness or testimony in question is relatively fresh. Thus in the judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious.

. . . .

2

> If the statute were tolled until an attorney informs the plaintiff that he or she has an
> ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before
> consulting an attorney.  This would nullify the ... limitation period....

Wright v. Heyne, 349 F.3d 321, 330-31 (6th Cir. 2003), quoting Board of Regents of Univ. of

State of N.Y. v. Tomanio, 446 U.S. 478, 487-88 (1980)(citations omitted)(emphasis added).[1]

The principle that an ERISA claim is not preserved merely by waiting to speak with an

attorney grows from the controlling rule that ignorance of the law, as opposed to the facts, will

not prevent the running of the statute.  E.g., Ormiston v. Nelson, 117 F.3d 69, 72 n.5 (2d Cir.

1997) ("Mere ignorance of the law is, of course, insufficient to delay the accrual of the statute of

limitations.").  Even where the body of law is so complex that it routinely "trips up laypersons

and lawyers alike," ignorance of the law will not delay the running of the statute:

> [I]gnorance of the law excuses no one; not because courts assume everyone
> knows the law, but because this excuse is one all will plead and no one can refute.

DeZaio v. Port Auth. of N.Y. and N.J., 205 F.3d 62, 64 (2d Cir. 2000) (affirming dismissal).

As the very cases upon which Plaintiffs rely make clear, the basic facts of a claim are all

that is required to commence the running of the statute.  It is not necessary that the plaintiff

know the controlling law, or even that the law provides a cognizable claim:

> Discovery of the "critical facts" of injury and causation is not an exacting requirement,
> but requires only knowledge of, or knowledge that could lead to, the basic facts of the
> injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the
> person or entity that inflicted it.... [A] plaintiff need not know each and every relevant
> fact of his injury or even that the injury implicates a cognizable legal claim.  Rather, a
> claim will accrue when the plaintiff knows, or should know, enough of the critical facts

---

[1]    In trying to concoct a "policy" argument that "very short limitations periods" should not
be enforced, Plaintiffs cite without any analysis the Third Circuit's decision in Syed, apparently
overlooking that in that case the Court of Appeals affirmed the dismissal of an ERISA claim
barred by a one-year statute of limitations, exactly because the Court "cannot say that [even a
one year limitations period] is inconsistent with the policy of ERISA."  Compare Syed v.
Hercules Inc., 214 F.3d 155, 161 (3d Cir. 2000), with Pl. Mem. at 6-7.  And, of course, this case
involves New York's six-year statute of limitations, far more accommodating than Delaware's
one year statute that was held in Syed to not conflict with the policies of ERISA.  Id.

of injury and causation to protect himself by seeking legal advice.

Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998) (affirming dismissal of time-barred

claims) (cited in Pl. Mem. at 16).[2]

   Here, it is conceded that Plaintiff Alvarez knew the critical facts of her claim no later

than 1998, when she "diligently confirmed" that: (i) her lump sum payment equaled her account

balance, as disclosed on her last statement; (ii) there was not, and would not be, any additional

enhancement to that amount; and (iii) the Plan informed her that this distribution represented a

full settlement of all rights under the Plan – clearly repudiating any obligation to pay more.  (Pl.

Mem. at 24, 19).

   The only aspect of Alvarez's claim which could have been unknown, until she spoke with

an attorney, was the legal contention that ERISA required a whipsaw calculation which would

guarantee such an enhancement.  But, as shown above, ignorance of the law is no excuse.

> [R]epudiation by underpayment should ordinarily be made known to the beneficiary
> when he first receives his miscalculated benefit award.  At that point, the beneficiary
> should be aware that he has been underpaid and that his right to a greater award has been
> repudiated.  The beneficiary should exercise reasonable diligence to ensure the accuracy
> of his award.

Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 521-22 (3d Cir. 2007) (cited in Pl. Mem. at 18).[3]

---

[2]   Accord Corcoran v. New York Power Authority, 202 F.3d 530, 544 (2d Cir. 1999) ("a
plaintiff need not know each and every relevant fact of his injury or even that the injury
implicates a cognizable legal claim") (affirming dismissal); Thompson v. Metropolitan Life Ins.
Co., 149 F.Supp.2d 38, 48 (S.D.N.Y. 2001) ("it is not necessary for a plaintiff to understand
every permutation of his or her injury, rather the plaintiff simply needs to have a 'hint' or
'suspicion' of the injury and its cause to be put on inquiry notice"); (each cited in Pl. Mem. at
16-17).

[3]   Plaintiffs concede that the Miller Court correctly held that Miller should have performed
mathematical calculations to see that his benefits were underpaid.  (Pl. Mem. at 18).  The present
case is even more compelling, because no math was required of Alvarez: Alvarez claims that the
law required her to be paid something more than her account balance, but her distribution
equaled her most recent account statement.  Clearly, that "something" was missing.

As Plaintiffs' themselves forcefully argue:

No matter how sympathetic the plaintiff, or how subjectively unaware to his injury he may have been, the discovery rule says "too bad": ... a participant ... has to exercise reasonable diligence....

(Pl. Mem. at 6).  Accordingly, all of Alvarez's claims are time-barred.

## II.    PLAINTIFFS CANNOT HAVE IT BOTH WAYS: EITHER THE REPUDIATION WAS CLEAR OR IT WAS NOT CLEAR.

Plaintiffs first argue that their claims have never accrued, because Plaintiffs supposedly were unaware that the Plan repudiated any obligation to pay anything beyond Plaintiffs' account balances.  Yet, in the very next breath, Plaintiffs allege that they never sought administrative relief because they knew that the Plan administrators would have remained steadfast in repudiating the "well established" legal duty to pay Plaintiffs an amount beyond their current account balances.[4]  Indeed, Plaintiffs complain that the conduct of "the Plan and those acting on its behalf" was so overtly egregious that it "evidenc[ed] their belief that the law does not apply to them."  (1AC ¶ 26).  The repudiation was so clear, and the evidence was so strong, that supposedly would have been "futile" to even seek administrative review.  (1AC ¶ 21).

Stated simply, Plaintiffs cannot have it both ways.  In Davenport, the Second Circuit set forth the test for excusing a Plaintiff from seeking administrative remedies due to claims of "futility."  To meet this burden, a plaintiff must have received an unequivocal denial of benefits "such that it is clear that seeking further administrative review of the decision would be futile."  Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001).  In making this pronouncement, the Second Circuit quoted with approval this Court's decision in Barnett, which held that an ERISA claim "accrues at the time at which it became futile to apply for benefits,

---

[4]    See 1AC ¶ 21 ("Had Plaintiffs submitted a claim for the recalculation of their lump sums, Defendant would simply have responded that Plaintiffs had already received an amount equal to their account balance and that is all that they are entitled to receive....").

because ... at that time there was a <u>de facto</u> denial of [the] claim." <u>Barnett v. International Bus.</u>

<u>Machs. Corp.</u>, 885 F. Supp. 581, 591 (S.D.N.Y. 1995); <u>accord</u> <u>Union Pac. R.R. v. Beckham</u>, 138

F.3d 325, 332 (8th Cir. 1998) (claim accrues at the point at which exhaustion of remedies is

claimed to have been futile).[5]

     Defendant cited and quoted each of the <u>Davenport</u>, <u>Barnett</u>, and <u>Union Pacific</u> cases in

the moving brief (Def. Mem. at 17), but Plaintiffs were unable to muster a single word in their

answering papers to discredit, distinguish or even acknowledge the existence of any of these

cases (Pl. Mem., <u>passim</u>). That silence speaks volumes for the paucity of support Plaintiffs can

muster to reconcile their contradictory arguments, or to stave off dismissal.

