Eli Gottesdiener (EG 0111)
GOTTESDIENER LAW FIRM, PLLC
498 7th Street
Brooklyn, NY 11215
Telephone: (718) 788-1500
Facsimile:  (718) 788-1650

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JONATHAN X. FLAGG and                    :
                                          :
JACQUELINE ALVAREZ,                      :
                                          :
On behalf of themselves and on           :
behalf of all others similarly situated, :
                                          : 07 Civ. 7392 (PKC) (HBP)
                          Plaintiffs,    :
                                          :
            - against -                  :
                                          :
SKADDEN, ARPS, SLATE, MEAGHER            :
& FLOM PENSION PLAN,                     :
                                          :
                          Defendant.     :
--------------------------------------------------------x

## DECLARATION OF ELI GOTTESDIENER

I, Eli Gottesdiener, declare under penalty of perjury pursuant to 18 U.S.C. § 1746:

1.      I am counsel for the Plaintiffs in this action brought against Defendant Skadden, Arps, Slate, Meagher, & Flom LLP Pension Plan (sometimes referred to herein as "Skadden" or the "Plan"), for failure to comply with ERISA's standards for calculating pre-retirement age lump sums, as recognized by the IRS in IRS Notice 96-8 ("Cash Balance Pension Plans"), 1996-1 C.B. 359, 1996 WL 17901 (Feb. 5, 1996), and the Second Circuit in *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000).  Plaintiffs allege that the Plan failed to comply with the *Esden* standards because by its terms and/or in operation the Plan did not project participants' notional "account balances" to normal

retirement age at the rate required to ensure their lump sums were the actuarial equivalent of their ERISA-protected Plan benefit and to ensure they were not being caused to forfeit a portion of their legally nonforfeitable benefit simply because they elected to receive it prior to age 65 in the form of a lump sum.

2.  I submit this declaration in support of Plaintiffs' opposition to Defendant's motion to partially dismiss this action – more specifically, to dismiss Plaintiff Alvarez's claim – on the grounds of statute of limitations, which by its Order signed May 15, 2008 and docketed May 16, 2008 (Doc. 23), the Court has converted to a motion for partial summary judgment pursuant to Fed. R. Civ. P. 12(d).[1]

3.  The Court's Order explains that it is the Court's intent not to exclude from consideration Ex. 3 to undersigned counsel's December 10, 2007 declaration, filed in support of Plaintiffs' opposition to Defendant's motion. Ex. 3 is a copy of a letter Ms. Alvarez received from the Plan, dated May 1, 1998.

4.  Plaintiffs submitted Ex. 3 to show that the Plan's fiduciaries (a committee of lawyers) misrepresented to Ms. Alvarez that $9,952.40 "represented the full value of [her] vested interest (100%) in the Plan," when in fact stated a lump sum "the full value of [Ms. Alvarez's] vested interest (100%) in the Plan" was an amount considerably more than $9,952.40.

5.  The Court's Order provides: "Either side may respond with any evidence which Rule 56 permits by May 28, 2008. Any reply is due June 6, 2008." This is in accordance with Rule 12(d). Rule 12(d) provides when a motion to dismiss or a motion for judgment on the pleadings is converted to a motion for summary judgment the parties "must be given a reasonable opportunity to present **all** the material that is pertinent to the

---

[1] Rule 12(c) was renumbered as Rule 12(d) in 2007.

motion." Fed. R. Civ. P. 12(d) (emphasis added).

6.     Such material as is available to Plaintiffs is attached hereto and discussed below. However, Defendant has declined in discovery to produce the remaining material pertinent to this motion. This is detailed below, in the Rule 56(f) portion of this declaration.

7.     In addition to affirmatively misrepresenting to Ms. Alvarez on May 1, 1998 that $9,952.40 was all she was entitled to receive under the Plan, the Plan made other untrue statements to her in advance of paying her only a portion of her benefit on May 1.

8.     Ex. 1 (Bates labeled SASMF 00772-00776) is a letter dated February 18, 1998, attached hereto as Ex. 1, which was intended to disclose to Ms. Alvarez her options and other information about her benefit given that she had terminated employment with Skadden in late 1997. This letter is false and misleading in several ways. Unless the Court assumes that Ms. Alvarez should have known, on her own, that the way in which Skadden was representing to her it calculated benefits was not lawful, she could not have possibly had any reason to suspect that the lump sum she was being shown was less than what the Plan owed her.

9.     *First,* on page 2, the Plan misrepresents to Ms. Alvarez that her "<u>Account Balance</u>" was her benefit. Ex. 1, p.2 (emphasis in the original). The truth was and is that her benefit was *derived* from her notional "account" balance but could never be her

3

account balance as such.² (The SPD makes the same misrepresentations, as discussed in the Plaintiffs' opposition, and the SPDs themselves show).

