Eli Gottesdiener (EG 0111)
GOTTESDIENER LAW FIRM, PLLC
498 7th Street
Brooklyn, NY 11215
Telephone: (718) 788-1500
Facsimile: (718) 788-1650

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN X. FLAGG and JACQUELINE ALVAREZ, on behalf of themselves and all others similarly situated, Plaintiffs, - against - SKADDEN, ARPS, SLATE, MEAGHER & FLOM PENSION PLAN, Defendant. | 07 Civ. 7392 (PKC) |

**Memorandum In Support of Plaintiffs' Motion**
**That the Court Reconsider its Holding**
**<u>That New York's Accrual Rule Applies to Ms. Alvarez's Federal ERISA Claim</u>**

Plaintiffs respectfully request, pursuant to Local Rule 6.3, that the Court reconsider its June 18, 2008 Order (Doc. 27) holding that "New York's accrual rule" governs when Ms. Alvarez's federal ERISA claim accrued for purposes of the statute of limitations. Order at 6 ("a federal court sitting in New York will apply New York's accrual rule for claims against a fiduciary"); *id.* at 7 ("Under New York's accrual rule, which federal courts apply to ERISA claims against a plan …"); *see also id.* at 5 n.2.

Reconsideration is appropriate where a court has overlooked "controlling decisions," *Shrader* v. *CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), or

where there is a need to "correct a clear error," *Griffin Indus., Inc.* v. *Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (internal citation omitted).

Reconsideration is appropriate here because the Court's use of New York law rather than federal law to determine whether Defendant met its burden of proof as to when Ms. Alvarez's claim accrued for purposes of the statute of limitations overlooked controlling authority and was clearly in error.

It is well-settled that federal common law, not state law, governs the accrual of federal claims, including ERISA claims. *E.g.*, *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) ("In a federal question case, such as *Miles* [*v. New York State Teamsters,* 698 F.2d 593 (2d Cir.1983), an ERISA action], when a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues"); *La Barbera v. R. Rio Trucking*, 03-CV-1508 (SLT) (AKT), 2007 WL 2177063, *3 (E.D.N.Y. July 27, 2007) (ERISA action, applying the choice-of-law rule of *Guilbert* ; "defendants urge this Court to apply New York law, which dictates that contractual claims accrue when the breach of contract occurs, not when the breach is discovered. Plaintiffs, however, argue that federal law, not state law, governs the issue of when these claims accrue and that plaintiffs' claims against defendants 'did not accrue until [plaintiffs] knew or had reason to know of the failure to pay benefit contributions.' Plaintiffs are correct."); *Carollo v. Cement and Concrete Workers Dist. Coun. Pension Plan,* 964 F.Supp. 677, 689 (E.D.N.Y. 1997) (federal not state law determines when ERISA claims accrue); *Barnett v. IBM Corp.*, 885 F. Supp. 581, 591 (S.D.N.Y.1995) (same).

As far as Plaintiffs are aware, no court has held that a state accrual rule applies to an ERISA claim. In any event, the Second Circuit's rule is clear: even though sitting in New York, this Court needed to apply the federal, not the New York, version of the clear repudiation-of-the-claim accrual rule. *Guilbert,* 480 F.3d at 149.[1]

*Guilbert* is controlling not just on the threshold choice-of-law point, but as to the content of the federal standard as well. *Guilbert* explicitly holds that a federal ERISA claim only accrues "when [the plaintiff] discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Guilbert,* 480 F.3d at 149. In *Guilbert* it was precisely because the Second Circuit found the plaintiff's claims arose only under New York law, and not under ERISA (as the plaintiff had argued), that the plaintiff was not entitled to claim the benefit of the discovery-of-the-injury rule. 480 F.3d at 148-49. If the plaintiff had an ERISA claim, a discovery-of-the-injury standard would have applied and his claim may have been timely. *Id.* *Guilbert* relies on *Carey v. IBEW Local 363 Pension Plan,* 201 F.3d 44 (2d Cir. 1999), an ERISA case that refers to the clear repudiation-of-the-claim rule and the discovery-of-the-injury rule interchangeably, equating the two. *Carey* also applied the rule that a federal ERISA claim only accrues "when [t]he plaintiff] discovers, or with reasonable diligence should discover, the injury that gives rise to his claim." 201 F.3d at 48.

