UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JONATHAN X. FLAGG and<br>JACQUELINE ALVAREZ,<br><br>               Plaintiffs,<br><br>      - against -<br><br>SKADDEN, ARPS, SLATE, MEAGHER<br>& FLOM LLP PENSION PLAN,<br><br>               Defendant. | 07 Civ. 7392 (PKC) (HBP) |

---

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER THE JUNE 18 ORDER

---

Samuel Kadet
Henry P. Wasserstein
James W. Brown
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000

*Attorneys for Defendant Skadden, Arps,
 Slate, Meagher & Flom LLP Pension Plan*

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   PLAINTIFFS IGNORE THE HEAVY BURDEN THEY FACE IN
     SEEKING THE EXTRAORDINARY REMEDY OF RECONSIDERATION . . . . . . . . 2

II.  PLAINTIFFS' SEMANTIC QUIBBLING OVER THE TITLE OF THE
     RULE OF DECISION, AS OPPOSED TO THE SUBSTANCE OF THE
     RULE OF DECISION, DOES NOT WARRANT RECONSIDERATION . . . . . . . . . . 2

     A.   The June 18 Order Appropriately Turned on a "Clear Repudiation" . . . . . . . . . . 2

     B.   The June 18 Order Did Not Ignore Any Controlling Authority,
          Because Carey and Guilbert Embrace the "Clear Repudiation"
          Rule of Valle, Miles and Larsen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     C.   For an ERISA Claim to Accrue, All That Needs to be "Discovered" Is
          That the Plan Clearly Repudiated Any Obligation to Pay Anything More . . . . . . 5

III. PLAINTIFFS' RENEWED ARGUMENT, THAT A CLAIM DOES NOT ACCRUE
     UNTIL AN ATTORNEY HAS ADVISED A PLAINTIFF THAT SHE HAS A
     LEGALLY-COGNIZABLE CLAIM, DOES NOT WARRANT RECONSIDERATION. 6

IV.  PLAINTIFFS' DIFFERING INTERPRETATION OF THE
     FACTS DOES NOT WARRANT RECONSIDERATION . . . . . . . . . . . . . . . . . . . . . . 8

     A.   Plaintiffs' Differing Interpretation of the May
          1998 Letter Does Not Warrant Reconsideration . . . . . . . . . . . . . . . . . . . . . . . . 8

     B.   Plaintiffs' Effort to Shoehorn the Facts of This Case Into a
          Misreading of Larsen Does Not Warrant Reconsideration . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES[1]

CASES                                                                                           PAGE(S)

In re Barabash, 31 N.Y.2d 76, 334 N.Y.S.2d 890, 286 N.E.2d 268 (1972) . . . . . . . . . . . . . . . . . . 3

Barnett v. IBM Corp., 885 F. Supp. 581 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Carey v. International Brotherhood of Electric Workers, 201 F.3d 44 (2d Cir. 1999) . . . . . . . 4, 8

Carollo v. Cement and Concrete Workers Dist. Coun. Pension Plan,
     964 F. Supp. 677 (E.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Corcoran v. New York Power Authority, 202 F.3d 530 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 7

DeZaio v. Port Authority of N.Y. and N.J., 205 F.3d 62 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 7

Esden v. Retirement Plan of First National Bank of Boston,
     182 F.R.D. 432 (D.Vt. 1988), rev'd on other grounds,
     229 F.3d 154 (2d Cir. 2000)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Guilbert v. Gardner, 480 F.3d 140 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

LaBarbera v. R. Rio Trucking, 03-CV-1508 (SLT) (AKT),
     2007 WL 2177063 (E.D.N.Y. July 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan,
     902 F.2d 1069 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-6, 9-10

Micciche v. Kemper National Services, No. 06-CV-5099 (DLI)(SMG),
     2008 WL 794977 (E.D.N.Y. March 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Miles v. New York State Teamsters Conference Pension and Retirement Fund
     Employee Pension Benefit Plan, 698 F.2d 593 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . 3

Miller v. Fortis Benefits Insurance Co., 475 F.3d 516 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 6

Novella v. Westchester County. N.Y. Carpenters' Pens. Fund,
     443 F. Supp.2d 540 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ormiston v. Nelson, 117 F.3d 69 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

---

[1] Capitalized terms used but not defined herein are intended to have the meanings ascribed in Defendant's Reply Memorandum dated January 4, 2008 and Supplemental Memorandum dated June 6, 2008.