III.   PLAINTIFFS' FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES ALSO
      <u>DISTINGUISHES THEM FROM THE AUTHORITIES UPON WHICH THEY RELY.</u>

     Plaintiffs repeatedly proffer as claimed support for their position a string of cases,

including <u>Novella</u>, <u>Miele</u>, <u>Esden</u>, <u>Kiefer</u>, and <u>Miles</u>, in which claims did not accrue until after the

respective plaintiffs had exhausted their administrative remedies. The obvious difference is that

in every one of those cases the plaintiffs acknowledged that administrative review was necessary

(or at least appropriate) due to the incomplete state of the record, and sought administrative relief

before filing a federal action.[6] Conversely, in this case Plaintiffs maintain that resort to adminis

---

    [5]   Plaintiffs try to avoid the fatal effect on their accrual arguments of their allegations of
futility by arguing that exhaustion also would not have been necessary because their claims are
supposedly statutory, not Plan-based. (Pl. Mem. at 15). Even if that were factually true and
legally relevant, Plaintiffs cannot simply wish away their factual allegations that review would
have been futile because the Plan had in 1998 "evidenced" the belief that it was above the law.
(Pl. Mem. ¶¶ 21, 26).

    [6]   <u>See</u> <u>Novella v. Westchester Cty. N.Y. Carpenters' Pens. Fund</u>, 443 F.Supp.2d 540, 545
(S.D.N.Y. 2006) (claim accrued when plaintiff questioned plan administrators about his benefit
and plan administrators confirmed calculation); <u>Miele v. Pension Plan of N.Y.S. Teamsters</u>, 72
F.Supp.2d 88, 99 (E.D.N.Y. 1999) ("undisputed" that plaintiff repeatedly questioned the amount
of his benefits to plan administrators); <u>Esden v. Bank of Boston</u>, 182 F.R.D.432, 437 (D.Vt.

                                        (continued...)

trative relief was unnecessary and would have been inappropriate because the repudiation was clear and "evidenced" Defendant's belief it was above the law. (1AC ¶ 26).[7] Thus, these cases provide no support for Plaintiffs' arguments.[8]

## IV.   PLAINTIFFS' HYPERBOLIC EFFORT TO DISCREDIT THE ON-POINT LAURENZANO CASE HIGHLIGHTS THEIR DESPERATION.

Protesting too greatly, Plaintiffs argue in one bold, unsupported sentence that <u>Laurenzano</u> was "wrongly decided ... in <u>dicta</u> without the benefit of briefing." (Pl. Mem. at 19). Of course, Plaintiffs fear <u>Laurenzano</u> because it is truly on point:

- the pensioner elected to receive a lump sum distribution upon termination;

- the payout allegedly violated ERISA § 502(a) because plaintiffs were paid their current account balances, rather than the present value of the actuarial equivalent of their normal retirement benefit, enhanced by projected future credits to which they were entitled;

- the claims were subject to a six year limitations period borrowed from state contract law;

- the time of accrual of such claims was determined pursuant to federal common law; and

- accrual was to be measured by when the plaintiff knew, or reasonably should have known, about the injury that is the basis for his claim;

each <u>exactly</u> as Plaintiffs assert herein. <u>Compare Laurenzano v. Blue Cross and Blue Shield of</u>

---

[6]   (...continued)
1998) (plaintiff filed administrative claim prior to initiating action), <u>rev'd</u>, 229 F.3d 154, 161-62 (2d Cir. 2000) (plaintiff exhausted administrative remedies); <u>Kiefer v. Ceridian Corp.</u>, 976 F.Supp. 829, 842-43 (D.Minn. 1997) (plaintiff made administrative inquiries prior to filing action); <u>Miles v. N.Y.S. Team. Conf. Pension & Ret. Fund</u>, 698 F.2d 593, 598 (2d Cir. 1983) (administrative denial provided first clear repudiation); (each cited in Pl. Mem.).

[7]   Similarly, Plaintiffs chastise Defendant for not citing to <u>Guilbert</u>. (Pl. Mem. at 4-5). But the <u>Guilbert</u> Court found that there was no pension plan subject to ERISA, and therefore held that there was no need to determine when an ERISA claim accrued. <u>Guilbert v. Gardner</u>, 480 F.3d 140, 149 (2d Cir. 2007). Accordingly, the case adds nothing to the current analysis.