10.  *Second,* Skadden concealed this "your account balance is your benefit" misrepresentation by violating 26 C.F.R. ("Treas. Reg.") § 1.401(a)-11(c)(i), which required Skadden to let Ms. Alvarez know that it wasn't showing her the full story, namely, that it wasn't showing that she had the absolute right to be shown, her basic, age 65 annuity benefit. The letter needed to say something like: "You may request the calculation of the monthly dollar amount of your QJSA [Qualified Joint and Survivor Annuity] benefit payable at normal retirement age." This matters because the lump sum she should have received was the present value of that age 65 annuity, not, as Skadden told her, her "Account Balance."³ Since the notice was insufficient, it should be treated as if the required notice never took place.

11.  While it would have taken a pension consultant to figure it out, conceivably if Ms. Alvarez had been shown her age 65 annuity she could have discovered that the discounted, present value of her age 65 annuity, calculated using the

---

² As the IRS confirmed for all cash balance plan sponsors in 1996 (in Notice 96-8), the participant's "accrued benefit" under a cash balance plan is never the "account balance," but rather the annuity commencing at age 65 to which the participant is entitled under the plan. If the plan gave the participant a choice between receive her benefit in the form of an annuity (the default option) or as a lump sum, the lump sum had to be calculated as to be the actuarial equivalent of the annuity. ERISA § 204(c), 29 U.S.C. § 1054(c). There is no dispute here that that amount was in excess of the amount of Ms. Alvarez's notional "account," which is what she received instead of her lawfully calculated benefit.

³ Skadden did show Ms. Alvarez two annuity options but not her annuity at age 65 – the letter shows her those two options at age 35 – that is, the two annuity options (Options 2 and 6) shown on page represented Ms. Alvarez's monthly annuity payments if she elected to start her annuity *immediately,* on April 1, 1998 when she was age 35. They did not show nor was Ms. Alvarez told she had the right to be shown her monthly benefit if she waited until age 65 to receive it.

4

prescribed "417(e)" rate,[4] was worth a lot more than the $9,887.45 lump sum option she was being shown.[5]  Yet that too would have required her not just to be a math whiz but to know pension law so well that she would know that the Plan could not, in the case of a lump sum payment, select just any actuarial equivalency factors it liked – she would have had to have known that the Plan, to be lawful, *had* to use the 417(e) rate, and so *couldn't* pay her merely her "Account Balance" as her lump sum.

12.     *Third,* Skadden actually does falsely assert that it can calculate actuarial equivalence any way it likes when it tells Ms. Alvarez on page 2:  "If you elect to defer receipt of your benefit, your Account Balance will continue to grow with Interest Credits *until the date your benefit commences*" (second emphasis added), meaning, that once she takes her "money" out, that's it, no more guaranteed (or effectively) guaranteed 8% future Interest Credits.  But that implies that Skadden is free to discount her right to receive 8% Interest Credits until age 65 *at* **8%**, regardless of what the 417(e) interest is.  That is untrue and has nothing to do with cash balance plans – *all* defined benefit plans have to follow 417(e).

13.     The statement is misleading in the same way from a different perspective: while it is true that the notional account would increase by 8% per year, to protect participants, 417(e) requires for payment of benefits in forms like a lump sum that are subject to its strictures, that the discount cannot be at a rate higher than the applicable rate.  If Skadden had disclosed the "discount" for payment prior to age 65 was actually at (or should have been at, had the Plan followed the law) the much lower 417(e) rate, Ms.

---

[4] ERISA § 205(g), 29 U.S.C. § 1053(g); 26 U.S.C. (Internal Revenue Code or "IRC") § 417(e).

[5] The $9,887.45 as of April 1, 1998 became, at the Plan's 8% interest rate, $9,952.40 as of May 1, 1998, the date of the Plan's distribution to Ms. Alvarez of (part of) her benefit.

Alvarez could have arguably then seen something was amiss, *i.e.,* that the amount the Plan was showing her as her benefit in the form of a lump sum was an underpayment. Based on what the Plan did and didn't say to her, however, she never stood a chance. Which was, apparently, the whole point, as Skadden saw things.

        14.       The regulations required Skadden to disclose to Ms. Alvarez the financial effect of an election to not receive the QJSA at retirement.  *See* the participant disclosures required by Treas. Reg. § 1.401(a)-11(c)(i)(C).  This Skadden failed to do.  Why it failed to do so is clear:  if the Plan had properly disclosed the financial effect of payment of a lump sum prior to normal retirement, it would have disclosed the mechanics of a whipsaw calculation.  By hiding this, the Plan obtained the advantage (for purposes of passing the required economic non-discrimination tests and for employee relations purposes) of promising to pay the higher benefit at age 65 (*i.e.,* the benefit increased with interest at the 8% rate) while underpaying lump sums by discounting the promised benefit at an illegally high 8% (the very practice that 417(e) was incorporated in the law to prohibit).

        15.       In essence, the Plan made an end run around 417(e), using an interest crediting rate in excess of the 417(e) rate, and now wants to claim Ms. Alvarez should have figured out this illegality although the Plan was representing to her what it was doing was entirely above-board.