---

[1] Plaintiffs appreciate that the Court cited two federal ERISA cases, *Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan,* 902 F.2d 1069 (2d Cir. 1990), and *Miles v. New York State Teamsters,* 698 F.2d 593 (2d Cir.1983), but neither case stands for the proposition asserted, *i.e.,* that "a federal court sitting in New York will apply New York's accrual rule for claims against a fiduciary." Order at 6. The fact that *Larsen* and *Miles*, via *Valle v. Joint Plumbing Indus. Bd.,* 623 F.2d 196 (2d Cir.1980), quote *In re Barabash,* 31 N.Y.2d 76 (1972), does not mean the Court of Appeals borrowed the New York accrual rule (as it does when it comes to the limitations period). Federal courts routinely look to state law in fashioning federal common law. They adapt state law to fit the federal purpose, they do not adopt state law as the rule of the decision.

The Court's Order recognizes that Defendant's motion fails if a discovery-of-the-injury rule applies. Order at 6. Defendant recognized this too and so argued that the applicable standard does not incorporate a discovery-of-the-injury requirement. Although Defendant has a good argument under New York law as the June 18 Order shows, *Guilbert* and *Carey* show Defendant has no argument under federal law. Plaintiffs apologize for failing to make the federal-state distinction sufficiently clear in the briefing: the presentation was deficient to the point that the Court's Order cites neither *Guilbert* nor *Carey*.

The Court cites *Larsen* (*see* note 1), believing that *Larsen*'s discussion of one of the two letters Mrs. Larsen received from the plan in that case, the 1985 letter, confirms that the May 1, 1998 letter Ms. Alvarez received from the Skadden Plan was sufficient (under the New York accrual rule) to trigger the running of the limitations period. In fact, *Larsen* confirms both that the Court erred in applying New York law and that the federal rule incorporates the discovery-of-the-injury rule the New York standard does not.

In this case, the Court found significance in the fact that the Second Circuit in *Larsen* determined the 1985 letter would have been a clear repudiation of Mrs. Larsen's claim to survivor benefits because that letter stated: "All monies have been paid that are payable and there are no further monies due the widow of Mr. Robert P. Larsen." 902 F.2d at 1074. It would be incorrect to conclude that that statement in isolation was a clear repudiation under <u>federal</u> law. It was only so because by 1985 Mrs. Larsen <u>already knew</u> <u>she had a claim</u> and indeed had hired a lawyer to pursue it: the plan's 1985 letter <u>was in response to a letter from Mrs. Larsen's lawyer</u> inquiring into why her benefits

were cut-off and why she was not receiving survivor payments after her husband died. *Id.* (There was also more to the letter than appears in the Court's Order: as the Second Circuit said, the 1985 letter also explained "that Mrs. Larsen had been entitled only to the balance of the sixty monthly disability payments, together with a one-time payment of $1500.00," 902 F.2d at 1071, *i.e.*, that she had no entitlement to survivor payments.)

The situation here, in Ms. Alvarez's case, was not at all comparable to the *Larsen* events of 1985. In this case, after terminating employment with the Skadden firm, on or about May 1, 1998, Ms. Alvarez, who had not earlier contacted Skadden (the firm or the Plan) questioning whether the way it calculated lump sums was correct, received a letter from a Plan official telling her that "pursuant to the terms of the Plan," "I am pleased to enclose a check . . . representing the full value of your vested interest (100%)," and asking her to "Please sign and return [this letter to indicate that you accept] without objection . . . the enclosed check as full settlement of your rights under the Pension Plan." Doc. 19, Ex. 3.

This quasi-congratulatory payment letter did not clearly repudiate Ms. Alvarez's claim to an additional payment due after a whipsaw calculation had been performed. *E.g., Novella v. West. Cnty, N.Y. Carpenters' Pens. Fund*, 443 F.Supp.2d 540, 544-45 (S.D.N.Y. 2006) (Mukasey, J.) (payment later discovered to be only a partial payment is a not clear repudiation of a claim for more than the payment tendered; clear repudiation occurs only when the payment is questioned and the fiduciary confirms it will pay no more). Nor did the May 1998 letter give Ms. Alvarez notice that there was even another

way possible of calculating her benefit or that, in tendering this payment to her, the Plan was injuring her.[2]

*Larsen* confirms this. The key letter in *Larsen* was not the 1985 letter because after further exchanges between her (through counsel) and the plan, Mrs. Larsen filed suit in October 1986: assuming it constituted clear repudiation, it could not have had the effect of time-barring Mrs. Larsen's claim. Instead, the key letter in *Larsen* and the one of relevance to this case was the plan's much earlier August 1980 letter to Mrs. Larsen, which she received more than six year before she filed suit and without her previously questioning her benefits. That letter, which reads much like the Skadden letter, is the one the defense primarily urged as the reason the Court of Appeals should find Mrs. Larsen's claim time-barred. It informed Mrs. Larsen "that she was entitled to 26 payments of pension benefits with the final payment due September 1, 1982." *Larsen*, 902 F.2d at 1073 (emphasis added).