CASES                                                                                           PAGE(S)

Shrader v. CSX Transport, Inc., 70 F.3d 255 (2d Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

Taggart v. Moody's Investors Service, No. 06 Civ. 3388 (PKC),
    2007 WL 2809846 (S.D.N.Y. Sept. 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8-9

Valle v. Joint Plumbing Indus. Bd., 623 F.2d 196 (2d Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . 3

Wright v. Heyne, 349 F.3d 321 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


RULES                                                                                           PAGE(S)

Local Civil Rule 6.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO RECONSIDER THE JUNE 18 ORDER

Plaintiffs made a strategic choice to place the May 1998 Letter into the record. That decision all but compelled the well-reasoned and carefully-supported June 18 Order recognizing that in 1998 the Plan clearly repudiated any obligation to pay Alvarez anything further – the controlling legal standard for accrual of an ERISA claim. Now reconsidering their own strategic decision, Plaintiffs "apologize" for their "deficient" briefing (Pl. June 20 Mem. at 4) and ask for another chance to argue what has been determined against them based upon the very record they created.

Plaintiffs make three assaults on the June 18 Order. First, Plaintiffs quibble with the title of the accrual rule that the Court applied, i.e., whether it is a "federal rule," a "New York rule," or a New York rule that has been made part of the federal common law. But, no matter the title, Plaintiffs simply cannot dispute that the substance of the accrual rule contained in the June 18 Order is correct, as it is exactly as stated in every controlling decision on the issue: a "clear repudiation" of an obligation to pay more triggers the running of the statute. (Infra Section II).

Second, Plaintiffs once again try to reargue that an ERISA claim does not accrue until a putative plaintiff has spoken with an attorney who advises her that she has a legally-cognizable claim. Of course, that nonsensical argument has been rejected by every court to have reached the issue, because it would effectively nullify all statutes of limitation and frustrate the salutary purposes of such limitation periods. (Infra Section III).

Third, Plaintiffs take great issue with the Court's interpretation of the May 1998 Letter. But the Court did not ignore the contents of the May 1998 Letter. Instead, the Court carefully considered its language and merely held that the letter meant what it said: the Plan clearly repudiated any obligation to pay Alvarez anything further. (Infra Section IV).

1

Accordingly, none of Plaintiffs' arguments provide legitimate grounds for the extraordinary relief Plaintiffs seek (<u>infra</u> Section I), and reconsideration should therefore be denied.

I.     PLAINTIFFS IGNORE THE HEAVY BURDEN THEY FACE IN
<u>SEEKING THE EXTRAORDINARY REMEDY OF RECONSIDERATION.</u>

Plaintiffs' effort to brush aside the burden they face in seeking reconsideration is tellingly contained in only one truncated sentence of their entire brief. (Pl. June 20 Mem. at 1-2). But Plaintiffs' burden under Local Civil Rule 6.3 is a heavy one, as elsewhere stated by this Court:

> A party seeking reconsideration, pursuant to . . . Local Civil Rule 6.3, faces a heavy burden. Reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. A motion for reconsideration will be granted only where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir.1995). Motions for reconsideration are not intended as a vehicle for a party dissatisfied with the court's ruling to advance new theories or to secure a rehearing on the merits. . . . Accordingly, motions for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided. [<u>Id.</u>]

<u>Taggart v. Moody's Investors Service</u>, No. 06 Civ. 3388 (PKC), 2007 WL 2809846, *1 (S.D.N.Y. Sept. 26, 2007) (quotes and citations omitted).

Given this heavy burden, each of Plaintiffs' attacks on the June 18 Order is insufficient to merit reconsideration.

II.     PLAINTIFFS' SEMANTIC QUIBBLING OVER THE *TITLE* OF THE
RULE OF DECISION, AS OPPOSED TO THE *SUBSTANCE* OF THE
<u>RULE OF DECISION, DOES NOT WARRANT RECONSIDERATION.</u>

A.     <u>The June 18 Order Appropriately Turned on a "Clear Repudiation."</u>

As is now a familiar aspect of their briefing, Plaintiffs devote a great deal of their memorandum to a pedantic argument about whether the rule of decision was a "federal rule" or a

"New York rule," without ever addressing head-on the substance of the rule itself.[2]  However, the Court in the June 18 Order clearly described the <u>substance</u> of the rule it relied upon:

> The law requires proof of a repudiation by the fiduciary which is [c]lear and made known to the beneficiaries viewed in the light of the circumstances of the particular case.