[8]   Plaintiffs also rely upon <u>McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund</u>, 153 F.Supp.2d 268 (S.D.N.Y. 2001) (Pl. Mem. at 3 n.4), without informing the Court that the case was reversed in part and vacated in part, as reported at 320 F.3d 151 (2d Cir. 2003).

Mass., 134 F. Supp.2d 189, 192-94, 206-09 (D. Mass. 2001), with Pl. Mem. at 1-4).

Plaintiffs' unsupported assertion that accrual was determined "without briefing" is easily dismissed by noting that the Laurenzano Court specifically summarized the parties' arguments, and even noted particular cases cited by the parties. Laurenzano, 134 F.Supp.2d at 207-10.

Plaintiffs' assertion that the Laurenzano Court decided the accrual issue in dicta is easily dismissed by noting: (i) that accrual was the central issue necessary to determining the limitations defense; and (ii) the number of times that the Court carefully used the word "hold":

> This Court holds that each class member's cause of action accrued, at the earliest, when he received his lump sum distribution....  The lump sum distribution represents the actual injury to each class member and marks the time after which delay in seeking redress would be unreasonable....  Thus, each class member's cause of action accrued when he received his lump sum distribution unless he sought internal remedies.... [T]his Court holds that for those class members who sought internal remedies, their causes of action did not accrue until they exhausted their internal remedies.

Laurenzano, 134 F. Supp.2d at 210-11.

Finally, Plaintiffs' assertion that Laurenzano was "wrongly decided" is nothing more than Plaintiffs' acknowledgment that if this well-considered, well-supported and on-point decision is followed, then Defendants' motion should be granted.  Laurenzano was not wrongly decided, and comports with other decisions dismissing time-barred ERISA claims that accrue upon a lump sum distribution.  See Fallin v. Commonwealth Indus. Cash Balance Plan, No. 3:07CV-196-H, 2007 WL 3401833, at *3 (W.D.Ky. Nov. 9, 2007) ("[W]hen they received their lump-sum distributions ... [a]ny expectation of a sum greater than what was received was 'repudiated' at that time, and could not reasonably have been maintained beyond that point.").

V.     PLAINTIFFS' FLAWED ONGOING OMISSION ALLEGATIONS DO NOT SATISFY THEIR HEAVY BURDEN OF PROOF TO INVOKE EQUITABLE TOLLING.

Plaintiffs ask that the statute be tolled for several years until Alvarez spoke with an attorney.  Plaintiffs have apparently overlooked the holdings of the very cases upon which they

rely, which caution <u>against</u> such "promiscuous application of tolling doctrines":

> Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application.  They protect important social interests in certainty, accuracy, and repose....  We should not trivialize the statute of limitations by promiscuous application of tolling doctrines.

<u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446, 452-53 (7th Cir. 1990) (affirming dismissal of time-barred claim and refusing to apply equitable tolling) (cited in Pl. Mem. at 17, 22).

> To be sure, the Second Circuit has cautioned that equitable tolling:

> is only appropriate in rare and exceptional circumstances ... in which a party is prevented in some extraordinary way from exercising his rights.

<u>Colon v. Potter</u>, No. 01-6246, 2002 WL 31558049, *2-*3 (2d Cir. Nov. 19, 2002).  For that reason, a plaintiff seeking to invoke equitable tolling or equitable estoppel bears a heavy burden.

<u>Colon</u>, 2002 WL 31558049, at *3; <u>Abbas v. Dixon</u>, 480 F.3d 636, 642 (2d Cir. 2007).