        16.       Either way, Ms. Alvarez's claim should be deemed timely.  The Plan either knew what it was doing and that it was wrong and should not be rewarded for treating participants in such shabby fashion.  Or the Plan, though misstating the law, didn't know it and didn't knowingly violate it in which case how can it possibly expect

Ms. Alvarez to have figured all this out when it failed to disclose the information she needed to know to figure out what the Plan couldn't?

17.     Ex. 2 is the Declaration of Ms. Alvarez.  Plaintiffs submit it establishes Ms. Alvarez can prove that she exercised the diligence expected of a plan beneficiary in her relations with the Plan and its fiduciaries but through no fault of her own failed to discover her injury, and/or her fiduciaries' misrepresentations of fact and/or law, within 6 years of the date suit was filed.

18.     Under Rule 56(f), summary judgment is "inappropriate" if the non-moving party shows that "he cannot at the time present facts essential to justify his opposition" because of the lack of an opportunity for discovery.  *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989).  The Second Circuit requires that a party submit an affidavit pursuant to Rule 56(f) explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.  *Concourse Rehab. & Nursing Ctr. Inc. v. Whalen*, 249 F.3d 136, 146 n.3 (2d Cir. 2001).

19.     Based on the entire record herein including but not limited to the February 18, 1998 and May 1, 1998 letters now before the Court, there is ample reason to believe that there are other documents and information that would assist Ms. Alvarez show her claim is timely under any of the three theories asserted in her opposition to the motion to dismiss.

20.     **Claim Accrual.**  *First,* although she denies she has the burden of proof or production on this score, Ms. Alvarez maintains that there is clearly now, or with

7

discovery could be, a genuine issue of material fact as to whether she *should* have discovered she had been injured when, without disclosing it was denying her anything, the Plan paid her an amount equal to her "Account Balance."

21. The evidence strongly suggest that, if given the opportunity to obtain discovery of other statements Skadden made to participants (including but not limited to Ms. Alvarez) during the relevant time like the February 18 and May 1 letters (and the other evidence to which Plaintiffs have previously directed the Court's attention such as the Plan's summary plan descriptions), Plaintiff could create (if she hasn't already) a genuine issue of material fact that she was blamelessly ignorant of her injury.

22. **Equitable Estoppel.**  *Second,* Ms. Alvarez has also attempted to show that even assuming her claim accrued more than 6 years prior to the initiation of this action, it is still timely because the elements of equitable equitable are satisfied here. The elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts.

23. Ms. Alvarez submits that discovery will establish that there is a genuine issue of material fact that Skadden made false representations, concealed material facts, had knowledge of those facts and intended participants like Ms. Alvarez to act (or not act) upon such conduct. The February 18 and May 1 letters (as well as the Plan's SPDs) strongly suggest that to be true.

24. **Equitable Tolling.**  *Third,* Ms. Alvarez argues that the elements of equitable tolling are satisfied here. In order to prevail on an equitable tolling theory, a plaintiff must show that she was not aware of her claim either because the nature of the

8

defendant's conduct was self-concealing or because the defendant affirmatively acted to prevent plaintiff from discovering the conduct. Plaintiff must also show that the concealment prevented their discovery of the claims within the limitations period and that they exercised due diligence in investigating their rights.

25. Again, the February 18 and May 1 letters and the Plan's SPDs indicate that discovery will establish that there is a genuine issue of material fact that plaintiff must show that she was not aware of her claim either because the nature of the defendant's conduct was self-concealing or because the defendant affirmatively acted to prevent plaintiff from discovering the conduct, and that Skadden's concealment prevented her discovery of her claim within the limitations period despite her exercise of diligence.

26. **Discovery to date.** Plaintiffs have served Defendant with two sets of discovery requests. In the first set, served October 29, 2007, Plaintiffs sought documents. Defendant served its objections and responses on November 29, 2007 and produced some documents thereafter. As shown by those objections and responses, *see* Ex. 3, and as set forth in Plaintiffs' January 14, 2008 letter to the Court (Doc. 21) (incorporated here by reference), Defendants refuse to respond to numerous request bearing on the subjects above that would assist Plaintiff show a genuine issue of material fact exists precluding summary judgment.

27. Plaintiffs served a second set of discovery requests on January 10, 2008. In this set of requests, Plaintiffs sought documents, answers to interrogatories and requests for admission. Defendant served its objections and responses on or about February 11, 2008, *see* Ex. 4, again refusing to produce plainly relevant material, refusing

to respond or properly respond to directly pertinent interrogatories, and refusing to respond or properly respond to highly relevant requests for admission.

28.     Pursuant to Rule 56(f), Defendant's motion for summary judgment should be denied. Plaintiff should be permitted the opportunity to conduct discovery and file the motion to compel discussed in Plaintiffs' January 14, 2008 letter to the Court.

I, Eli Gottesdiener, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the foregoing is true and correct.

*/s Eli Gottesdiener*
Eli Gottesdiener