Under the analysis employed by the Court's June 18 Order (under the New York accrual rule), Mrs. Larsen's claim should have been time-barred. Everything the Court said about the Skadden letter and Ms. Alvarez could have been said of the August 1980 letter and Mrs. Larsen. In fact, it is fair to say that if the New York rule had been the rule of decision, the Court of Appeals's opinion could have read exactly like this [brackets

[2] It would be especially anomalous to conclude that federal law permits a fiduciary to clearly repudiate a claim that the fiduciary may not know the participant has. It has to be Skadden's position that if it is liable, it did not know it at the time it sent Ms. Alvarez this letter. If Skadden knew Ms. Alvarez had a claim (or even a colorable claim) to whipsaw benefits when it sent her this letter, then it was effectively tricking her into taking something less than she was owed or may have been owed. The presumption for the present inquiry should be that Skadden was as unaware of its whipsaw liability to Ms. Alvarez as she was of her entitlement to an additional payment vis-à-vis the Plan. Skadden thus cannot even have intended to repudiate a claim for a whipsaw benefit at the time and should not as a fiduciary be heard to argue the May 1998 letter had such effect.

indicate where Plaintiffs have altered the language from page 7 of the Court's June 18 Order]:

> The issue presented on [appeal] is not whether the [August 1980] letter disclosed to M[r]s. [Larsen] the existence of a claim against the Plan. Nor is the issue whether the letter accurately stated the amount to which she was entitled [until 1982]; indeed, the premise of the action is that it did not. But the letter [informing her "that she was entitled to 26 payments of pension benefits with the final payment due September 1, 1982"] was not equivocal. It was not an invitation to negotiate. The [August 1980] letter was a clear repudiation by the [Plan's] administrators, acting for the Plan, which was made known to M[r]s. [Larsen], the beneficiary. Under New York's accrual rule, which federal courts apply to ERISA claims against a plan, the claim accrued upon receipt of the letter by M[r]s. [Larsen].
>
> Because the claim of M[r]s. [Larsen] accrued more than six-years prior to the commencement of [her] lawsuit, it is barred by the statute of limitations. . . .
>
> * * * *
>
> <u>Conclusion</u>
>
> The claim of [appellant] [Larsen] accrued in [August 1980, more than six years prior to the commencement of [her] action, when the Plan unequivocally repudiated her entitlement to any further payment [after 1982]. . . .

However, the Second Circuit ruled in Mrs. Larsen's favor, stating that her claim was not time-barred and that the 1980 letter was not a clear repudiation of her claim. The

reason is the point made in the discussion of *Guilbert* and *Carey* above: the federal clear repudiation-of-the-claim standard incorporates the discovery-of-the-injury test that the New York repudiation standard omits**.**

Thus, despite the August 1980 letter's clear announcement-"no more benefits after September 1982," the Court of Appeals held her claim for survivor's benefits was not time-barred:

> Defendants contend that Mrs. Larsen's claims are time-barred because her cause of action accrued either on September 21, 1977, the day Mr. Larsen applied for a pension, or on or about August 27, 1980, when "she was informed that she was entitled to 26 payments of pension benefits with the final payment due September 1, 1982." Neither of these dates, however, is appropriate to commence the running of the six-year limitations period.
>
> September 21, 1977 is obviously inapplicable. The parties have stipulated that Mrs. Larsen was thoroughly unfamiliar with Mr. Larsen's pension arrangements while he was alive. In any event, Mrs. Larsen did not have any claim as Mr. Larsen's survivor while he was alive, so it was impossible for the Plan to repudiate her claim during that period.
>
> Nor can August 27, 1980 be considered pivotal. A letter from the Plan to Mrs. Larsen bearing that date indicated that plaintiff would receive twenty-six monthly payments of $327.93. As plaintiff points out, however, that letter "did not explain what those payments represented, or that they were granted *instead of* life-time survivor's benefits," or that Mr. Larsen had waived such survivor's benefits. The letter was therefore not a clear repudiation of Mrs. Larsen's rights as a survivor of a Plan participant.

*Larsen,* 902 F.2d at 1073-74 (emphasis in the original).