(June 18 Order, at 6).  Notably, Plaintiffs fail to quote or address this pivotal sentence even once in their entire brief, instead devoting all of their energies to arguing about the appropriate <u>title</u> of the controlling standard.  (Pl. June 20 Mem., <u>passim</u>).

But no matter how much Plaintiffs want to debate whether claim accrual upon such "clear repudiation" has its roots in a "federal rule," a "New York rule," or a New York rule which has now been embraced as part of the federal common law, there can be no doubt that a "clear repudiation" is the appropriate moment of accrual in ERISA cases, as the Second Circuit has reiterated exactly that several times in a chain of cases beginning with <u>Valle</u>, <u>Miles</u> and <u>Larsen</u> – the latest of which was expressly cited in the June 18 Order:

> A plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries.

<u>Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Ben. Plan</u>, 698 F.2d 593, 598 (2d Cir. 1983) (citing <u>Valle v. Joint Plumbing Indus. Bd.</u>, 623 F.2d 196, 202 n.10 (2d Cir.1980), and <u>In re Barabash</u>, 31 N.Y.2d 76, 80 (1972)) (quotations omitted).

> [A] plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries.

---

[2]  Plaintiffs' argument is certainly reminiscent of their discussions of whether the "discovery rule [is] an exception to the injury occurrence rule" or the "injury occurrence rule [is] a particular instance of the discovery rule" (Pl. Dec. 10 Mem. at 26 n.23, 1-2, 17 n.14), and is of a piece with their jurisprudential lecture that federal courts may "adapt," but never "adopt," a state rule of law (Pl. June 20 Mem. at 3 n.1).

Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan, 902 F.2d 1069, 1073 (2d Cir. 1990) (citing Miles, 698 F.2d at 598) (quotes omitted).

  B. The June 18 Order Did Not Ignore Any Controlling Authority, Because *Carey* and *Guilbert* Embrace the "Clear Repudiation" Rule of *Valle*, *Miles* and *Larsen*.

Plaintiffs contend that the entire chain of decisions establishing the "clear repudiation" standard, including the Larsen decision to which the June 18 Order cited, was somehow reversed by the Second Circuit in Carey and Guilbert – which decisions this Court must have "over-looked" in the June 18 Order. (Pl. June 20 Mem. at 3-4, 7-8).[3]

To the contrary, Carey expressly cited to Larsen and Miles, and directly quoted them for the proposition that a "clear repudiation" triggers the running of the statute:

> [A]n ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff-regardless of whether the plaintiff has filed a formal application for benefits.

Carey v. International Broth. of Elec. Workers, 201 F.3d 44, 47, 48 (2d Cir. 1999).

And Guilbert in turn cited Carey and Miles, once again quoting the very sentence which Plaintiffs now hope to read out of Second Circuit jurisprudence:

> [A]n ERISA claim accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff-regardless of whether the plaintiff has filed a formal application for benefits.

Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) (quoting Carey, 201 F.3d at 48, and citing Miles, 698 F.2d at 598).[4]

---

[3] Further undermining Plaintiffs' position is the observation that, as recently as this year, Larsen is still being cited for the proposition, "well established in this Circuit," that "an ERISA cause of action accrues, and the statute of limitations begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." See, e.g., Micciche v. Kemper National Services, No. 06-CV-5099 (DLI) (SMG), 2008 WL 794977 (E.D.N.Y. March 24, 2008) (finding ERISA claim time-barred).

[4] Moreover, the Second Circuit's decision in Guilbert cannot be controlling on this Court
(continued...)

4

Thus, wholly contrary to Plaintiffs' arguments, <u>Carey</u> and <u>Gilbert</u> did not eradicate the "clear repudiation" rule of <u>Valle</u>, <u>Miles</u> and <u>Larsen</u>; instead, they embraced and reiterated the vitality of that very rule. There is therefore no controlling law which the Court overlooked.[5]

    C.    For an ERISA Claim to Accrue, All That Needs to be "Discovered" Is That the Plan Clearly Repudiated Any Obligation to Pay Anything More.