Plaintiffs' sole effort to meet that heavy burden is to assert that Defendants failed to disclose the guaranteed minimum interest rate at which annual interest credits would accrue.  Plaintiffs first argue that Defendant "has never once disclosed to participants <u>anything</u> about this Plan feature."  (Pl. Mem. at 12).  Contradicting that absolute position, Plaintiffs next concede that every SPD issued prior to Alvarez's lump sum distribution disclosed the guarantee, but Plaintiffs complain that the Plan "bur[ied] the existence of the guarantee at the end of a long, densely worded footnote...."  (Pl. Mem. at 13).[9]  And, finally, contradicting even that mediated position, Plaintiffs' own papers demonstrate that the SPDs also directed Plan participants to the more formal Plan document for further disclosures about the guarantee (Pl. Mem. at 13), <u>which</u>

---

[9]    In the Complaint, Plaintiffs alleged that the footnote disclosure was removed after the 1992 SPD, and therefore was not in the 1997 SPD.  (1AC n.2, at 6).  Defendants proved that to be false in the moving memorandum (Def. Mem. at 11-12), prompting Plaintiffs to now concede that the same footnote was indeed in the 1997 SPD.  (Pl. Mem. at 13).  This is critical because Plaintiffs do not dispute that the 1997 SPD was the last one published before Alvarez elected her lump sum distribution.  (Def. Mem. at 12).

<u>Defendants have demonstrated fully and accurately described the minimum interest guarantee</u>

(Def. Mem. at 9-11).  When Plaintiffs' ever-contradictory arguments are compared to the

disclosure documents already in the record, it is clear that Plaintiffs have not carried their burden

to prove an omission or misstatement preventing Alvarez from asserting her claim earlier.[10]

      Additionally, Plaintiffs must also prove that Alvarez acted diligently once the claimed

facts giving rise to the equitable tolling ceased:

> The plaintiff bears the burden of showing that the action was brought within a reasonable
> period of time after the facts giving rise to the equitable tolling or equitable estoppel
> claim have ceased to be operational.

<u>Abbas</u>, 480 F.3d at 642.  However, Plaintiffs do not say a word to satisfy this branch of their

burden – because no impediment was ever allegedly removed.  Plaintiffs do not allege that

anything changed between when she received her lump sum distribution in 1998 and when she

filed her claim in 2007 – no alleged omissions or misstatements were ever claimed to be "cured."

Accordingly, Plaintiffs' request that the statute of limitations be tolled must be denied.[11]

---

[10]  Plaintiffs argue that Alvarez's lump sum distribution was not "inherently" suspect,
because plans which have interest credit rates lower than the statutory discount rate will yield
lump sum distributions equal to the account balance (while plans with interest rates higher than
the discount rate will always yield lump sum distributions greater than the account balance).  (Pl.
Mem. at 19, 12).  Given that the Plan's interest credit rate guarantee <u>was</u> disclosed (<u>supra</u>), and
Plaintiffs' main argument is that such rate was high enough to always yield a lump sum
distribution greater than the account balance (Pl. Mem. at 9 n.10, 1-2, 10), anyone who knew the
law possessed all the information necessary to state the claim Plaintiff has tried to state.  Thus, if
Plaintiffs' own allegations and arguments are to be believed, the lump sum distribution equal to
Alvarez's account balance <u>was</u> inherently suspect – and the claim accrued at that moment
because ignorance of the law is no excuse.  (<u>Supra</u> at 2-5).

[11]  Plaintiffs make the last-gasp argument that, if the Court is unable to agree that Plaintiffs
have exercised sufficient diligence, then Plaintiff's request discovery.  (Pl. Mem. at 22).  The
facts of Plaintiffs' supposed diligence are within Plaintiffs' sole province, requiring no discovery
– as is clear from Plaintiffs' failure to identify a single subject of any such discovery.

<u>CONCLUSION</u>

For all the foregoing reasons, Defendant's motion should be granted in all respects.


Dated: New York, New York
       January 4, 2008

                                    /s/ Samuel Kadet
                                  SKADDEN, ARPS, SLATE,
                                    MEAGHER & FLOM LLP
                                  Four Times Square
                                  New York, New York 10036-6522
                                  Telephone: (212) 735-3000

                                  *Attorneys for Defendant Skadden, Arps,*
                                    *Slate, Meagher & Flom LLP Pension Plan*

11