If the August 1980 letter in *Larsen* did not clearly repudiate Mrs. Larsen's claim for survivor benefits, then the May 1998 Skadden letter could not have clearly repudiated Ms. Alvarez's whipsaw claim for at least three reasons:

- The Skadden letter did not explain what the payment represented except that it was 100% of what the Plan thought she was due – the same representation effectively made to Mrs. Larsen. Nor did the Skadden letter state how the amount

had been calculated or what it represented. (It may or may not have been the result of a lawful calculation; it may or may not have included a whipsaw payment.)

- The Skadden letter did not state the payment was being made ***in lieu of*** a whipsaw payment or the actuarial equivalent of her normal retirement benefit present valued using the statutorily-prescribed interest rate.
- The Skadden letter did not say that in accepting the check Ms. Alvarez was waiving her claim to a whipsaw benefit or a benefit calculated in any other way than the way the Plan calculated it or the way provided for under the terms of the Plan.

That *Larsen* indeed compels a finding that the kind of letter Skadden sent Ms. Alvarez cannot have constituted a (federal) clear repudiation of her claim for whipsaw damages is exactly what the district court in *Esden* held. *Esden v. The Retirement Plan of First National Bank of Boston,* 182 F.R.D. 432 (D. Vt. 1988), *rev'd on other grounds,* 229 F.3d 154 (2d Cir. 2000). Relying on *Larsen,* the district court in *Esden* held that a letter virtually identical to the one Skadden sent Ms. Alvarez in May 1998 did not trigger the running of the statute because it did not constitute a clear repudiation of Ms. Esden's whipsaw claim:

> The Retirement Plan claims that Esden's claims are time-barred because the letter she received from the Retirement Plan on March 26, 1991, enclosing a check for her accrued benefits, unequivocally stated that she was **"entitled to no further benefits under the Plan."** Paper 32, Exhibit 5. If the six-year statute of limitations started running on March 26, 1991, then Esden's claim is time-barred for her complaint was not filed until April 3, 1997.
>
> The Retirement Plan contends that William Robinson's letter of February 1, 1991

> was a request for additional benefits on Esden's behalf which was "clearly repudiated" when the Plan advised Esden on March 26, 1991 that she was entitled to no further benefits. The documents, however, speak for themselves. Robinson's February 1, 1991 letter was intended to expedite the payment of Esden's benefits under the Plan--not to request additional benefits. Paper 32, Exhibit 2.
>
> In fact, it was not until February 15, 1991 that the Retirement Plan advised Esden of her options under the Plan, *i.e.*, the dollar amount of her benefits if she chose to receive a lump sum distribution as compared to the estimated dollar amount of her benefits at age 65 if she chose to wait until normal retirement age to receive her accrued benefits as a lump sum or monthly annuity. Paper 32, Exhibit 3.
>
> Esden did not claim additional benefits under the Retirement Plan until April 22, 1996 when NCRB filed a claim on her behalf. Paper 41, Exhibit 15. The six-year statute of limitations did not begin to run until the Plan denied the claim on September 27, 1996 (Paper 19, Exhibit 6)--the first juncture at which the Retirement Plan could be said to have clearly and unequivocally repudiated the claim. *See Larsen v. NMU Pension Trust*, 902 F.2d at 1073. *See also Miles v. New York State Teamsters Conference Pension Plan,* 698 F.2d at 598. The Court finds, therefore, that Esden's initial complaint was filed well within the applicable six year statute of limitations.

*Esden*, 182 F.R.D. at 437 (emphasis added).

As the district court found in *Esden,* the Court should find that Defendant has failed to establish that Ms. Alvarez knew or should have known of the injury that is the basis of her claim and that the May 1, 1998 letter was not a clear repudiation of a claim that Ms. Alvarez knew or should have known she had at the time.

**Conclusion**

Wherefore, for these and such other reasons as may appear to the Court, Plaintiffs respectfully request that the instant motion be granted.

Dated: June 20, 2008

Respectfully submitted,

*/Eli Gottesdiener*

Eli Gottesdiener [EG0111]
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, N.Y. 11215
(718) 788-1500
(718) 788-1650 (facsimile)

*Attorney for Plaintiffs and the proposed Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2008, I caused Defendant to be served by hand with a copy of the foregoing Memorandum in Support as follows:

Counsel for Defendant
Henry P. Wasserstein
Samuel Cadet
James W. Brown
Jennifer Cabrera
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

*/s/Eli Gottesdiener*
Eli Gottesdiener