To be sure, Plaintiffs argue forcefully that the Court should have applied a sweeping "discovery" rule instead of the "clear repudiation" rule, because they continue to insist that what needed to be discovered for a claim to accrue is an attorney's advice that Alvarez had a legally-cognizable claim. But, as shown below, that assertion is simply not supported in the law. (Infra Section III). Instead, the only thing that needs to be "discovered" for an ERISA claim to accrue is that the plan has clearly repudiated any obligation to pay further benefits:

> <u>[I]n the ERISA context, the discovery rule has "developed" into the more specific "clear repudiation" rule whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied</u>. Notably, a formal denial is not required if there has already been a repudiation of the benefits by the fiduciary which was clear and made known the beneficiary. In other words, some "event other than a denial of a claim" may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to benefits has been repudiated.

---

[4]   (...continued)
in determining the accrual of an ERISA claim, because the Second Circuit expressly recognized that there was no underlying ERISA claim upon which any statute of limitations could accrue. <u>Guilbert</u>, 480 F.3d at 146. Instead, the Second Circuit necessarily determined accrual of the statute of limitations solely applicable to fraud and breach of contract claims. <u>Guilbert</u>, 480 F.3d at 147-50. Accordingly, anything the Second Circuit said with respect to the accrual of the statute of limitations for an ERISA claim was <u>obiter</u> <u>dictum</u>.

[5]   Of course, the string of District Court decisions that Plaintiffs argue were similarly overlooked in the June 15 Order cannot be "<u>controlling</u>" on this Court, and therefore provide no basis for reconsideration pursuant to Local Civil Rule 6.3. (Pl. June 18 Mem. at 2-3, 5, 9-10 (citing <u>LaBarbera v. R. Rio Trucking</u>, 03-CV-1508 (SLT) (AKT), 2007 WL 2177063 (E.D.N.Y. July 27, 2007); <u>Carollo v. Cement and Concrete Workers Dist. Coun. Pension Plan</u>, 964 F. Supp. 677 (E.D.N.Y. 1997); <u>Barnett v. IBM Corp.</u>, 885 F. Supp. 581 (S.D.N.Y. 1995); <u>Novella v. Westchester County. N.Y. Carpenters' Pens. Fund</u>, 443 F.Supp.2d 540 (S.D.N.Y. 2006); <u>Esden v. Retirement Plan of First National Bank of Boston</u>, 182 F.R.D. 432 (D.Vt. 1988), <u>rev'd on other grounds</u>, 229 F.3d 154 (2d Cir. 2000)).

5

Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520-21 (3d Cir. 2007) (citing the Second Circuit's decision in Carey, 201 F.3d at 48) (citations omitted, emphasis added).[6]

Here, the May 1998 Letter embodied a clear repudiation of any obligation to pay Alvarez anything more – exactly as the Court correctly found in the June 18 Order. (Infra Section IV).

III. PLAINTIFFS' RENEWED ARGUMENT, THAT A CLAIM DOES NOT ACCRUE UNTIL AN ATTORNEY HAS ADVISED A PLAINTIFF THAT SHE HAS A LEGALLY-COGNIZABLE CLAIM, DOES NOT WARRANT RECONSIDERATION.

Plaintiffs again seek to argue that a claim cannot accrue until a putative plaintiff speaks with an attorney, and thereby learns that she has a legally-cognizable claim. Indeed, Plaintiffs try in vain to conjure such a requirement from Larsen, because in that case the plaintiff had already spoken with an attorney prior to the plan's unequivocal statement that no further benefits would be paid. (Pl. June 20 Mem. at 4-5). But the decision in Larsen never hints that the presence of that attorney factored into the Court's decision. Instead, the clear words of the letter to the plan participant in Larsen that no further benefits would be paid was the dispositive fact. Larsen, 902 F.2d at 1074. Stated simply, Larsen nowhere supports the proposition that a plaintiff may delay accrual of a claim merely by waiting years to speak with an attorney to learn the law.

Yet that is exactly the rule which Plaintiffs now ask this Court to adopt. It here must be remembered that – despite the Court's specific invitation to place in the record any evidence that might show any new facts that she learned in the more than nine years between when she received her lump sum distribution and when she commenced her claims (May 15 Order at 1) – Alvarez was only able to show that she recently spoke with a lawyer who convinced her that she had a legally-cognizable claim (Alvarez May 28 Decl., passim). However:

---

[6] Plaintiffs have already conceded that Miller was correctly decided (Pl. Dec. 10 Mem. at 18), and argued forcefully that Carey should be followed (Pl. June 20 Mem. at 3-5).

> If the statute were tolled until an attorney informs the plaintiff that he or she has an ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before consulting an attorney.

Wright v. Heyne, 349 F.3d 321, 330-31 (6th Cir. 2003).

The principle that an ERISA claim is not preserved merely by waiting to speak with an attorney grows from the controlling rule that ignorance of the law, as opposed to the facts, will not prevent the running of the statute. E.g., Ormiston v. Nelson, 117 F.3d 69, 72 n.5 (2d Cir. 1997) ("Mere ignorance of the law is, of course, insufficient to delay . . . accrual. . . .").

Even where the body of law is so complex that it routinely "trips up laypersons and lawyers alike," ignorance of the law will not delay the running of the statute:

> [I]gnorance of the law excuses no one; not because courts assume everyone knows the law, but because this excuse is one all will plead and no one can refute.

DeZaio v. Port Auth. of N.Y. and N.J., 205 F.3d 62, 64 (2d Cir. 2000) (affirming dismissal).

Thus, Plaintiffs can repeatedly try to invoke a sweeping "discovery rule" or a supposed requirement that Alvarez subjectively understood a legally-cognizable injury before her claim accrued, but that is simply not the controlling law. E.g., Corcoran v. New York Power Authority, 202 F.3d 530, 544 (2d Cir. 1999) ("a plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim") (affirming dismissal).

Indeed, the rule that Plaintiffs ask this Court to adopt – that accrual is delayed years, even decades, until a putative plaintiff speaks with an attorney who convinces her that she has a legally-cognizable claim – would render all statutes of limitation a nullity, a result which is plainly contrary even to the Carey decision upon which Plaintiffs so heavily rely:

> As the Supreme Court has noted, the length of a limitation period for instituting suit in federal court inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. Statutes of limitation serve several important policies, including rapid resolution of disputes, repose for those against whom a claim could be

7

brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses. For these reasons, <u>statutes of limitation are not to be disregarded by courts out of a vague sympathy for particular litigants. Indeed, strict adherence to limitation periods is the best guarantee of evenhanded administration of the law.</u>

<u>Carey</u>, 201 F.3d at 47 (citations and quotations omitted) (emphasis added).

IV. PLAINTIFFS' DIFFERING INTERPRETATION OF THE FACTS DOES NOT WARRANT RECONSIDERATION.

    A. Plaintiffs' Differing Interpretation of the May 1998 Letter Does Not Warrant Reconsideration.

At the heart of their request for reconsideration, Plaintiffs argue that the May 1998 Letter "did not clearly repudiate Ms. Alvarez's claim to an additional payment." (Pl. June 20 Mem. at 5). As the Court will recall, Plaintiffs made this exact same argument twice before. (Pl. Dec. 10 Mem. at 11-12; Gottesdiener May 28 Decl. at 3-8).[7] Of course, the prominence the May 1998 Letter played in the June 18 Order demonstrates that the Court did not overlook or ignore it.

Instead, the Court merely disagreed with Plaintiffs, finding that the letter contained an unequivocal, clear repudiation of any obligation to pay more. (June 18 Order at 7).[8] Plaintiffs'

---

[7] In their latest memorandum, Plaintiffs "apologize" for their previously "deficient" briefing (Pl. June 20 Mem. at 4), and ask for another opportunity to clarify their arguments. However, a motion for reconsideration is not an appropriate vehicle to "clarify" arguments previously made. <u>Taggart</u>, 2007 WL 2809846, at *3 ("In endeavoring to utilize the motion for reconsideration to 'clarify' her arguments on the [prior] motion [, Plaintiff] impermissibly reargues the points [she] made during the initial briefing and now explains to the Court how its analysis is 'erroneous.' Plaintiff's new motion [for reconsideration] is merely an attempt to relitigate those matters already decided, which she may not do.") (quotes and citations omitted). This is especially true here, where Plaintiffs have already interposed another unauthorized reply memorandum solely to reargue the matters contained in their original memorandum opposing the motion to dismiss. (<u>Compare</u> Pl. June 6 Reply Mem. <u>with</u> Defendant's June 9, 2008 letter to the Court).

[8] Plaintiffs continue to overlook the clear words of the very document they themselves placed in the record. The May 1998 Letter unequivocally stated that the "enclose[d] check . . . [was in] full settlement of [Alvarez's] rights under the Pension Plan." (May 1998 Letter, at 1). This was therefore wholly consistent with the letter Alvarez received three months prior, in which the Plan disclosed that, if Alvarez elected to receive a lump sum distribution equal to her

(continued...)

8

current argument therefore reduces to nothing more than a repetitive argument over a differing interpretation of the evidence – which is not legitimate grounds for reconsideration. Taggart, 2007 WL 2809846, at *1 ("Motions for reconsideration are not intended as a vehicle for a party dissatisfied with the court's ruling . . . to secure a rehearing on the merits. . . .") (citing Shrader, 70 F.3d at 257).[9]

        B.    Plaintiffs' Effort to Shoehorn the Facts of This Case Into a Misreading of Larsen Does Not Warrant Reconsideration.

Plaintiffs' effort to confuse the facts of this case with those at issue in Larsen is fraught with missteps and misstatements. Two separate letters were proposed by the Larsen defendants as possible "clear repudiations" of any obligation to pay more. The initial communication, in 1980, advised the plaintiff that she would receive the final 26 payments of her deceased husband's 60-payment individual pension benefits ending in 1982, but was silent with respect to whether or not she would thereafter be entitled to lifetime survivor's benefits under the Plan. Larsen, 902 F.2d at 1070-72, 1073-74. A second letter, in 1985, unequivocally stated that "[a]ll monies have been paid that are payable and there are no further monies due. . . ." Id. The Larsen Court found that the first letter was not a "clear repudiation," because it was unclear whether Ms. Larsen was entitled to further, survivor benefits after the remaining 26 payments still to be paid

---

[8] (...continued)
account balance, "no additional distributions will be made." (Feb. 18, 1998 Letter, at 2).

[9] Plaintiffs now argue that "[t]he presumption for the present inquiry should be that Skadden was as unaware of its whipsaw liability to Ms. Alvarez as she was of her entitlement to an additional payment vis-a-vis the Plan." (Pl. June 20 Mem. at 6 n.2). However, Plaintiffs argued the exact opposite position on the underlying motion. (E.g., Pl. Dec. 10 Mem. at 14 ("[The Plan] knew that ... the Plan was not using a 'safe harbor' rate, but instead a rate that legally obligated it to pay whipsaw [and] did not intend to pay what it knew it owed participants...."), id. at 23 ("Defendant lulled Ms. Alvarez into not filing suit sooner through its conscious concealment of its systematic underpayment practice....")). As this Court has noted, "[m]otions for reconsideration are not intended as a vehicle for a party ... to advance new theories." Taggart, 2007 WL 2809846, at *1 (citing Shrader, 70 F.3d at 257).

on her husband's individual pension. Conversely, the second letter, with its absolute pronouncement that no further monies were due, was a "clear repudiation" that would commence the running of the statute. Id., 902 F.2d at 1073-74.

Plaintiffs try mightily to equate the first, 1980 letter in Larsen to the May 1998 Letter in this case, in order to create a conflict between the Larsen decision and the June 18 Order – going so far as to try to selectively interweave the words of the Larsen opinion with those of the June 18 Order. (Pl. June 20 Mem. at 6-7). This effort peaks with Plaintiffs' assertion that the 1980 letter in Larsen contained the "clear announcement" of "no more benefits after September 1982," complete with quotation marks around the purported excerpt from Larsen. (Pl. June 20 Mem. at 8 (emphasis added)). However, if this Court compares Plaintiffs' supposed quotation of Larsen with the actual text of that case, it is easily seen that Plaintiffs are relying on artifice instead of substance – the supposedly quoted language simply does not exist. Thus, there was only one "clear repudiation" in Larsen, and it was the second, 1985 letter which contains language tracking the May 1998 Letter herein.

Notably, Larsen found that the statute of limitations had accrued upon this "clear repudiation" without once finding any "discovery" of any "injury" or that the plaintiff had learned that she had a legally-cognizable claim – all necessary conditions under Plaintiffs' theory of the law.

Accordingly, Plaintiffs have failed to raise any legitimate issue warranting reconsideration of the June 18 Order.[10]

---

[10] Moreover, Plaintiffs' allegations that resort to administrative remedies would have been futile necessarily contain the admission that Defendant's repudiation was clear (Def. Jan. 4 Mem. at 5-6), providing alternative grounds for denying reconsideration, Shrader, 70 F.3d at 257 (Reconsideration is only proper when allegedly "overlooked-matters . . . might reasonably be expected to alter the conclusion reached by the court.").

10

CONCLUSION

For all the foregoing reasons, Plaintiffs' motion should be denied.

Dated: New York, New York
       June 27, 2008

    /s/ Samuel Kadet
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000

*Attorneys for Defendant Skadden, Arps,*
 *Slate, Meagher & Flom LLP Pension Plan*